# 22-2101-bk(L)

**22-2104-bk(CON),      22-2107-bk(CON),      22·2108,bk(CON),      22-2109-bk(CON),
22-2111-bk(CON),**

*(For Continuation of Docket Numbers See Inside Cover)*

## United States Court of Appeals

for the

## Second Circuit

IN RE: FAIRFIELD SENTRY LIMITED

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## CONSOLIDATED BRIEF FOR DEFENDANTS-APPELLEES

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Jeffrey A. Rosenthal
One Liberty Plaza
New York, NY 10006
Tel. (212) 225-2000
jrosenthal@cgsh.com

Nowell D. Bamberger
2112 Pennsylvania Avenue NW
Washington, DC 20037
Tel. (202) 974-1500
nbamberger@cgsh.com

*Counsel for Murdoch and Company, Robinson
and Company, HSBC Bank USA, N.A., Somers*

HERBERT SMITH FREEHILLS NEW YORK LLP

Marc J. Gottridge
450 Lexington Avenue
New York, NY 10017
Tel. (917) 542-7600
marc.gottridge@hsf.com

*Counsel for Barclays Bank (Suisse) SA,
Caixabank S.A., as successor by merger to
Barclays Bank S.A., sued as "Barclays Bank
SA Madrid", and Zedra Trust Company
(Jersey) Limited (f/k/a Barclays Private Bank
and Trust Limited), sued as "Barclays Private
Bank & Trust (Channel Islands) Limited"*

*(Counsel continued on inside cover)*

*Nominees (Far East) Limited, HSBC Private
Bank (Suisse) S.A., HSBC Securities Services
(Luxembourg) SA, HSBC Private Bank (C.I.)
Limited f/k/a HSBC Private Bank (Guernsey)
Limited, HSBC International Trustee Limited,
HSBC Institutional Trust Services (Asia)
Limited, Republic Nominees Limited f/k/a
HSBC Private Banking Nominee 1 (Jersey)
Limited, Banco Nominees 2 (Guernsey)
Limited f/k/a Banco Nominees (I.O.M)
Limited, HSBC Bank Bermuda Limited, and
HSBC Latin America Holdings (UK) Limited
(successor-in-interest to HSBC Securities
(Panama) S.A.)*

–and–

*BNY AIS Nominees Ltd., BNY Mellon
International Ltd., FKA PFPC Bank Ltd.,
PFPC International Bank Limited and PNC
International Bank Ltd.*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Carmine D. Boccuzzi, Jr.
One Liberty Plaza
New York, NY 10006
Tel. (212) 225-2000
cboccuzzi@cgsh.com

Elsbeth Bennett
2112 Pennsylvania Avenue NW
Washington, DC 20037
Tel. (202) 974-1500
ebennett@cgsh.com

*Counsel for Citigroup Global Markets
Limited; Citibank NA London; Citibank
(Switzerland) AG; Citivic Nominees Limited;
Cititrust Bahamas Limited*

FRIEDMAN KAPLAN SEILER ADELMAN &
ROBBINS LLP

Bruce S. Kaplan
Jeffrey C. Fourmaux
7 Times Square
New York, NY 10036
Tel. (212) 833-1100
bkaplan@fklaw.com
jfourmaux@fklaw.com

*Counsel for DGAM Alternative Strategy Fund
L.P., DGAM Alternative Strategy Fund IL SPC
- Cell A, DGAM Alternative Strategy Fund IL
SPC - Cell B, and DGAM Asset Allocation
Fund L.P.*

22-2112-bk(CON), 22-2113-bk(CON), 22-2114-bk(CON), 22-2115-bk(CON), 22-2116-bk(CON),
22-2117-bk(CON), 22-2119-bk(CON), 22-2120-bk(CON), 22-2121-bk(CON), 22-2122-bk(CON),
22-2123-bk(CON), 22-2125-bk(CON), 22-2126-bk(CON), 22-2127-bk(CON), 22-2128-bk(CON),
22-2129-bk(CON), 22-2130-bk(CON), 22-2131-bk(CON), 22-2132-bk(CON), 22-2133-bk(CON),
22-2134-bk(CON), 22-2135-bk(CON), 22-2136-bk(CON), 22-2137-bk(CON), 22-2138-bk(CON),
22-2139-bk(CON), 22-2140-bk(CON), 22-2141-bk(CON), 22-2142-bk(CON), 22-2143-bk(CON),
22-2144-bk(CON), 22-2145-bk(CON), 22-2146-bk(CON), 22-2147-bk(CON), 22-2148-bk(CON),
22-2149-bk(CON), 22-2150-bk(CON), 22-2151-bk(CON), 22-2152-bk(CON), 22-2153-bk(CON),
22-2156-bk(CON), 22-2157-bk(CON), 22-2158-bk(CON), 22-2159-bk(CON), 22-2161-bk(CON),
22-2162-bk(CON), 22-2163-bk(CON), 22-2164-bk(CON), 22-2165-bk(CON), 22-2166-bk(CON),
22-2167-bk(CON), 22-2168-bk(CON), 22-2169-bk(CON), 22-2170-bk(CON), 22-2171-bk(CON),
22-2172-bk(CON), 22-2173-bk(CON), 22-2174-bk(CON), 22-2175-bk(CON), 22-2176-bk(CON),
22-2177-bk(CON), 22-2179-bk(CON), 22-2180-bk(CON), 22-2181-bk(CON), 22-2183-bk(CON),
22-2185-bk(CON), 22-2186-bk(CON), 22-2188-bk(CON), 22-2189-bk(CON), 22-2190-bk(CON),
22-2192-bk(CON), 22-2193-bk(CON), 22-2194-bk(CON), 22-2195-bk(CON), 22-2196-bk(CON),
22-2197-bk(CON), 22-2199-bk(CON), 22-2200-bk(CON), 22-2201-bk(CON), 22-2202-bk(CON),
22-2203-bk(CON), 22-2204-bk(CON), 22-2205-bk(CON), 22-2207-bk(CON), 22-2208-bk(CON),
22-2209-bk(CON), 22-2210-bk(CON), 22-2211-bk(CON), 22-2212-bk(CON), 22-2213-bk(CON),
22-2214-bk(CON), 22-2215-bk(CON), 22-2216-bk(CON), 22-2218-bk(CON), 22-2219-bk(CON),
22-2221-bk(CON), 22-2222-bk(CON), 22-2223-bk(CON), 22-2227-bk(CON), 22-2228-bk(CON),
22-2229-bk(CON), 22-2230-bk(CON), 22-2233-bk(CON), 22-2234-bk(CON), 22-2235-bk(CON),
22-2236-bk(CON), 22-2237-bk(CON), 22-2238-bk(CON), 22-2239-bk(CON), 22-2240-bk(CON),
22-2241-bk(CON), 22-2242-bk(CON), 22-2243-bk(CON), 22-2244-bk(CON), 22-2245-bk(CON),
22-2246-bk(CON), 22-2247-bk(CON), 22-2248-bk(CON), 22-2249-bk(CON), 22-2250-bk(CON),
22-2251-bk(CON), 22-2252-bk(CON), 22-2253-bk(CON), 22-2254-bk(CON), 22-2255-bk(CON),
22-2256-bk(CON), 22-2257-bk(CON), 22-2258-bk(CON), 22-2259-bk(CON), 22-2260-bk(CON),
22-2261-bk(CON), 22-2262-bk(CON), 22-2263-bk(CON), 22-2264-bk(CON), 22-2265-bk(CON),
22-2266-bk(CON), 22-2267-bk(CON), 22-2268-bk(CON), 22-2269-bk(CON), 22-2270-bk(CON),
22-2271-bk(CON), 22-2272-bk(CON), 22-2273-bk(CON), 22-2275-bk(CON), 22-2276-bk(CON),
22-2277-bk(CON), 22-2278-bk(CON), 22-2279-bk(CON), 22-2280-bk(CON), 22-2281-bk(CON),
22-2284-bk(CON), 22-2285-bk(CON), 22-2286-bk(CON), 22-2287-bk(CON), 22-2288-bk(CON),
22-2289-bk(CON), 22-2290-bk(CON), 22-2291-bk(CON), 22-2292-bk(CON), 22-2293-bk(CON),
22-2294-bk(CON), 22-2299-bk(CON), 22-2300-bk(CON), 22-2302-bk(CON), 22-2303-bk(CON),
22-2304-bk(CON), 22-2305-bk(CON), 22-2306-bk(CON), 22-2308-bk(CON), 22-2309-bk(CON),
22-2311-bk(CON), 22-2314-bk(CON), 22-2333-bk(CON), 22-2334-bk(CON), 22-2336-bk(CON),
22-2338-bk(CON), 22-2339-bk(CON), 22-2340-bk(CON), 22-2341-bk(CON), 22-2342-bk(CON),
22-2343-bk(CON), 22-2344-bk(CON), 22-2345-bk(CON), 22-2346-bk(CON), 22-2347-bk(CON),
22-2348-bk(CON), 22-2349-bk(CON), 22-2350-bk(CON), 22-2351-bk(CON), 22-2352-bk(CON),
22-2353-bk(CON), 22-2354-bk(CON), 22-2355-bk(CON), 22-2356-bk(CON), 22-2357-bk(CON),
22-2358-bk(CON), 22-2359-bk(CON), 22-2360-bk(CON), 22-2361-bk(CON), 22-2362-bk(CON),
22-2363-bk(CON), 22-2364-bk(CON), 22-2365-bk(CON), 22-2366-bk(CON), 22-2367-bk(CON),
22-2368-bk(CON), 22-2369-bk(CON), 22-2370-bk(CON), 22-2371-bk(CON), 22-2372-bk(CON),
22-2373-bk(CON), 22-2374-bk(CON), 22-2375-bk(CON), 22-2376-bk(CON), 22-2380-bk(CON),
22-2381-bk(CON), 22-2382-bk(CON), 22-2383-bk(CON), 22-2384-bk(CON), 22-2385-bk(CON),

22-2386-bk(CON), 22-2387-bk(CON), 22-2388-bk(CON), 22-2389-bk(CON), 22-2390-bk(CON),
22-2391-bk(CON), 22-2392-bk(CON), 22-2393-bk(CON), 22-2394-bk(CON), 22-2395-bk(CON),
22-2396-bk(CON), 22-2398-bk(CON), 22-2399-bk(CON), 22-2401-bk(CON), 22-2404-bk(CON),
22-2405-bk(CON), 22-2407-bk(CON), 22-2408-bk(CON), 22-2409-bk(CON), 22-2410-bk(CON),
22-2411-bk(CON), 22-2412-bk(CON), 22-2413-bk(CON), 22-2414-bk(CON), 22-2415-bk(CON),
22-2416-bk(CON), 22-2417-bk(CON), 22-2418-bk(CON), 22-2419-bk(CON), 22-2420-bk(CON),
22-2421-bk(CON), 22-2422-bk(CON), 22-2423-bk(CON), 22-2424-bk(CON), 22-2425-bk(CON),
22-2426-bk(CON), 22-2427-bk(CON), 22-2428-bk(CON), 22-2429-bk(CON), 22-2431-bk(CON),
22-2432-bk(CON), 22-2433-bk(CON), 22-2434-bk(CON), 22-2435-bk(CON), 22-2436-bk(CON),
22-2437-bk(CON), 22-2440-bk(CON), 22-2441-bk(CON), 22-2442-bk(CON), 22-2443-bk(CON),
22-2444-bk(CON), 22-2445-bk(CON), 22-2446-bk(CON), 22-2448-bk(CON), 22-2450-bk(CON),
22-2451-bk(CON), 22-2453-bk(CON), 22-2455-bk(CON), 22-2456-bk(CON), 22-2457-bk(CON),
22-2458-bk(CON), 22-2459-bk(CON), 22-2460-bk(CON), 22-2461-bk(CON), 22-2462-bk(CON),
22-2463-bk(CON), 22-2466-bk(CON), 22-2467-bk(CON), 22-2468-bk(CON), 22-2470-bk(CON),
22-2472-bk(CON), 22-2473-bk(CON), 22-2474-bk(CON), 22-2475-bk(CON), 22-2477-bk(CON),
22-2478-bk(CON), 22-2479-bk(CON), 22-2481-bk(CON), 22-2482-bk(CON), 22-2483-bk(CON),
22-2484-bk(CON), 22-2485-bk(CON), 22-2486-bk(CON), 22-2488-bk(CON), 22-2489-bk(CON),
22-2491-bk(CON), 22-2492-bk(CON), 22-2493-bk(CON), 22-2494-bk(CON), 22-2495-bk(CON),
22-2496-bk(CON), 22-2497-bk(CON), 22-2498-bk(CON), 22-2499-bk(CON), 22-2500-bk(CON),
22-2501-bk(CON), 22-2502-bk(CON), 22-2503-bk(CON), 22-2504-bk(CON), 22-2506-bk(CON),
22-2507-bk(CON), 22-2508-bk(CON), 22-2509-bk(CON), 22-2510-bk(CON), 22-2511-bk(CON),
22-2512-bk(CON), 22-2513-bk(CON), 22-2514-bk(CON), 22-2515-bk(CON), 22-2516-bk(CON),
22-2517-bk(CON), 22-2518-bk(CON), 22-2520-bk(CON), 22-2521-bk(CON), 22-2522-bk(CON),
22-2523-bk(CON), 22-2524-bk(CON), 22-2525-bk(CON), 22-2526-bk(CON), 22-2528-bk(CON),
22-2529-bk(CON), 22-2532-bk(CON), 22-2534-bk(CON), 22-2535-bk(CON), 22-2536-bk(CON),
22-2538-bk(CON), 22-2539-bk(CON), 22-2540-bk(CON), 22-2541-bk(CON), 22-2545-bk(CON),
22-2548-bk(CON), 22-2549-bk(CON), 22-2551-bk(CON), 22-2552-bk(CON), 22-2553-bk(CON),
22-2554-bk(CON), 22-2555-bk(CON), 22-2556-bk(CON), 22-2557-bk(CON), 22-2558-bk(CON),
22-2559-bk(CON), 22-2560-bk(CON), 22-2562-bk(CON), 22-2565-bk(CON), 22-2566-bk(CON),
22-2567-bk(CON), 22-2568-bk(CON), 22-2570-bk(CON), 22-2571-bk(CON), 22-2572-bk(CON),
22-2573-bk(CON), 22-2574-bk(CON), 22-2575-bk(CON), 22-2576-bk(CON), 22-2577-bk(CON),
22-2579-bk(CON), 22-2580-bk(CON), 22-2581-bk(CON), 22-2582-bk(CON), 22-2583-bk(CON),
22-2585-bk(CON), 22-2586-bk(CON), 22-2587-bk(CON), 22-2589-bk(CON), 22-2590-bk(CON),
22-2591-bk(CON), 22-2592-bk(CON), 22-2593-bk(CON), 22-2594-bk(CON), 22-2595-bk(CON),
22-2596-bk(CON), 22-2597-bk(CON), 22-2598-bk(CON), 22-2602-bk(CON), 22-2603-bk(CON),
22-2604-bk(CON), 22-2606-bk(CON), 22-2607-bk(CON), 22-2608-bk(CON), 22-2611-bk(CON),
22-2612-bk(CON), 22-2613-bk(CON), 22-2614-bk(CON), 22-2615-bk(CON), 22-2617-bk(CON),
22-2618-bk(CON), 22-2619-bk(CON), 22-2622-bk(CON), 22-2626-bk(CON), 22-2631-bk(CON),
22-2641-bk(CON), 22-2642-bk(CON), 22-2643-bk(CON), 22-2644-bk(CON), 22-2645-bk(CON),
22-2654-bk(CON), 23-687-bk(CON, 23-695-bk(CON), 23-697-bk(CON), 23-715-bk(CON)

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel[1] for:

1.  HSBC Bank USA, N.A., a national banking association organized and existing under the laws of the United States of America, is not a publicly held company. HSBC Bank USA, N.A. is wholly owned by HSBC USA, Inc., which is directly owned by HSBC North America Holdings, Inc., which, in turn, is indirectly owned by HSBC Holdings plc. HSBC Holdings plc has no parent corporation and no public company owns 10% of the shares in HSBC Holdings plc.

2.  HSBC Securities Services (Luxembourg) S.A. identifies HSBC Holdings plc and HSBC Bank plc as corporations that directly or indirectly own 10% or more of any class of HSBC Securities Services (Luxembourg) S.A.'s equity interests.

3.  HSBC Private Bank (Suisse) SA identifies HSBC Private Banking Holdings (Suisse) SA, HSBC Overseas Holdings (UK) Limited, and HSBC Holdings plc as corporations that directly or indirectly own 10% or more of any class of HSBC Private Bank (Suisse) SA's equity interests.

---

[1]  Defendants-Appellees and their counsel are listed on Addendum A, which is attached hereto.

i

4.   HSBC Institutional Trust Services (Asia) Limited identifies HSBC Holdings plc, HSBC Asia Holdings Limited, and The Hongkong and Shanghai Banking Corporation Limited as corporations that directly or indirectly own 10% or more of HSBC Institutional Trust Services (Asia) Limited's equity interests.

5.   Somers Nominees (Far East) Limited identifies HSBC Holdings plc, HSBC Overseas Holdings (UK) Limited, and HSBC Bank Bermuda Limited as corporations that directly or indirectly own 10% or more of Somers Nominees (Far East) Limited's equity interests.

6.   HSBC International Trustee Limited identifies HSBC Holdings plc, HSBC Asia Holdings Limited, The Hongkong and Shanghai Banking Corporation Limited, and HSBC International Trustee (Holdings) Pte. Limited as corporations that directly or indirectly own 10% or more of HSBC International Trustee Limited's equity interests.

7.   Murdoch and Company states that it is not a corporation, but a Partnership established in accordance with the laws of Bermuda. Murdoch and Company identifies HSBC Holdings plc, HSBC Overseas Holdings (UK) Limited, HSBC Bank Bermuda Limited, and Banco Nominees Limited as corporations that directly or indirectly own 10% or more of the partnership interests in Murdoch and Company.

ii

8.     Robinson and Company states that it is not a corporation, but a Partnership established in accordance with the laws of Bermuda. Robinson and Company identifies HSBC Holdings plc, HSBC Overseas Holdings (UK) Limited, HSBC Bank Bermuda Limited, and HSBC Institutional Trust Services (Bermuda) Limited as corporations that directly or indirectly own 10% or more of the partnership interests in Robinson and Company.

9.     HSBC Bank Bermuda Limited identifies HSBC Holdings plc and HSBC Overseas Holdings (UK) Limited as corporations that directly or indirectly own 10% or more of any class of HSBC Bank Bermuda Limited's equity interests.

10.     HSBC Private Bank (Guernsey) Limited (n/k/a HSBC SFT (C.I.) Limited) identifies HSBC Bank plc and HSBC Holdings plc as corporations that directly or indirectly own 10% or more of any class of HSBC SFT (C.I.) Limited's equity interests.

11.     HSBC SFT (C.I.) Limited (f/k/a HSBC Private Bank (C.I.) Limited f/k/a HSBC Private Bank (Guernsey) Limited) identifies HSBC Bank plc and HSBC Holdings plc as corporations that directly or indirectly own 10% or more of any class of HSBC SFT (C.I.) Limited's equity interests.

12.     Banco Nominees 2 (Guernsey) Limited (f/k/a Banco Nominees (I.O.M.) Limited) identifies HSBC Custody Services (Guernsey) Limited, HSBC

iii

Europe B.V., Griffin International Limited, Midcorp Limited, HSBC Bank plc, and HSBC Holdings plc as corporations that directly or indirectly own 10% or more of any class of Banco Nominees 2 (Guernsey) Limited's equity interests.

13. Republic Nominees Limited (sued as HSBC Private Banking Nominee 1 (Jersey) Limited, which merged into Republic Nominees Limited) identifies HSBC Bank plc and HSBC Holdings plc as corporations that directly or indirectly own 10% or more of any class of Republic Nominees Limited's equity interests.

14. The Defendant sued herein as "HSBC Securities (Panama) S.A." certifies that the named Defendant "HSBC Securities (Panama) S.A." no longer exists following its sale to Bancolombia S.A., dated October 28, 2013. HSBC Latin America Holdings (UK) Limited has retained any and all liabilities arising out of claims against HSBC Securities (Panama) S.A. in the above-captioned action. Accordingly, as the successor-in-interest, HSBC Latin America Holdings (UK) Limited identifies HSBC Holdings plc as a corporation that directly or indirectly owns 10% or more of any class of HSBC Latin America Holdings (UK) Limited's equity interests.

15. BNY AIS Nominees Limited makes the following disclosures:

a. BNY AIS Nominees Limited states that it is wholly owned by The Bank of New York Mellon SA/NV, which is in turn indirectly owned by The Bank of New York Mellon Corporation.

b. The Bank of New York Mellon Corporation is a publicly held corporation that has no parent corporation. No publicly held corporation owns 10% or more of The Bank of New York Mellon Corporation.

16. The Bank of New York Mellon Corporation makes the following disclosures on behalf of the dissolved entity BNY Mellon International Ltd.:

a. PFPC Bank Limited changed its name to PNC International Bank Limited on July 3, 2008. PNC International Bank Limited changed its name to BNY Mellon International Bank Limited on July 5, 2010. BNY Mellon International Bank Limited changed its name to BNY Mellon International Ltd. on December 20, 2011. BNY Mellon International Ltd. was dissolved in 2013. Before its dissolution, BNY Mellon International Ltd. was wholly owned by Global Investment Servicing (Luxembourg) SARL, which was in turn indirectly owned by The Bank of New York Mellon Corporation.

b. The Bank of New York Mellon Corporation is a publicly held corporation that has no parent corporation. No publicly held corporation owns 10% or more of The Bank of New York Mellon Corporation.

17.    Citibank (Switzerland) AG[2]  is wholly owned by Citicorp Banking

Corporation, Delaware (USA), which is in turn owned by Citigroup Inc.

Citigroup Inc. is a publicly held corporation that has no parent corporation.

No publicly held corporation owns 10% or more of Citigroup Inc.

18.    Citibank, N.A. London Branch is a branch of Citibank, N.A. and is wholly

owned by Citicorp LLC, which in turn is wholly owned by Citigroup Inc.

Citigroup Inc. is a publicly held corporation that has no parent corporation.

No publicly held corporation owns 10% or more of Citigroup Inc.

19.    Citigroup Global Markets Limited is a wholly owned subsidiary of Citigroup

Global Markets Holdings Bahamas Limited. Citigroup Global Markets

Holdings Bahamas Limited is partially owned by Citigroup Global Markets

(International) Finance GmbH, Citigroup Global Markets Switzerland

Holding GmbH, and Citigroup Financial Products Inc. Citigroup Global

Markets (International) Finance GmbH and Citigroup Global Markets

Switzerland Holding GmbH are wholly owned subsidiaries of Citigroup

Global Markets Europe Finance Limited. Citigroup Global Markets Europe

Finance Limited is a wholly owned subsidiary of Citigroup Financial

Products Inc.  Citigroup Financial Products Inc. is a wholly owned

---

[2]    The Liquidators name as a defendant "Citibank (Switzerland) Zurich," an
entity that does not exist.

subsidiary of Citigroup Global Markets Holdings Inc. Citigroup Global Markets Holdings Inc. is a wholly owned subsidiary of Citigroup Inc. Citigroup Inc. is a publicly held corporation that has no parent corporation. No publicly held corporation owns 10% or more of Citigroup Inc.

20.    Cititrust (Bahamas) Limited is owned by Citigroup Participation Luxembourg Limited, which is a wholly owned subsidiary of Citigroup International Luxembourg Limited. Citigroup International Luxembourg Limited is a wholly owned subsidiary of Citi Overseas Investments Bahamas Inc., which is owned by Citibank Overseas Investment Corporation. Citibank Overseas Investment Corporation is wholly owned by Citibank, N.A. Citibank, N.A. is a wholly owned subsidiary of Citicorp LLC, which in turn is wholly owned by Citigroup Inc. Citigroup Inc. is a publicly held corporation that has no parent corporation. No publicly held corporation owns 10% or more of Citigroup Inc.

21.    Citivic Nominees Limited is wholly owned by Citibank Investments Limited. Citibank Investments Limited is partially owned by Citi Investments Bahamas Limited and Citibank Overseas Investment Corporation. Citi Investments Bahamas Limited is a wholly owned subsidiary of Citibank Overseas Investment Corporation, which is wholly owned by Citibank, N.A. Citibank, N.A. is wholly owned by Citicorp LLC,

which in turn is wholly owned by Citigroup Inc.  Citigroup Inc. is a publicly held corporation that has no parent corporation.  No publicly held corporation owns 10% or more of Citigroup Inc.

22. Hapoalim (Switzerland) Ltd. states that it is wholly owned by Bank Hapoalim B.M. and that no other publicly held corporation owns 10% or more of Hapoalim (Switzerland) Ltd.'s stock.

23. Barclays Bank (Suisse) S.A. is an indirect subsidiary of Barclays Bank PLC. Barclays Bank PLC is, in turn, a direct subsidiary of Barclays PLC, a publicly held company whose shares are listed on the London Stock Exchange and which also has American Depositary Receipts listed on the New York Stock Exchange.  No other corporation owns 10% or more of the stock of Barclays Bank (Suisse) S.A.

24. Zedra Trust Company (Jersey) Limited, formerly known as Barclays Private Bank & Trust limited (sued as "Barclays Private Bank & Trust Limited (Channel Islands))" does not have any parent corporation and no publicly held corporation owns 10% or more of its stock.

25. Multi-Strategy Fund Limited is a wholly-owned subsidiary of Caisse de dépôt et placement du Québec, a mandatary of the Province of Québec.

26.     Parson Finance Panama S.A. is wholly owned by Bamont Trust Company
        Limited, located in Nassau, Bahamas, as Trustee of Provina Trust. There is
        no publicly held corporation that owns 10% or more of its stock.

27.     DGAM Alternative Strategy Fund II, SPC – Cell A states that DGAM
        Holding Company owns 10% or more of its equity interests.

28.     DGAM Alternative Strategy Fund II, SPC – Cell B states that DGAM
        Holding Company owns 10% or more of its equity interests.

29.     DGAM Alternative Strategy Fund L.P. states that each of 9229-0907
        Quebec Inc. and DGAM Asset Allocation Fund L.P. owns 10% or more of
        its equity interests.

30.     DGAM Asset Allocation Fund L.P. states that 9229-0907 Quebec Inc. owns
        10% or more of its equity interests.

31.     AAAm S.A., named herein as "AAAM" and now known as NEXAM, a
        private, non-governmental party incorporated under the laws of France,
        certifies that no publicly-traded corporate entity directly or indirectly owns
        10% or more of any class of its equity interests.

32.     ABN AMRO Bank N.V. ("AA Bank") f/n/a Fortis Bank (Nederland) N.V.,
        ABN AMRO Global Custody Services N.V. ("AA Services") (also sued as
        FS ABN AMRO Global Custody and Fortis Global Custody Services N.V.),
        ABN AMRO Retained Nominees (IOM) Limited ("AA Nominees") (sued as

Fortis (Isle of Man) Nominees Limited), and ABN AMRO Retained Services (Cayman) Limited ("AA Cayman") (sued as Fortis Bank Cayman Limited), by and through their undersigned counsel, hereby disclose the following:

a.  Stichting ABN AMRO Global Custody owns 10% or more of the equity of AA Services.  Stichting ABN AMRO Global Custody is wholly owned by AA Bank.

b.  ABN AMRO Retained FS (IOM) Limited owns 10% or more of the equity of AA Nominees.  ABN AMRO Retained FS (IOM) Limited is wholly owned by ABN AMRO Support Services (Ireland) Limited. ABN AMRO Support Services (Ireland) Limited is wholly owned by AA Bank.

c.  ABN AMRO Support Services (Ireland) Limited owns 10% or more of the equity of AA Cayman.  ABN AMRO Support Services (Ireland) Limited is wholly owned by AA Bank.

d.  AA Bank is owned by Stichting Administratiekantoor Continuïteit ABN AMRO Bank, a publicly held foundation, and Stichting Administratiekantoor Beheer Financiële Instellingen, a foundation held by the Dutch State.

    e. Except as described above, no entity directly or indirectly owns more than 10% of the equity interests of AA Bank, AA Services, AA Nominees, or AA Cayman.

33. Abu Dhabi Investment Authority states that it has no parent company and that no publicly traded company owns 10% or more of its shares.

34. AllFunds Bank ("AllFunds") certifies that Allfunds Group Plc, a public company listed on the Amsterdam stock exchange, indirectly owns 100% of AllFunds's equity interests.

35. Altipro Master Fund (sued herein as Altigefi-Altipro Master, AKA Olympia Capital Management SA), a French Fonds Commun de Placement, represented by its portfolio management company, Olympia Capital Management SA ("OCM"), by and through its counsel, state that OCM's parent corporation is Ambroisie Capital Holding SAS.

36. American Express Bank (London), f/k/a American Express Bank Ltd., n/k/a Standard Chartered Bank (erroneously sued as FS/AEB LUX a/k/a American Express Bank (London) a/k/a Standard Chartered PLC) states that it is a subsidiary of Standard Chartered Holdings Limited, which, in turn, operates as a subsidiary of Standard Chartered PLC. No publicly held corporation has notified Standard Chartered PLC of an interest of more than 10% in Standard Chartered PLC's issued ordinary share capital in

accordance with the United Kingdom's Financial Conduct Authority's Disclosure and Transparency Rules.

37.   Andorra Banc Agricol Reig S.A. ("Andbank")  certifies that Cerqueda Donadeu, S.A. and Reig Finances, S.A.U. each own more than 10% of Andbank's equity interests.

38.   Architas f/k/a AXA Private Management states that it is a Belgian company 100% owned by Architas Limited, a private company limited by shares incorporated and registered in England and Wales.  Architas Limited is owned by AXA SA, a French holding company whose stock is traded on the Paris, France stock exchange.

39.   Arden Asset Management, Inc., a private, non-governmental party incorporated under the laws of New York, certifies that no publicly-traded corporate entity directly or indirectly owns 10% or more of any class of its equity interests.

40.   Arden Endowment Advisers, Ltd., a defunct private, non-governmental party incorporated under the laws of the Cayman Islands, certifies that no publicly-traded corporate entity directly or indirectly owns 10% or more of any class of its equity interests.

41.   Arden International Capital Limited, a defunct private, non-governmental party incorporated under the laws of the British Virgin Islands, certifies that

no publicly-traded corporate entity directly or indirectly owns 10% or more of any class of its equity interests.

42. ASB Bank Corp. (the successor by merger to appellee Atlantic Security Bank) is a subsidiary of Atlantic Security Holding Corporation. Atlantic Security Holding Corporation, an entity incorporated in the Cayman Islands, is the owner of 100% of the shares of ASB Bank Corp (the successor by merger to appellee Atlantic Security Bank).

43. Avalon Absolute Return Funds PLC is not a public corporation and there is no such entity that directly or indirectly own 10% or more of any class of such defendant's equity interests.

44. Banca Arner S.A. (n/k/a One Swiss Bank) states Banca Arner does not have a parent corporation, and that no other publicly-held company owns 10% or more of its stock.

45. Banca Carige S.P.A. and Banca Cesare Ponti S.P.A. are wholly owned by BPER Banca S.P.A. ("BPER"), which is publicly traded on the Milan stock exchange. Based on publicly available information, Gruppo Unipol S.P.A. (Unipol Group) has an 18.9% ownership interest in BPER and Fondazione di Sardegna (Foundation of Sardinia, a Sardinian governmental non-profit investment vehicle) owns 10.2% of BPER's outstanding shares. All other

shareholders are believed to have an ownership interest of less than 10% in BPER.

46. Banca Del Gottardo was acquired by BSI AG in November 2007, and it was subsequently merged with and integrated into BSI AG.

    a. BSI AG is wholly owned by EFG International AG, a publicly held company whose registered shares are listed on the SIX Swiss Exchange.

47. Banca Popolare dell'Alto Adige S.p.A. ("BPAA"), formerly Banca Popolare dell'Alto Adige Soc. Coop. pa., certifies that it is a corporation organized under the laws of Italy. BPAA has no parent corporation and there is no publicly held corporation that, directly or indirectly, owns 10% or more of any class of its equity interests.

48. Banca Popolare di Bari S.pA., successor-in-interest to Tercas Cassa di Risparmio Della Provincia di Teramo S.p.A. ("Banca Popolare"), identifies Mediocredito Centrale - Banca del Mezzogiorno S.p.A. as owning 96.819% of the Banca Popolare's stock.

49. Banca Profilo SPA states that it is owned by Arepo BP SPA.

50. Maria Férère, in her capacity as Liquidator (the "Banco Atlántico Liquidator") of defendant-appellee Banco Atlántico (Bahamas) a/k/a Banco Atlántico (Bahamas) Bank & Trust Limited (In Voluntary Liquidation) ("Banco Atlántico"), by her undersigned counsel, states that: (1) Banco

Atlántico's parent entities are Banco de Sabadell, S.A., and Bansabadell

Financiacion, E.F.C., S.A., and (2) the only publicly held entity that owns

10% or more of the shares in Banco Atlántico is Banco de Sabadell, S.A.

   a.  This corporate disclosure statement is not and shall not be construed as a

       waiver of any of the Banco Atlántico Liquidator's or Banco Atlántico's

       jurisdictional, substantive or procedural rights, remedies or defenses in

       connection with this or any other proceeding, all of which are hereby

       expressly reserved.

51.    Banco General S.A. Banca Privada states that its parent corporation is Grupo

Financiero BG, S.A. and no publicly traded company owns 10% or more of

its stock.

52.    Banco Inversis S.A. ("Inversis") certifies that Banca March, S.A. is

Inversis's parent corporation, and that no other publicly held company owns

10% or more of its stock.

53.    Banco Itaú International, f/k/a Banco Itaú Europa International, states that

Banco Itaú International's direct corporate parent is Itaú BBA International

plc and it is indirectly owned by ITB Holding Brasil Participações Ltda.,

Itaú Unibanco S.A. and Itaú Unibanco Holding S.A..  IUPAR – Itaú

Unibanco Participações S.A. and Itaúsa S.A. (a publicly traded corporation)

own more than 10% of Itaú Unibanco Holding S.A.

54.    Banco Santander International SA, formerly known as Banco Santander (Suisse) S.A., certifies that it is 65.3% owned by Santander Holding Internacional SA ("Holding") and 34.7% owned by Parasant SA ("Parasant"). Holding and Parasant are each 99.95% owned by Banco Santander SA, a publicly traded corporation. There is no publicly traded corporation that owns more than 10% of the stock of Banco Santander SA.

55.    BankMed (Suisse) SA states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

56.    Bank Hapoalim B.M. states that it is a publicly held corporation and that no other publicly held corporation owns 10% or more of Bank Hapoalim B.M. stock.

57.    Bank Hapoalim B.M., London is a former branch of Bank Hapoalim B.M., and Bank Hapoalim B.M. is a publicly held corporation and no other publicly held corporation owns 10% or more of Bank Hapoalim B.M.'s stock.

58.    Bank J. Safra Sarasin AG states that its corporate parent is J. Safra Sarasin Holding AG, and no publicly held corporation owns 10 percent or more of its equity interests.

59.    Bank Julius Baer & Co. Ltd. ("BJB"), individually and as successor in interest to ING Bank (Suisse) SA ("ING"), through its undersigned

xvi

attorneys, identifies Julius Baer Group Ltd. as directly or indirectly owning 10% or more of any class of BJB's equity interests.  ING merged into BJB as of early 2010, and on March 1, 2010, ING ceased to exist.

60.     Bank Leumi le-Israel B.M. ("Bank Leumi"), through its undersigned attorneys, states that no corporation directly or indirectly owns 10 percent or more of any class of Bank Leumi's equity interests.  This corporate ownership statement is not and shall not be construed as a waiver of any of Bank Leumi's jurisdictional, substantive, or procedural rights, remedies, or defenses in connection with the above-captioned litigation, all of which are hereby expressly preserved.

61.     Bank of America National Trust & Savings Association was merged into and became Bank of America, National Association ("Bank of America, N.A."), effective July 23, 1999.  Bank of America, N.A. is wholly owned by BAC North America Holding Company.  BAC North America Holding Company is a direct, wholly owned subsidiary of NB Holdings Corporation. NB Holdings Corporation is a direct, wholly-owned subsidiary of Bank of America Corporation, which is a publicly held company whose shares are traded on the New York Stock Exchange and has no parent corporation. Based on the U.S. Securities and Exchange Commission Rules regarding beneficial ownership, Berkshire Hathaway Inc., 3555 Farnam Street, Omaha,

Nebraska 68131, beneficially owns greater than 10% of Bank of America Corporation's outstanding common stock.

62.  Bank of Ireland Nominees Limited, now known as Northern Trust Nominees (Ireland) Limited, by and through its undersigned counsel, states that it is an indirect, wholly-owned subsidiary of Northern Trust Corp., a publicly traded company listed on the NASDAQ.  There are no publicly held corporations that own 10% or more of Northern Trust Corp. common stock.

63.  Bank Vontobel AG hereby states that it is wholly owned by Vontobel Holding AG, which is publicly held.

64.  Banque Baring Brothers Sturdza SA (now known as Banque Eric Sturdza SA) is wholly owned by Groupe Eric Sturdza SA, whose parent company is CMCT Holding SA.

65.  Banque Cantonale Vaudoise states that it has no parent corporation and that the Canton de Vaud directly or indirectly owns 10% or more of any class of its equity interests.

66.  Banque de Luxembourg, by and through its undersigned counsel, states that its parent corporation is Crédit Mutuel Alliance Fédérale, and that Crédit Industriel et Commercial CIC owns ten percent or more of its stock.

67.    Banque Degroof Bruxelles a/k/a Banque Degroof SA Bruxelles is not a
       public corporation and is owned by a percentage in excess of the required
       disclosure amount by Bank Degroof Petercam SA.

68.    Banque Degroof Luxembourg S.A. is not a public corporation and is owned
       by a percentage in excess of the required disclosure amount by Bank
       Degroof Petercam SA.

69.    Banque Degroof Petercam Luxembourg S.A. is not a public corporation and
       is owned by a percentage in excess of the required disclosure amount by
       Bank Degroof Petercam SA.

70.    Banque et Caisse D'Epargne de L'Etat Luxembourg states that it has no
       parent corporation and no publicly held corporation owns 10% or more of its
       stock.

71.    Banque Havilland S.A., a nongovernmental party, through its undersigned
       attorneys, states that it has no parent corporation and no publicly held
       corporation owns 10% or more of its stock.

72.    Banque Internationale à Luxembourg SA states that it is owned by Legend
       Holdings Corp.

73.    Banque Internationale à Luxembourg (Suisse) SA states that it is owned by
       Banque Internationale à Luxembourg SA which, in turn, is owned by
       Legend Holdings Corp.

74.    Banque Lombard Odier & Cie SA (sued as Lombard Odier Darier Hentsch & Cie) identifies LO Holding SA as its parent corporation and states that no public corporation directly or indirectly owns 10% or more of its equity interests.

75.    Banque SCS Alliance SA, n/k/a CBH Compagnie Bancaire Helvetique SA, identifies CBH HOLDING SA as its ultimate parent corporation and states that no public corporation directly or indirectly owns 10% or more of its equity interests.

76.    Banque SYZ SA, as successor to Royal Bank of Canada (Suisse) by and through its undersigned counsel, states that (1) Royal Bank of Canada (Suisse) has been acquired by and merged into Banzque SYZ SA; (2) Financière SYZ SA owns 100% of the equity interests of Banque SYZ SA; and (3) no publicly held corporations own 10% or more of the equity interests of Financière SYZ SA.

77.    Banque SYZ SA, formerly known as Banque Syz & Co. S.A., certifies that Financière SYZ SA owns more than 10% of the equity interests of Banque SYZ SA. No other corporation owns 10% or more of the equity interests of Banque SYZ SA. No corporation owns 10% or more of the equity interests of Financière SYZ SA.

78.  Banque Vontobel Geneve SA, AKA Bank Vontobel AG, hereby states that it is wholly owned by Vontobel Holding AG, which is publicly held.

79.  Barfield Nominees Limited, by and through its undersigned counsel, states that it is an indirect, wholly-owned subsidiary of Northern Trust Corp., a publicly traded company listed on the NASDAQ. There are no publicly held corporations that own 10% or more of Northern Trust Corp. common stock.

80.  Banco Bilbao Vizcaya Argentaria ("BBVA") S.A. by and through its counsel, states that it has no parent corporation nor is there any publicly held corporation owning 10% or more of its stock. Defendant-Appellee BBVA (Portugal) S.A. states that 90.47% of its shares belong to BBVA Luxinvest, S.A. and 9.52% of its shares belong to BBVA, S.A. Further, 36% of BBVA Luxinvest, S.A.'s shares belong to BBVA, S.A. and 64% belong to Corporacion General Financiera, S.A., a company 100% owned by BBVA S.A. Defendant-Appellee BBVA Miami no longer exists but by and through counsel, states that when it did exist, its sole corporate parent was Banco Bilbao Vizcaya Argentaria S.A. Defendant-Appellee BBVA Grand Cayman by and through counsel, states that its sole corporate parent is BBVA S.A.

81.  BBVA (Suisse) SA states that its sole corporate parent is Banco Bilbao Vizcaya Argentaria S.A.

82.    BBVA (Suiza) SA (sued as BBVA Zurich/Shares), by and through its counsel, states that its corporate parents are Banco Bilbao Vizcaya Argentaria S.A. and BBVA Luxinvest S.A. BBVA Luxinvest S.A. is a wholly owned subsidiary of Banco Bilbao Vizcaya Argentaria S.A. Banco Bilbao Vizcaya Argentaria S.A. is a publicly held corporation.

83.    Bessemer Trust Company's corporate parent is The Bessemer Group, Incorporated.  No publicly held corporation owns 10% or more of Bessemer Trust Company's stock.

84.    BGL BNP Paribas S.A. states as follows: BGL BNP Paribas S.A. (formerly known as Banque Generale du Luxembourg S.A. and FS/Fortis Banque Luxembourg) identifies BNP Paribas S.A. and BNP Paribas Fortis Bank SA/NV (formerly Fortis Bank SA/NV) as corporations that directly or indirectly own 10% or more of any class of BGL BNP Paribas S.A.'s equity interests.

   a.  Banque Generale du Luxembourg S.A. was renamed Fortis Banque Luxembourg S.A. in 2005.  Fortis Banque Luxembourg S.A. was subsequently renamed BGL in 2008.  In 2009, BGL acquired BNP Paribas Luxembourg S.A. and was renamed BGL BNP Paribas S.A.

85.    Bipielle Banke Suisse (known as Bipiello Bank (Suisse) in Liquidation), a nongovernmental party, through its undersigned attorneys, states that it is a

wholly-owned subsidiary of Gruppo Banca BPM, an Italian company traded on the Borsa Italiana. No publicly held company owns more than 10% of Gruppo Banca BPM.

86.   BNP Paribas (Suisse) S.A., BNP Paribas (Suisse) S.A. Ex Fortis (n/k/a BNP Paribas (Suisse) S.A.), and BNP Paribas (Suisse) S.A. Private (n/k/a BNP Paribas (Suisse) S.A.) states as follows: BNP Paribas (Suisse) S.A. (sued as BNP Paribas (Suisse) S.A., BNP Paribas (Suisse) S.A. Ex Fortis, and BNP Paribas (Suisse) S.A. Private) identifies BNP Paribas S.A. as a corporation that directly or indirectly owns 10% or more of any class of BNP Paribas (Suisse) S.A.'s equity interests.

87.   BNP Paribas Arbitrage SNC states as follows: BNP Paribas Arbitrage SNC identifies BNP Paribas S.A. as a corporation that directly or indirectly owns 10% or more of any class of BNP Paribas Arbitrage SNC's equity interests.

88.   BNP Paribas Private Bank and Trust Cayman Ltd. (n/k/a BNP Paribas Bank & Trust Cayman Limited) states as follows: BNP Paribas Bank & Trust Cayman Limited identifies BNP Paribas S.A. as a corporation that directly or indirectly owns 10% or more of any class of BNP Paribas Bank & Trust Cayman Limited's equity interests.

89.   BNP Paribas Securities Nominees Ltd. (a/k/a Harrier Holdings Ltd.) states as follows: BNP Securities Nominees Ltd. identifies BNP Paribas S.A. as a

corporation that directly owns 10% or more of any class of BNP Paribas Securities Services equity interests.

90.   BNP Paribas Securities Services Luxembourg (n/k/a BNP Paribas, Luxembourg Branch) states as follows: BNP Paribas, Luxembourg Branch is a branch of BNP Paribas SA. Following an intra-group merger, which occurred in October 2022, BNP Paribas Securities Services Luxembourg underwent a name change to BNP Paribas, Luxembourg Branch and has a changed position in the corporate structure. Previously, the entity was a branch of BNP Paribas Securities Services SCA, which was a wholly owned subsidiary of BNP Paribas. After the intra-group merger, BNP Paribas Securities Services SCA ceased to exist as a distinct legal entity from BNP Paribas SA. BNP Paribas is a publicly traded corporation. BNP Paribas SA has no parent company and no publicly-held corporation owns more than 10% of its shares.

91.   BNP Paribas Sucursal en España (f/k/a BNP Paribas España, f/k/a Fortis Bank (España)) states as follows: BNP Paribas Sucursal en España (f/k/a BNP Paribas España, f/k/a Fortis Bank (España)) identifies BNP Paribas S.A. as a corporation that directly or indirectly owns 10% or more of any class of BNP Paribas Sucursal en España's (f/k/a BNP Paribas España, f/k/a Fortis Bank (España)) equity interests.

92. Bordier & Cie SCmA (sued as Bordier & Cie) states that it has no parent corporation and no public corporation directly or indirectly owns 10% or more of its equity interests.

93. BP Alpha S.A. n/k/a BP Alpha (Agente De Valores S.A.),through its attorneys, Moses & Singer LLP, hereby states that it is a wholly owned subsidary of BP Alpha Panama SA. No public corporation owns 10% or more of the stock of BP Alpha Panama SA. Defendants-Appellees' filing of this Corporate Ownership Statement is without prejudice to or a waiver of any rights or defenses, including, without limitation, defenses based upon lack of personal jurisdiction and improper service of process. Defendants-Appellees do not submit to the jurisdiction of any court, and expressly reserves all of its rights and defenses in respect of personal jurisdiction and service of process.

94. BRED Banque Populaire states that it has no parent corporation, nor is there any publicly held corporation owning 10% or more of its stock.

95. Caceis Bank Luxembourg, CDC Ixis, Caceis Bank Ex Ixis Is, CA Indosuez (Switzerland) SA f/k/a Crédit Agricole (Suisse) SA a/k/a Banque Du Crédit Agricole (Suisse) SA, Crédit Lyonnais n/k/a LCL-LE Crédit Lyonnais S.A., Crédit Agricole (Miami), Crédit Lyonnais Miami n/k/a LCL-LE Crédit

Lyonnais S.A. Miami (CA-CIB entities), Crédit Agricole Titres, Cais Bank and Calyon Paris, by their undersigned counsel, state as follows:

a. CACEIS Bank, Luxembourg Branch (f/k/a CACEIS Bank Luxembourg S.A.) is a branch of CACEIS Bank. CACEIS Bank is wholly owned by CACEIS.  CACEIS is owned by Crédit Agricole S.A. (69.5%) and Santander Investment, SA (30.5%), which are publicly listed companies.

b. CACEIS owns more than 10% of the equity interests of CACEIS Bank (f/k/a CACEIS Bank France), which assumes the defense on behalf of, without admitting or denying whether it is or is not (or was ever at any time) an equity holder in any successor-in-interest to defendants identified as "CDC Ixis," and "Cais Bank" and "Calyon Bank."

c. CACEIS owns more than 10% of the equity interests of CACEIS Bank (f/k/a CACEIS Bank France), which assumes the defense on behalf of, without admitting or denying whether it is or is not (or was ever at any time) an equity holder in any successor-in-interest to any defendants identified as "CDC Ixis," and "Cais Bank" and "Calyon Bank."

d. Crédit Agricole S.A. also owns 97.33% of Crédit Agricole Corporate and Investment Bank, which owns 100% of the equity interests of CA Indosuez Wealth (Group) S.A., which owns 100% of the equity interests

xxvi

of defendant Crédit Agricole (Suisse) SA (n/k/a CA Indosuez (Switzerland) S.A.).

e.  Crédit Agricole Corporate and Investment Bank, successor-in-interest to the corporate and investment banking business of Crédit Lyonnais S.A., is owned and controlled by Crédit Agricole S.A., which is a publicly listed company, the majority shareholder of which is SAS Rue La Boétie. Crédit Agricole Corporate and Investment Bank also formerly operated an agency in Miami that did business under the name "CA Indosuez Wealth (Miami)," and assumes the defense on behalf of, without admitting or denying whether it is or is not the successor-in-interest (directly or indirectly) to any of the defendants identified as "Crédit Lyonnais (Miami)" and "Crédit Agricole (Miami)."

f.  Crédit Agricole S.A. also owns more than 10% of the equity interests of defendant Crédit Agricole Titres and assumes the defense on behalf of, without admitting or denying whether it is or is not (or was ever at any time) an equity holder in any successor-in-interest to the defendant identified as "CPR Online."

g.  Crédit Agricole S.A. also owns more than 10% of the equity interests of defendant Crédit Agricole Titres and assumes the defense on behalf of, without admitting or denying whether it is or is not (or was ever at any

time) an equity holder in any successor-in-interest to the defendant
identified as "CPR Online."

h. CACEIS owns more than 10% of the equity interests of CACEIS Bank
(f/k/a CACEIS Bank France), which assumes the defense on behalf of,
without admitting or denying whether it is or is not (or was ever at any
time) an equity holder in any successor-in-interest to any of the
defendants identified as "CDC Ixis", "Caceis Bank Ex Ixis Is," and "Cais
Bank" and "Calyon Bank."

i. CACEIS owns more than 10% of the equity interests of CACEIS Bank
(f/k/a CACEIS Bank France), which assumes the defense on behalf of,
without admitting or denying whether or not it is or was at any time an
equity holder of any successor-in-interest to any of the defendants
identified as "CDC Ixis," "Caceis Bank Ex Ixis Is," "Cais Bank" and
"Calyon Bank."

96. Caixabank S.A. (sued as "Barclays Bank SA Madrid") is the successor by
merger to the bank formerly known as Barclays Bank, S.A.   Caixabank S.A.
is a Spanish credit institution whose shares are listed on the Spanish stock
exchange (CABK). Each of two companies owns more than 10% of the
share capital in Caixabank S.A.: (1) CriteriaCaixa, S.A., which is a wholly
owned subsidiary of Fundación Bancaria Caja de Ahorros y Pensiones de

Barcelona; and (2) BFA Tenedora de Acciones, S.A., which is a wholly owned subsidiary of the Fondo de Restructuración Ordenada Bancaria (FROB), the Spanish Banking Executive Resolution Authority.

97. Candriam World Alternative (f/k/a Dexia World Alternative), by and through its undersigned counsel, states that the following corporate entities own, directly or indirectly, more than 10% of any class of its equity or other interests in Candriam World Alternative funds: New York Life Insurance and Annuity Corporation.

98. Cathay Life Insurance Co., Ltd., hereby files its Corporate Ownership Statement and states that Cathay Financial Holdings Co., Ltd. owns 100% of the interests in Cathay Life Insurance Co., Ltd.

99. Celfin International Limited (now known as BTG Pactual (Cayman) International Holding Limited), by and through its undersigned counsel, respectfully states, that the following is an accurate list of corporations, limited partnerships and/or joint ventures, other than governmental units, that directly or indirectly own 10% or more of any class of equity interests in it: Banco BTG Pactual S.A.

100. Centre College states that it has no parent corporation, nor is there any publicly held corporation owning 10% or more of its stock.

101.   Centrum Bank AG (AMS) hereby states that the successor-in-interest of Centrum Bank AG (AMS) is Verwaltungs- und Privat-Bank AG (now known as VP Bank AG). VP Bank AG has no parent corporation, and no publicly held corporation owns 10% or more of its total share capital.

102.   Centrum Bank Aktiengesellschaft hereby states that the successor-in-interest of Centrum Bank Aktiengesellschaft is Verwaltungs- und Privat-Bank AG (now known as VP Bank AG). VP Bank AG has no parent corporation, and no publicly held corporation owns 10% or more of its total share capital.

103.   Certain assets and liabilities of Banca Unione di Credito were acquired by BSI AG in or around 2006.  Banca Unione di Credito's registration was cancelled in December 2006 as a result of the transaction.

104.   Chelsea Trust Co. Ltd. states that is wholly owned by Themar Consolidated Purpose Trust, a Bermuda Purpose Trust which does not have owners.

105.   Citco Group Limited, Citco Global Custody (NA) N.V., CGC NA, Citco Banking Corporation, N.V., Citco Bank Nederland N.V. Dublin Branch, Citco Bank Nederland N.V., and Citco Global Custody N.V.  hereby state that:

   a.  Citco Group Limited is a wholly owned subsidiary of Citco III Limited. No publicly held corporation owns ten percent or more of the stock of Citco Group Limited or Citco III Limited.

xxx

b.  Citco Global Custody (NA) N.V. (also known as CGC NA) is a subsidiary of Citco Banking Corporation, N.V., which is a subsidiary of CBC Holdings N.V. No publicly held corporation owns ten percent or more of the stock of Citco Global Custody (NA) N.V., CGC NA, Citco Banking Corporation, N.V., or CBC Holdings N.V.

c.  Citco Bank Nederland N.V. Dublin Branch is a branch of Citco Bank Nederland N.V. and Citco Global Custody N.V. is a subsidiary of Citco Bank Nederland N.V., which is a subsidiary of Citco Bank Holding N.V. No publicly held corporation owns ten percent or more of the stock of Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, or Citco Bank Nederland N.V.

106.  Citibank Korea, Inc., states that its parents are Citigroup Inc., Citicorp LLC, Citibank NA and Citibank Overseas Investment Corporation, and that Citigroup Inc. owns 100% of each of the others directly and indirectly, including Citibank Korea, Inc., and that no public company owns 10% or more of the stock of Citibank Group Inc. This Statement of Ownership applies also to individual appeal case numbers 22-2398 and 22-2582.

107.  To the extent "Clariden Leu Limited," as identified in the complaint in this action, refers to Clariden Leu AG, Clariden Leu AG states that it was merged out of existence as of April 2, 2012 into Credit Suisse AG.  Before

the merger, Clariden Leu AG was a wholly owned subsidiary of Clariden Leu Holding AG. Clariden Leu Holding AG was merged out of existence as of April 2, 2012 into Credit Suisse Group AG. Before the merger, Clariden Leu Holding AG was a wholly owned subsidiary of Credit Suisse Group AG. Credit Suisse Group AG is a corporation organized under the laws of Switzerland. Credit Suisse Group AG's shares are publicly traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange in the form of American Depositary Shares.

108. Clarks Fork Foundation, a private, non-governmental charitable foundation, by and through undersigned counsel, makes the following disclosure: it has no parent corporation, and no publicly-traded corporate entity directly or indirectly owns 10% or more of any class of its equity interests.

109. Clearstream Banking S.A. (a/k/a "Clearstream") is a wholly owned direct subsidiary of Clearstream Holding AG; Clearstream Holding AG is a wholly owned direct subsidiary of Deutsche Börse AG; and no non-governmental entity owns more than 10% of Deutsche Börse AG's common stock.

110. Collins Stewart (CI) Ltd. ("CSL") (now known as Canaccord Genuity Wealth (International) Limited), through its undersigned attorneys, states that CSL has been merged into Canaccord Genuity Group, Inc. ("Canaccord") (formerly Canaccord Financial, Inc.), a publicly traded

company. Canaccord has no parent corporation and no corporate entity owns 10% or more of its stock.

111. Corner Banca SA states Corpendius AG owns 100% of the shares of Corner Banca SA and no publicly held corporation owns 10% or more of Corner Banca SA's stock.

112. Crèdit Andorrà / Crediinvest (which is not a juridical entity having the capacity to be sued), certifies that (a) no corporation owns 10% or more of the equity interests of Crèdit Andorrà SA, and (b) Credi-Invest SA is 80% owned by Credit Andorrà, SA (80% of share capital) and Patrigest SA (20% of the share capital). Patrigest SA is wholly owned by Credit Andorrà, SA.

113. Credit Suisse AG (also named herein as Credit Suisse AG Zurich) has publicly registered debt securities and warrants in the United States and elsewhere. Credit Suisse AG is a wholly owned subsidiary of Credit Suisse Group AG, a corporation organized under the laws of Switzerland. Credit Suisse Group AG's shares are publicly traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange.

114. Credit Suisse (Luxembourg) SA is wholly owned by Credit Suisse AG. Credit Suisse AG has publicly registered debt securities and warrants in the United States and elsewhere. Credit Suisse AG is a wholly owned subsidiary of Credit Suisse Group AG, a corporation organized under the laws of

Switzerland. Credit Suisse Group AG's shares are publicly traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange.

115. On November 1, 2016, Credit Suisse (Gibraltar) Limited was acquired by J. Safra Sarasin AG. Credit Suisse (Gibraltar) Limited is now known as Marina Bay Holding Ltd., which is an indirect subsidiary of J. Safra Sarasin Holding Ltd. and no publicly held corporation holds 10% or more of its stock.

116. Credit Suisse Nominees (Guernsey) Limited (also named herein as Credit Suisse Nominees a/k/a Credit Suisse Nominees (Guernsey) Limited A/C Gib) is wholly owned by Credit Suisse AG. Credit Suisse AG has publicly registered debt securities and warrants in the United States and elsewhere. Credit Suisse AG is a wholly owned subsidiary of Credit Suisse Group AG, a corporation organized under the laws of Switzerland. Credit Suisse Group AG's shares are publicly traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange.

117. Credit Suisse AG, Nassau Branch (also named herein as Credit Suisse (Bahamas) a/k/a Credit Suisse (Bahamas) Limited) is a branch of Credit Suisse AG. Credit Suisse AG has publicly registered debt securities and warrants in the United States and elsewhere. Credit Suisse AG is a wholly owned subsidiary of Credit Suisse Group AG, a corporation organized under the laws of Switzerland. Credit Suisse Group AG's shares are publicly

traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange.

118. Credit Suisse International is an indirect wholly owned subsidiary of Credit Suisse Group AG. Credit Suisse AG has publicly registered debt securities and warrants in the United States and elsewhere. Credit Suisse AG is a wholly owned subsidiary of Credit Suisse Group AG, a corporation organized under the laws of Switzerland. Credit Suisse Group AG's shares are publicly traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange.

119. Credit Suisse AG Nassau Branch Wealth Management is a department of Credit Suisse AG, Nassau Branch. Credit Suisse AG, Nassau Branch is a branch of Credit Suisse AG. Credit Suisse AG has publicly registered debt securities and warrants in the United States and elsewhere. Credit Suisse AG is a wholly owned subsidiary of Credit Suisse Group AG, a corporation organized under the laws of Switzerland. Credit Suisse Group AG's shares are publicly traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange.

120. Credit Suisse Nassau Branch Wealth Management is a department of Credit Suisse AG, Nassau Branch. Credit Suisse AG, Nassau Branch is a branch of Credit Suisse AG. Credit Suisse AG has publicly registered debt securities

and warrants in the United States and elsewhere. Credit Suisse AG is a wholly owned subsidiary of Credit Suisse Group AG, a corporation organized under the laws of Switzerland. Credit Suisse Group AG's shares are publicly traded on the SIX Swiss Exchange and are also listed on the New York Stock Exchange.

121. DB Nominees (Jersey) Limited, through its attorneys, Moses & Singer LLP, states that it is fully owned by Deutsche Services (CI) Limited (formerly known as Deutsche Bank International Limited), which is fully owned by Deutsche Holdings (Luxembourg) S.à r.l. which in turn is fully owned by Deutsche Bank AG, which is a publicly held corporation. No corporation owns 10% or more of the stock of Deutsche Bank AG. Defendants-Appellees' filing of this Corporate Ownership Statement is without prejudice to or a waiver of any rights or defenses, including, without limitation, defenses based upon lack of personal jurisdiction and improper service of process. Defendants-Appellees do not submit to the jurisdiction of any court, and expressly reserves all of its rights and defenses in respect of personal jurisdiction and service of process.

122. Defendant The Sumitomo Trust & Banking Co., Ltd. (now known as Sumitomo Mitsui Trust Bank, Limited) hereby states, pursuant to Appellate Procedure Rule 26.1, and to enable judges and magistrate judges of the

Court to evaluate possible disqualification or recusal, by and through its attorneys, Becker, Glynn, Muffly, Chassin & Hosinski LLP, that it is a wholly-owned subsidiary of Sumitomo Mitsui Trust Holdings, Inc.

123. Delta S.P.A. is not a public corporation and there is no such entity that directly or indirectly own 10% or more of any class of such defendant's equity interests.

124. Deltec Bank & Trust Limited ("Deltec") hereby identifies Deltec International Group ("DIG") as the 100% owner of Deltec. DIG is majority owned by Halcyon Properties Ltd. ("Halcyon"), a privately held corporation. No publicly held corporation holds 10% or more of the shares of DIG or Halcyon.

125. Deutsche Bank (Cayman) Limited, through its attorneys, Moses & Singer LLP, states that it is a wholly owned subsidiary of Deutsche Holdings (Luxembourg) S.a.r.l., itself part of the larger Deutsche Bank Group, with the ultimate parent company being Deutsche Bank AG, which is a publicly held corporation. No corporation owns 10% or more of the stock of Deutsche Bank AG. Defendants-Appellees' filing of this Corporate Ownership Statement is without prejudice to or a waiver of any rights or defenses, including, without limitation, defenses based upon lack of personal jurisdiction and improper service of process. Defendants-Appellees do not

submit to the jurisdiction of any court, and expressly reserves all of its rights and defenses in respect of personal jurisdiction and service of process.

126.    Deutsche Bank (Suisse) SA ("DB Suisse") hereby states that it acquired all of the assets and liablities of Bank Sal. Oppenheim Jr. & Cie (Schweiz) AG a/k/a Bank Sal. Oppenheim Jr. & CIE, as a result of a 2013 merger.  As a consequence of the 2013 merger, Bank Sal. Oppenheim Jr. & Cie (Schweiz) AG no longer exists as it has been fully integrated into DB Suisse. In compliance with Federal Rule of Appellate Procedure 26.1, DB Suisse, through its attorneys, Moses & Singer LLP, states that it is a fully owned subsidary of Deutsche Holdings (Luxembourg) S.à.r.l., which in turn is a fully owned subsidiary of Deutsche Bank AG, which is a publicly held corporation. No corporation owns 10% or more of the stock of Deutsche Bank AG.  Defendants-Appellees' filing of this Corporate Ownership Statement is without prejudice to or a waiver of any rights or defenses, including, without limitation, defenses based upon lack of personal jurisdiction and improper service of process. Defendants-Appellees do not submit to the jurisdiction of any court, and expressly reserves all of its rights and defenses in respect of personal jurisdiction and service of process.

127.    Deutsche Bank (Suisse) SA ("DB Suisse"), through its attorneys, Moses & Singer LLP, hereby states that it is a fully owned subsidiary of Deutsche

Holdings (Luxembourg) S.à.r.l., which in turn is a fully owned subsidiary of Deutsche Bank AG, which is a publicly held corporation. No corporation owns 10% or more of the stock of Deutsche Bank AG. Defendants-Appellees' filing of this Corporate Ownership Statement is without prejudice to or a waiver of any rights or defenses, including, without limitation, defenses based upon lack of personal jurisdiction and improper service of process. Defendants-Appellees do not submit to the jurisdiction of any court, and expressly reserves all of its rights and defenses in respect of personal jurisdiction and service of process.

128.  Deutsche Bank AG Singapore Branch, through its attorneys, Moses & Singer LLP, states that it is a branch of Deutsche Bank AG, which is a publicly held corporation. No corporation owns 10% or more of the stock of Deutsche Bank AG. Defendants-Appellees' filing of this Corporate Ownership Statement is without prejudice to or a waiver of any rights or defenses, including, without limitation, defenses based upon lack of personal jurisdiction and improper service of process. Defendants-Appellees do not submit to the jurisdiction of any court, and expressly reserves all of its rights and defenses in respect of personal jurisdiction and service of process.

129.  Deutsche Bank Trust Company Americas, through its attorneys, Moses & Singer LLP, states that it is a wholly-owned subsidiary of Deutsche Bank

Trust Corporation, which in turn is a wholly-owned subsidiary of DB USA Corporation, which in turn is a wholly-owned subsidiary of Deutsche Bank AG, which is a publicly held corporation. No corporation owns 10% or more of the stock of Deutsche Bank AG. Defendants-Appellees' filing of this Corporate Ownership Statement is without prejudice to or a waiver of any rights or defenses, including, without limitation, defenses based upon lack of personal jurisdiction and improper service of process. Defendants-Appellees do not submit to the jurisdiction of any court, and expressly reserves all of its rights and defenses in respect of personal jurisdiction and service of process.

130. DMC (HD) Limited states that its parent corporation is DMC Holdings Limited and no publicly traded company owns 10% or more of its stock.

131. Don Chimango, S.A. states that it has no parent and that no publicly traded entity owns 10% or more of its shares.

132. Dreadnought Finance OY states that it has no parent corporation, and is not aware of any publicly held corporation that owns ten percent or more of its stock.

133. Dresdner Bank Schweiz (now known as LGT Bank (Switzerland) Ltd.) hereby states that LGT Bank (Switzerland) Ltd. is wholly owned by LGT Holding Denmark ApS. LGT Holding Denmark ApS is wholly owned by

xl

LGT UK Holdings Ltd. LGT UK Holdings Ltd. is wholly owned by LGT Group Holding Ltd. LGT Group Holding Ltd. is wholly owned by LGT Group Foundation. LGT Group Foundation is wholly owned by Prince of Liechtenstein Foundation. No publicly listed corporation owns 10% or more of LGT Bank (Switzerland) Ltd.'s total share capital.

134. Dresdner Lateinamerika AG ("Dresdner Lateinamerika") identifies Commerzbank AG as a corporation that directly or indirectly owns 10% or more of any class of equity interests in Dresdner Lateinamerika.

135. Edmond de Rothschild (Europe) (sued as Banque Privee Edmond de Rothschild (Europe)) identifies Edmond de Rothschild (Suisse) S.A. (formerly Banque Privée Edmond de Rothschild S.A.) as its parent corporation and identifies Edmond de Rothschild Holding S.A. as the parent corporation of Edmond de Rothschild (Suisse) S.A.

136. Edmond de Rothschild (Suisse) S.A. (sued as Rothschild Bank Geneva (Dublin), Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano S.A., and Sella Bank AG) identifies Edmond de Rothschild Holding S.A. as a corporate entity that directly or indirectly owns 10% or more of any class of its equity interests. Sella Bank AG was merged into Banca Privata Edmond de Rothschild Lugano S.A. in 2013. Banca

Privata Edmond de Rothschild Lugano S.A. was merged into Edmond de Rothschild (Suisse) S.A. in 2016.

137.  Effective November 1, 2010, Banc of America Securities LLC merged with and into, and is now known as, Merrill Lynch, Pierce, Fenner & Smith Incorporated.  Merrill Lynch, Pierce, Fenner & Smith Incorporated is a direct, wholly-owned subsidiary of BAC North America Holding Company. BAC North America Holding Company is a direct, wholly-owned subsidiary of NB Holdings Corporation.  NB Holdings Corporation is a direct, wholly-owned subsidiary of Bank of America Corporation, which is a publicly held company whose shares are traded on the New York Stock Exchange and has no parent corporation.  Based on the U.S. Securities and Exchange Commission Rules regarding beneficial ownership, Berkshire Hathaway Inc., 3555 Farnam Street, Omaha, Nebraska 68131, beneficially owns greater than 10% of Bank of America Corporation's outstanding common stock.

138.  EFG Bank (Monaco) S.A.M. (f/k/a Eurofinanciere D'Investissements SAM and sued as "Eurofinancier D'Invest MCL") is wholly owned by EFG International AG, a publicly held company whose registered shares are listed on the SIX Swiss Exchange.

139. EFG Bank AG (a/k/a EFG Bank SA f/k/a EFG Private Bank SA and also sued as "EFG Bank SA Switzerland") is wholly owned by EFG International AG, a publicly held company whose registered shares are listed on the SIX Swiss Exchange.

140. Essex 17 Limited states that it has no parent corporation and no publicly traded company owns 10% or more of its stock.

141. Essex 21 Limited states that it has no parent corporation and no publicly traded company owns 10% or more of its stock.

142. EuroTitres (incorrectly named in the complaint as "NBP Titres") is a division within Natixis S.A.

143. Fairfield GCI Fund (sued as Fairfield Investment GCI), through its attorneys, states that no corporate entity owns, directly or indirectly, 10% or more of any class of its equity interest.

144. Fairfield Investment Fund Ltd. (a private non-governmental party), through its attorneys, states that the following corporate entities own, directly or indirectly, 10% or more of any class of its equity interest: Banco Bilbao Vizcaya Argentaria.

145. FCP-BE CAEN states that it was a department within Natixis S.A., formerly known as Natexis Banques Populaires.

146. Fidessa Alpha Fund is not a public corporation and there is no such entity that directly or indirectly own 10% or more of any class of such defendant's equity interests.

147. FIF Advanced, Ltd. (a private non-governmental party), through its attorneys, states that no corporate entity owns, directly or indirectly, 10% or more of any class of its equity interest.

148. Finter Bank Zurich AG (n/k/a Bank Vontobel AG) states Vontobel Holding AG owns 100% of the shares of Bank Vontobel AG.

149. First Gulf Bank (now First Abu Dhabi Bank PJSC ("FAB")) discloses that it is a publicly held corporation whose shares are admitted to trading on the Abu Dhabi Securities Exchange (ADX). FAB's principal shareholder (and only shareholder above 10%) is the Government of Abu Dhabi, which indirectly holds approximately 37.9 percent of the issued and outstanding shares of the Bank through the wholly owned Mubadala Investment Company ("MIC").

150. Fortis Bank SA/NV (n/k/a BNP Paribas Fortis) states as follows: Fortis Bank SA/NV (n/k/a BNP Paribas Fortis) identifies BNP Paribas S.A. as a corporation that directly or indirectly owns 10% or more of any class of BNP Paribas Fortis SA/NV's equity interest.

xliv

151. FS Stichting Stroeve Global Custody ("FS Stichting"), through its undersigned attorneys, states that there are no entities that own (either directly or indirectly) 10% or more of any class of equity interests in FS Stichting.

152. Fullerton Capital PTE, Ltd. is wholly owned by Fullerton (Private) Limited, which is wholly owned by Temasek Holdings (Private) Limited.  No publicly held corporation owns 10% or more of Fullerton PTE, Ltd.'s stock.

153. Fund Nominees Limited ("FNL"), through its undersigned attorneys, states that 100% of FNL's equity is owned by Canaccord Genuity Wealth (International) Limited. Canaccord Genuity Wealth (International) Limited is part of Canaccord Genuity Group, Inc. ("Canaccord," formerly Canaccord Financial, Inc.), a publicly traded company. Canaccord has no parent corporation and no corporate entity owns 10% or more of its stock.

154. Gates Charitable Trust in consolidated case number 22-2525-bk (CON) states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

155. GERIFONDS SA, as manager of BCV AMC Defensive Alt Fund (sued as BCV AMC Defensive Al Fund) ("BCV AMC Fund") states on behalf of BCV AMC Fund that BCV AMC Fund is a contractual fund and not a corporate party and therefore there are no parent corporations or publicly

held corporations as to which disclosure is required. GERIFONDS SA

states that Banque Cantonale Vaudoise is its sole parent corporation and that

no other corporation owns more than 10% of any class of equity interests in

GERIFONDS SA.

156. Goldman Sachs & Co. LLC (sued herein as FS/GSCO LONDON, FS/GSCO

NEW YORK, GSCO LONDON, and GSCO NEW YORK) is a direct,

wholly-owned subsidiary of The Goldman Sachs Group, Inc. except for de

minimis non-voting, non-participating interests held by unaffiliated broker-

dealers. The Goldman Sachs Group, Inc. is a corporation organized under

the laws of Delaware, and its shares are publicly traded on the New York

Stock Exchange. The Goldman Sachs Group, Inc. has no parent corporation

and, to the best of The Goldman Sachs Group, Inc.'s knowledge, no publicly

held company owns 10% or more of the common stock of The Goldman

Sachs Group, Inc.

157. Hambros Guernsey Nominees, AKA Hambros (Guernsey Nominees)

Limited identifies SG Kleinwort Hambros Bank Limited as its parent

corporation and Société Générale S.A. as its ultimate parent corporation and

states that no other public corporation directly or indirectly owns 10% or

more of its equity interests.

158. Hansard Europe Limited (n/k/a Hansard Europe DAC), a nongovernmental party, through its undersigned attorneys, states that it is a wholly-owned subsidiary of Hansard Global plc, an Isle of Man holding company listed on the London Stock Exchange. No publicly held company owns 10% or more of the stock of Hansard Global plc.

159. Harmony Capital Fund Ltd., by and through its undersigned attorneys, states that it is an indirect, wholly owned subsidiary of Harmony Capital Investors Ltd., a privately held entity. There are no publicly traded corporations that own 10% of Harmony Capital Investors Ltd.

160. Hinduja Bank (Switzerland) SA, f/k/a Amas Bank (Switzerland) Ltd., and Banca Commerciale Lugano, now all known as S.P. Hinduja Banque Privée, inform the Court that S.P. Hinduja Banque Privée is wholly owned by Hinduja Swiss Holding Ltd., a privately held corporation.

161. Hontai Life Insurance Company Limited hereby states that it does not have a parent corporation and that there is no publicly-held corporation owning ten percent (10%) or more of its shares.

162. HSBC Seoul Branch states that its head office is Hong Kong and Shanghai Banking Corporation Limited Incorporated, which is 100% owned by HSBC Asia Holdings Ltd, which is 100% owned by HSBC Holdings plc, a publicly traded corporation and that no public company is known to own 10% or

xlvii

more of the stock of its stock. This Statement of Ownership applies also to individual appeal case numbers 22-2394 and 22-2541.

163. HSH Nordbank Securities, S.A., now known as HCOB Securities, S.A., hereby states that on February 4, 2019, HSH Nordbank Securities S.A. changed its name and began operating under the name HCOB Securities S.A. HCOB Securities, S.A. is a 100% owned subsidiary of Hamburg Commercial Bank AG (HCOB AG).

164. Hua Nan Commercial Bank, Ltd., incorrectly sued herein as Hua Nan Commercial Bank ("HNCB"), through its undersigned attorneys, states as follows: (1) HNCB is a wholly owned subsidiary of Hua Nan Financial Holdings Co., Ltd. ("HNFHC"); and (2) Bank of Taiwan, Ltd. owns 10 percent or more of HNFHC's interests.

165. Hyperion (HD) Limited states that its parent corporation is Hyperion Holdings Limited and no publicly traded company owns 10% or more of its stock.

166. Hyposwiss Private Bank Geneva, S.A. "Hyposwiss") by its attorneys, Litmar; Asche & Gioiella, LLP, states that Mirelis InvesTrust, SA, Geneva is the parent company of Hyposr.l iss. No other person or entity has more than a 10% interest in Hyposwiss.

xlviii

167. IDF Global Fund states that it has no parent corporation and no public corporation directly or indirectly owns 10% or more of its equity interests.

168. ING Luxembourg SA states that it is owned by ING Groep N.V.

169. Inteligo Bank Ltd. Panama Branch f/k/a/ Blubank Ltd. Panama Branch by and through its counsel, hereby states that it is a corporation organized and incorporated under the laws of the Commonwealth of the Bahamas and that it is a wholly-owned subsidiary of Inteligo Group, Corp. (formerly IFH International Corp.), an entity incorporated under the laws of the Republic of Panama.

170. Intesa Sanpaolo Bank Luxembourg SA (formerly known as Société Européenne de Banque S.A.), through its undersigned attorneys, states that it is 100% owned by Intesa Sanpaolo Holding International SA, which, in turn, is wholly owned by Intesa Sanpaolo SpA. To the best of Intesa Sanpaolo Bank Luxembourg SA's knowledge, no corporation directly or indirectly owns 10 percent or more of any class of Intesa Sanpaolo SpA's equity interests. This corporate ownership statement is not and shall not be construed as a waiver of any of Intesa Sanpaolo Bank Luxembourg SA's jurisdictional, substantive, or procedural rights, remedies, or defenses in connection with the above-captioned litigation, all of which are hereby expressly preserved.

171. Investec Bank (Switzerland) AG is a wholly owned subsidiary of Investec bank plc, UK. Investec bank plc, UK, is wholly owned by Investec 1 Ltd. and Investec 1 Ltd. is wholly owned by Investec plc, a publicly traded company listed on the London Stock Exchange.

172. Itaú Bank & Trust Bahamas Ltd. (sued as BIE Bank & Trust Bahamas Ltd.) ("BIE Bank & Trust"), by and through its counsel, states that its direct corporate parents are ITB Holding Ltd. and ITB Holding Brasil Participações Ltda., and it is indirectly owned by Itaú Unibanco S.A. and Itaú Unibanco Holding S.A.. IUPAR – Itaú Unibanco Participações S.A. and Itaúsa S.A. (a publicly traded corporation) own more than 10% of Itaú Unibanco Holding S.A.

173. Itaú Bank & Trust Cayman, Ltd. (f/k/a Unicorp Bank & Trust Limited) ("Itaú Bank & Trust Cayman"), by and through its counsel, states that its direct corporate parent is ITB Holding Ltd. and it is indirectly owned by ITB Holding Brasil Participações Ltda., Itaú Unibanco S.A., and Itaú Unibanco Holding S.A.. IUPAR – Itaú Unibanco Participações S.A. and Itaúsa S.A. (a publicly traded corporation) own more than 10% of Itaú Unibanco Holding S.A..

174. Itaú BBA International (Cayman) Ltd., f/k/a Itaú Europa Luxembourg, S.A., f/k/a Banco Itaú Europa Luxembourg, S.A., states that Itaú BBA

1

International (Cayman) Ltd.'s direct corporate parent is ITB Holding Brasil Participações Ltda. and it is indirectly owned by Itaú Unibanco Holding S.A. and Itaúsa S.A, both of which are publicly traded corporations.

175. Israel Discount Bank, Limited, Tel Aviv has no parent corporation and no publicly held corporation directly or indirectly owns 10% or more of its stock.

176. Jared Trading Limited/BVI states that it has no parent corporation and no public corporation directly or indirectly owns 10% or more of its equity interests.

177. KAS BANK N.V. (sued as KAS BANK) and KAS Depositary Trust Company a/k/a KAS BANK Effectenbewaarbedrijf N.V. a/k/a KDTC Conc Theta Multistar Low Volatility Fund a/k/a KDTC Conc Theta Multistar Low Volatility Fund ("KAS Depositary")[3]  (also sued as KASBANK Depositary Trust Company Conc Theta Multistar Low Volatility Fund)[4], by and through their undersigned counsel, hereby disclose the following:

---

[3]     KAS Depositary Trust Company was the trade name used outside the Netherlands by KAS BANK Effectenbewaarbedrijf N.V. KAS Depositary is no longer an operational company.

[4]     There is no KAS BANK entity named KASBANK Depositary Trust Company Conc Theta Multistar Low Volatility Fund /k/a KDTC Conc Theta Multistar Low Volatility Fund. KAS Depositary became a shareholder in the relevant Fairfield fund on behalf of its client Theta Multistar Low Volatility Fund.

a. KAS Depositary merged into KAS BANK N.V. on January 15, 2013, and ceased to exist as an entity.

b. KAS BANK N.V. merged into CACEIS Bank S.A. on November 1, 2020, and ceased to exist as an entity.

c. CACEIS S.A. owns 10% or more of the equity interest of CACEIS Bank S.A.

d. Crédit Agricole S.A. owns 10% or more of the equity interest of CACEIS S.A.

e. Santander Investment, S.A. owns 10% or more of the equity interest of CACEIS S.A.

f. SAS Rue la Boétie owns 10% or more of the equity interests of Crédit Agricole S.A.

g. Banco Standander, S.A. owns 10% or more of the equity interest in Santander Investment, S.A.

178. Karen Lefcourt Trust states that no entity owns, directly or indirectly, 10% or more of Karen Lefcourt Trust.

179. KBL European Private Bankers S.A. f/k/a Kredietbank SA Luxembourgeoise ("KBL"), through its undersigned attorneys, states that the

---

Theta Multistar Low Volatility Fund is a former KAS BANK client, but not a KAS BANK entity.

lii

following entities own (either directly or indirectly) 10% or more of any class of equity interests in KBL: Pioneer Holding S.A. and Precision Capital S.A.

180. KGI Asia Limited ("KGI Asia"), as successor in interest to Defendant Grand Cathay Securities (Hong Kong) Limited ("Grand Cathay"), hereby files its Corporate Ownership Statement and states that KGI Limited owns 100% of the interests in KGI Asia Limited.

181. Korea Exchange Bank (n/k/a Hanabank) states that its parents is wholly owned by Hana Financial Group and no public company is known to owns 10% or more of its stock. This Statement of Ownership applies also to individual appeal case numbers 22-2249 and 22-2607.

182. KWI, through its undersigned counsel, states that it is an Ohio nonprofit corporation whose sole member is KnowledgeWorks Foundation, also a nonprofit corporation organized under the laws of Ohio. There is no publicly held corporation owning ten percent (10%) or more of the stock of KWI.

183. Legacy Fund Ltd. ("Legacy"), by and through its undersigned counsel, states that it does not have a corporate parent and no publicly held corporation owns 10% or more of any of its stock.

184. LGT Bank in Liechtenstein AG (now known as LGT Bank AG) hereby states that LGT Bank AG is wholly owned by LGT Group Holding Ltd.

LGT Group Holding Ltd. is wholly owned by LGT Group Foundation. LGT Group Foundation is wholly owned by Prince of Liechtenstein Foundation. No publicly listed corporation owns 10% or more of LGT Bank AG's total share capital.

185. Lion Global Investors Limited ("LGI") (a corporate non-governmental party) states that LGI is 70%-owned by Great Eastern Holdings Limited ("Great Eastern") and 30%-owned by Orient Holdings Private Limited ("Orient Holdings"). Great Eastern is majority-owned and Orient Holdings is wholly owned by Oversea-Chinese Banking Corporation Limited ("OCBC"). LGI, Great Eastern, Orient Holdings and OCBC are corporations formed under the laws of Singapore.

186. Liongate Multistrategy Fund SEG Portfolio states that it has no parent company and that no publicly traded company owns 10% or more of its shares."

187. Lloyds TSB Bank Geneva, now known as Lloyds Bank plc, by and through its undersigned counsel, states that it is a wholly-owned subsidiary of Lloyds Banking Group plc, a publicly traded company listed on the New York Stock Exchange, and London Stock Exchange. There are no publicly held corporations that own 10% or more of Lloyds Banking Group plc common stock.

188. Lombardy Properties Limited has no parent corporation and no publicly held corporation directly or indirectly owns 10% or more of its stock.

189. Melrose Investments Ltd. hereby states by and through its attorneys, Becker, Glynn, Muffly, Chassin & Hosinski LLP, Appellate Procedure Rule 26.1, and to enable judges and magistrate judges of the Court to evaluate possible disqualification or recusal, that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

190. Meritz Financial Group, Inc. owns 10% or more of Meritz Fire & Marine Insurance Co. Ltd.'s stock. No other corporation directly or indirectly owns 10% or more of any class of the equity interests of Meritz Fire & Marine Insurance Co. Ltd.

191. Merrill Lynch Bank (Suisse) SA was merged into Bank Julius Baer & Co. Ltd. ("BJB") on May 31, 2013. Merrill Lynch Bank (Suisse) SA identifies Julius Baer Group Ltd. as directly or indirectly owning 10% or more of any class of BJB's equity interests.

192. Merrill Lynch International is an indirect wholly-owned subsidiary of Bank of America Corporation, a publicly traded corporation. Bank of America Corporation is a publicly held company whose shares are traded on the New York Stock Exchange and has no parent corporation. Based on the U.S. Securities and Exchange Commission Rules regarding beneficial ownership,

lv

Berkshire Hathaway Inc., 3555 Farnam Street, Omaha, Nebraska 68131, beneficially owns greater than 10% of Bank of America Corporation's outstanding common stock.

193. Merrill Lynch, Pierce, Fenner & Smith Incorporated is a direct, wholly-owned subsidiary of BAC North America Holding Company. BAC North America Holding Company is a direct, wholly-owned subsidiary of NB Holdings Corporation. NB Holdings Corporation is a direct, wholly-owned subsidiary of Bank of America Corporation, which is a publicly held company whose shares are traded on the New York Stock Exchange and has no parent corporation. Based on the U.S. Securities and Exchange Commission Rules regarding beneficial ownership, Berkshire Hathaway Inc., 3555 Farnam Street, Omaha, Nebraska 68131, beneficially owns greater than 10% of Bank of America Corporation's outstanding common stock.

194. Millennium Multi-Strategy Fund ("MMSF"), by and through its undersigned counsel, states the following: the following entities own 10 percent or more of the equity interests in MMSF: Lombard Odier Darier Hentsch & Cie; Rosington Limited; and Warana SP Master Fund SPC - 2019 Segregated Portfolio.

195. Mirabaud & Cie SA, formerly known as Mirabaud & Cie, certifies (1) Mirabaud & Cie SA is wholly owned by Mirabaud SCA; (2) Mirabaud SCA is wholly owned by the partnership Mirabaud Partners & Cie; and (3) no corporation owns 10% or more of the equity interests of Mirabaud Partners & Cie.

196. Mizrahi Tefahot Bank Ltd. has no parent corporation and that no publicly held corporation  owns 10% or more of its stock.

197. Monte Paschi Ireland Limited ("MPIL") hereby states that on or about February 2014, MPIL, a 100%-owned subsidiary of Banca Monte dei Paschi di Siena S.p.A. ("BMPS"), merged into and was absorbed by BMPS. The Ministry of Economy and Finance (Italy) owns 64.23% of BMPS's stock.

198. Morgan Stanley (Switzerland) GmbH (formerly Morgan Stanley (Switzerland) AG, resp. Bank Morgan Stanley AG), hereby states as follows: Morgan Stanley (Switzerland) GmbH is a private company whose sole shareholder is Morgan Stanley Swiss Holdings GmbH, a private company whose sole shareholder is Morgan Stanley Domestic Holdings, Inc., a corporation wholly owned by Morgan Stanley Capital Management, LLC, a limited liability company whose sole member is Morgan Stanley. Morgan Stanley is a publicly held corporation that has no parent corporation.

a. Based on Securities and Exchange Commission Rules regarding beneficial ownership, Mitsubishi UFJ Financial Group, Inc., 7-1 Marunouchi 2-chome, Chiyoda-ku, Tokyo 100-8330, beneficially owns greater than 10% of Morgan Stanley's outstanding common stock

199. Naidot & Co. has no parent corporation nor is there any publicly held corporation owning 10% or more of its stock.

200. Natexis Banques Populaires is now known as Natixis S.A.

201. National Bank of Kuwait S.A.K. ("NBK") and NBK Banque Privée (Suisse) S.A. ("NBK Suisse") state that NBK has no parent entity; no known public company owns 10% or more of NBK's stock; and NBK Suisse is 100% owned directly by NBK. This Statement of Ownership applies also to individual appeal case numbers 22-2208, 22-2241, 22-2304, and 22-2556.

202. Natixis S.A. states that (1) CDC ICM The Ghos Portfolio a/k/a CDC IXIS Capital Markets; (2) Eurogate Farad Global Niche; (3) ICIB Atlantique Alpha Master; (4) ICIB Centre France Alpha Prot Master; (5) ICIB Cote d'Armor Alpha Master; (6) ICIB Ethias Allocation Master; (7) ICIB Hyperion Alternative Basket II Master; (8) ICIB Hyperion Alternative Basket Master; (9) ICIB Natexis Lux Alpha Master; (10) ICM Tactical Master; and (11) Strategy Sicav Edpaf are accounts that were opened and/or operated by Natixis S.A. or its predecessors in title.

203. Natixis S.A. states that it is a wholly-owned subsidiary of Group BPCE, a French banking group that is not publicly traded.

204. Natixis Wealth Management Luxembourg, formerly known as Natixis Private Banking International S.A., states that it is an indirect wholly-owned subsidiary of Natixis S.A.

205. Neue Bank AG, by its attorneys, Fox Horan & Camerini LLP, states that Neue Bank AG has no parent and that no publicly traded entity owns 10% or more of its shares.

206. NMAS1 Gestión SGIIC S.A. (now operating as Alantra Wealth Management Gestión SGIIC, S.A.) certifies that it has two direct owners: (i) 3Axis Involvement, SL (23.71%); and (ii) Mutuamad Inversiones SAU (76.28%).

207. Nomura International plc states that Nomura International plc is a wholly-owned subsidiary of Nomura Europe Holdings plc, which, in turn, is a wholly-owned subsidiary of Nomura Holdings, Inc., a publicly traded company. No publicly held corporation directly owns 10% or more of Nomura Holdings Inc.'s stock.

208. Oddo BHF SCA, formerly known as Oddo & Cie and sued herein as FS Oddo & Cie, and Oddo BHF Asset Management SAS, formerly known as Oddo Asset Management and sued here in as OAM, pursuant to Rule 26.1 of

the Federal Rules of Appellate Procedure and to enable the judges of this

Court to evaluate possible disqualification or recusal, by and through their

undersigned counsel, respectively certify as follows:

    a.  No corporation other than Financière IDAT SAS owns 10% or more of

        the equity interests of Defendant-Appellee Oddo BHF SCA.

    b.  The equity interests of Defendant-Appellee Oddo Asset Management

        BHF SAS are owned 100% by Defendant-Appellee Oddo BHF SCA.

209.  OFI MGA Alpha Palmares, FKA Oval Alpha Palmares states that it has no

     parent company and no publicly-held corporation owns ten percent or more

     of its stock.

210.  Perenco SA ("Perenco") states that it is a wholly owned subsidiary of

     Perenco International Limited.  No publicly held corporation owns 10% or

     more of the stock of Perenco.

211.  Pictet & Cie Group SCA is the parent company of Banque Pictet & Cie SA.

     No publicly held corporation owns 10% or more of Banque Pictet & Cie

     SA's stock.

212.  Piguet Galland & Cie SA (sued as Banque Piguet & Cie S.A.) identifies

     Banque Cantonale Vaudoise as its parent company and states that the Canton

     de Vaud owns 10% or more of the equity interests of Banque Cantonale

     Vaudoise.

213. Platinum All Weather Fund Limited ("Platinum") is a limited liability exempted company incorporated in the Cayman Islands. Nomura International Plc and LGT Bank (Switzerland) Ltd directly or indirectly own 10% or more of a class of the company's equity interests.

214. Pleasant T. Rowland Foundation Inc., a private, non-governmental charitable foundation, by and through undersigned counsel, makes the following disclosure: it has no parent corporation, and no publicly-traded corporate entity directly or indirectly owns 10% or more of any class of its equity interests.

215. Portobelo Advisors Inc. states that the following is an accurate list of corporations, limited partnerships and/or joint ventures, other than governmental units, that directly or indirectly own 10% or more of any class of Portobelo Advisors Inc.'s equity interests: None.

216. Private Space Ltd. states that ten percent (10%) or more of its stock is owned by Blue-Lory Ltd., a foreign non-public corporation.

217. Public Bank (Hong Kong) Limited states that the following is an accurate list of any parent corporations and any publicly held corporation owning 10% or more of its stock: (i) Public Financial Holdings Limited and (ii) Public Bank Berhad.

218. Public Bank (Nominees) Limited states that the following is an accurate list of any parent corporations and any publicly held corporation owning 10% or more of its stock: (i) Public Bank (Hong Kong) Limited, (ii) Public Financial Holdings Limited, and (iii) Public Bank Berhad.

219. Quasar Fund SPC Class A and Class B CGCNV certifies that it has no publicly held parent corporation and that no publicly held corporation owns ten percent or more of the petitioner.

220. Quintet Private Bank (Europe) SA f/k/a Kredietbank SA Luxembourgeoise ("KBL"), through its undersigned attorneys, states that the following entities own (either directly or indirectly) 10% or more of any class of equity interests in KBL: Pioneer Holding S.A. and Precision Capital S.A.

221. Rahn & Bodmer Banquiers (n/k/a Rahn+Bodmer Co.) states Rahn+Bodmer Co. is a limited partnership without capital or stock, Rahn+Bodmer Co. has no parent corporation, and no publicly held corporation is a partner of Rahn+Bodmer Co.

222. RBC Dominion Securities, by and through its undersigned counsel, state that RBC Dominion Securities is an indirect, wholly-owned subsidiary of Royal Bank of Canada. Royal Bank of Canada is a publicly traded corporation listed on the New York Stock Exchange and Toronto Stock Exchange.

There are no publicly held corporations that own 10% or more of Royal Bank of Canada's common stock.

223. RBC Investor Services Bank S.A., f/k/a RBC Dexia Investor Services Bank S.A., by and through its undersigned counsel, states that it is an indirect, wholly owned subsidiary of Royal Bank of Canada, a publicly traded corporation listed on the New York Stock Exchange and Toronto Stock Exchange. There are no publicly held corporations that own 10% or more of Royal Bank of Canada's common stock.

224. RBC Investor Services España (now known as Bancoval S.A.), named herein as RBC Dexia Investor Services España, by and through its undersigned counsel, states that: (1) RBC Investor Services España has been acquired by and merged with Banco Inversis S.A.; (2) Banco March S.A. holds 100% of the equity interests of Banco Inversis S.A.; (3) Banco March S.A. is a privately held company and no publicly traded corporations own 10% or more of the equity of Banco March S.A.

225. RBS Coutts Bank Ltd., now known as Coutts & Co. Ltd., by and through its undersigned counsel, states that it is an indirect, wholly-owned subsidiary of NatWest Group plc, f/k/a The Royal Bank of Scotland Group plc, a publicly traded company listed on the New York Stock Exchange, and London Stock

Exchange.  There are no publicly held corporations that own 10% or more of NatWest Group plc common stock.

226.  Rothschild & Co Bank AG (sued as Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG) states that it has no parent corporation and identifies the following entities as corporate entities that own 10% or more of its equity interests:

    a.  Rothschild & Co Wealth and Asset Management SAS;

    b.  Rothschild & Co SCA; and

    c.  Rothschild & Co Concordia SAS.

227.  Rothschild & Co. Asset Management Europe (f/k/a Rothschild & Cie Gestion), management company of the fund Elan Gestion Alternative (sued as Rothschild and Cie Banque-EGA) ("Rothschild & Cie EGA") states on behalf of Elan Gestion Alternative (the "EGA Fund") that the EGA Fund is a fund and not a corporate party and therefore there are no parent corporations or publicly held corporations as to which disclosure is required.  Rothschild & Co Asset Management Europe is a subsidiary of Rothschild Martin Maurel.

228.  Rothschild & Co. Asset Management Europe (f/k/a Rothschild & Cie Gestion), management company of the Elite fund (sued as Rothschild & Cie Banque Paris) ("Rothschild & Cie Elite") states on behalf of the Elite fund

that the Elite fund is a fund and not a corporate party and therefore there are

no parent corporations or publicly held corporations as to which disclosure is

required. Rothschild & Co Asset Management Europe is a subsidiary of

Rothschild Martin Maurel.

229. Royal Bank of Canada a/k/a RBC Capital Markets Corporation, by and

through its undersigned counsel, state that it is an indirect, wholly-owned

owned subsidiary of Royal Bank of Canada. Royal Bank of Canada is a

publicly traded corporation listed on the New York Stock Exchange and

Toronto Stock Exchange. There are no publicly held corporations that own

10% or more of Royal Bank of Canada's common stock.

230. Royal Bank of Canada Singapore Branch, by and through its undersigned

counsel, states that it is a branch of Royal Bank of Canada, a publicly traded

corporation listed on the New York Stock Exchange and Toronto Stock

Exchange. There are no publicly held corporations that own 10% or more of

Royal Bank of Canada's common stock.

231. Royal Bank of Canada, erroneously identified as NYROY, Royal Bank of

Canada, by and through its undersigned counsel, states Royal Bank of

Canada is a publicly traded corporation listed on the New York Stock

Exchange and Toronto Stock Exchange. There are no publicly held

corporations that own 10% or more of Royal Bank of Canada's common stock.

232. Safra National Bank of New York states that its corporate parent is Safra New York Corporation and no publicly held corporation owns 10 percent or more of its stock.

233. SCB Nominees (CI) Ltd. states that it is a wholly owned subsidiary of Standard Chartered Bank. Standard Chartered Bank is a subsidiary of Standard Chartered Holdings Limited, which, in turn, operates as a subsidiary of Standard Chartered PLC. No publicly held corporation has notified Standard Chartered PLC of an interest of more than 10% in Standard Chartered PLC's issued ordinary share capital in accordance with the United Kingdom's Financial Conduct Authority's Disclosure and Transparency Rules.

234. Schroder & Co. (Asia) Ltd. ("Schroder Asia") states that it is ultimately a wholly owned subsidiary of Schroders plc, which is a publicly held corporation. No other publicly held corporation owns 10% or more of the stock of Schroder Asia.

235. Schroder & Co. Bank AG ("Schroder AG") states that it is ultimately a wholly owned subsidiary of Schroders plc, which is a publicly held

corporation.  No other publicly held corporation owns 10% or more of the stock of Schroder AG.

236.  Schroders Italy SIM S.p.A. ("Schroders Italy") states that it is ultimately a wholly owned subsidiary of Schroders plc, which is a publicly held corporation.  No other publicly held corporation owns 10% or more of the stock of Schroders Italy.

237.  Sciens CFO 1 Feeder Fund Ltd. and Sciens Global Opportunity Fund state that: (1) Sciens CFO 1 Feeder Fund Ltd. has no parent corporation, nor is there any publicly held corporation owning 10% or more of its stock; and (2) Sciens Global Opportunity Fund has no parent corporation, nor is there any publicly held corporation owning 10% or more of its stock.

238.  SEI Investments – Depositary and Custodial Services (Ireland) Limited (f/k/a SEI Investments Trustee and Custodial Services (IRELAND) Ltd.) ("SEI"), by and through its undersigned counsel, states the following: SEI is wholly-owned by SEI Investments – Global, Limited.  SEI Investments – Global, Limited is wholly-owned by SEI Global Investments Corp.  SEI Global Investments Corp. is wholly owned by SEI Investments Company.  SEI Investments Company is a publicly traded company.

239.  Select Absolute Strategies SICAV (n/k/a Goldman Sachs Asset Management B.V.), a nongovernmental party, through its undersigned attorneys, states

that the following entities own, directly or indirectly, more than 10% of the stock of Goldman Sachs Asset Management B.V.: Goldman Sachs Asset Management International Holdings B.V., Goldman Sachs Asset Management Holdings B.V., Goldman Sachs Asset Management Holdings I B.V., Goldman Sachs Asset Management Holdings II B.V., Goldman Sachs Asset Management UK Holdings II Ltd., Goldman Sachs Asset Management UK Holdings I Ltd., Goldman Sachs Asset Management Holdings LLC, GSAM Holdings LLC and GSAM Holdings II LLC. Goldman Sachs Group, Inc. wholly owns, directly or indirectly, each of the other aforementioned entities, and is a Delaware corporation listed in the New York Stock Exchange. No publicly held company owns more than 10% stock of Goldman Sachs Group, Inc.

240. Sequent (Schweiz) AG states that it is owned by Sequent (UK) Limited.

241. SG Hambros Nominees (Jersey), AKA SG Hambros Nominees (Jersey) Limited identifies SG Kleinwort Hambros Trust Company (CI) Limited, which is wholly owned by SG Kleinwort Hambros Bank Limited, as its parent corporation and Société Générale S.A. as its ultimate parent corporation and states that no other public corporation directly or indirectly owns 10% or more of its equity interests.

242. SG Kleinwort Hambros (CI) Limited (sued as SG Hambros Bank & Trust (Guernsey) Ltd. and SG Hambros Bank (Channel Islands) Limited Guernsey, AKA SG Hambros Bank (Channel Islands) Limited) identifies SG Kleinwort Hambros Bank Limited as its parent corporation and Société Générale S.A. as its ultimate parent corporation and states that no other public corporation directly or indirectly owns 10% or more of its equity interests.

243. Simgest SpA ("Simgest") states that it is aware of the following entities that own 10% or more of Simgest's equity interests: COOP Alleanza 3.0 Società Cooperativa, COOP Lombardia Società Cooperativa, COOP Liguria Società Cooperativa di Consumo e NOVA COOP Società Cooperativa.

244. Six Sis AG, AKA Sis SegaInterSettle AG, through its undersigned counsel, certifies that Six Sis AG is a wholly owned subsidiary of SIX Securities Services AG, and that UBS AG and Credit Suisse AG each indirectly owns 10% or more of Six Sis AG's stock.

245. Six SIS Ltd., through its undersigned counsel, certifies that Six SIS Ltd. is a wholly owned subsidiary of SIX Securities Services AG, and that UBS AG and Credit Suisse AG each indirectly owns 10% or more of Six SIS Ltd.'s stock.

246.  SNS Global Custody B.V. (n/k/a de Volksbank N.V.) (sued as SNS Global
      Custody B.V. a/k/a SNS Bank N.V) states that Stichting
      administratiekantoor beheer financiële instellingen and Stichting
      Administratiekantoor Bewaarbedrijven SNS own more than 10% of the
      equity interests in SNS Global Custody B.V.

247.  Société Générale Luxembourg (sued as Societe Generale Bank & Trust,
      Societe Generale Bank & Trust (Luxembourg), and Societe Generale Bank
      & Trust S.A., (Luxembourg)) identifies Sogeparticipations S.A.S. as its
      parent corporation and Société Générale S.A. as its ultimate parent
      corporation and states that no other publicly held corporation owns more
      than 10% of any class of equity interests in Société Générale Luxembourg.

248.  Société Générale Private Banking (Suisse) S.A. (f/k/a SG Private Banking
      Suisse S.A.), individually and as successor in interest to Société Générale
      Private Banking (Lugano-Svizzera) S.A. (sued as FS/SG Private Banking
      (LuganoSvizzera) SA, AKA FS/SG Private Banking Suisse SA) identifies
      Société Générale S.A. as its ultimate parent corporation and states that no
      other publicly held corporation directly or indirectly owns 10% or more of
      its equity interests.

249.  Societe Generale S.A., the successor in interest to Defendant Banque de
      Reescompte et de Placement a/k/a Barep ("Barep"), states on behalf of

Barep that Societe Generale S.A. has no parent corporation and no public corporation owns 10% or more of its equity interests.

250. Standard Chartered International (USA) LLC ("SCIUSA"), formerly known as Standard Chartered International (USA) Ltd., states that SCIUSA is now in liquidation. SCIUSA has transferred its assets and liabilities to Standard Chartered Holdings Inc., which accordingly owns 10% or more of SCIUSA's equity interests. Standard Chartered Holdings Inc. is a subsidiary of Standard Chartered Bank. Standard Chartered Bank is a subsidiary of Standard Chartered Holdings Limited, which, in turn, operates as a subsidiary of Standard Chartered PLC. No publicly held corporation has notified Standard Chartered PLC of an interest of more than 10% in Standard Chartered PLC's issued ordinary share capital in accordance with the United Kingdom's Financial Conduct Authority's Disclosure and Transparency Rules.

251. Standard Chartered Premium Fund ("SC Premium Fund"), formerly known as American Express Offshore Alternative Investment Fund, and now in liquidation, states that Standard Chartered PLC directly or indirectly owns 10% or more of SC Premium Fund's equity interests. No publicly held corporation has notified Standard Chartered PLC of an interest of more than 10% in Standard Chartered PLC's issued ordinary share capital in

accordance with the United Kingdom's Financial Conduct Authority's Disclosure and Transparency Rules.

252. Stanhope Capital (Switzerland) SA, sued incorrectly herein as Stanhope Capital, is 100% owned by Stanhope Capital Group SA. Stanhope Capital Group SA has no parent corporation and no publicly held corporation owns 10% or more of its stock.

253. Swedbank, named as themselves and named erroneously as (i) FS/Swedclient/IAM and (ii) Swedbank/IAM, by and through its undersigned counsel, states that it is a publicly traded corporation listed on the NASDAQ Sweden. There are no publicly held corporations that own 10% or more of Swedbank common stock.

254. Tayleigh Trust Co. Ltd. states that it is wholly owned by Mordas Consolidated Purpose Trust, a Bermuda Purpose Trust which does not have owners.

255. The Reserve Trust states that no entity owns, directly or indirectly, 10% or more of The Reserve Trust.

256. The following entities each directly or indirectly own 10% or more of equity interest in Credit Industriel et Commercial Singapore: Banque Fédérative du Crédit Mutuel and Caisse Fédérale de Crédit Mutuel.

257. The long-term insurance business of Utmost Limited f/k/a AXA Isle of Man Limited was transferred to Utmost International Isle of Man Limited in November 2022. Utmost Limited f/k/a AXA Isle of Man Limited and Utmost International Isle of Man Limited state that they both are owned by Utmost Holdings Isle of Man Limited. No publicly held corporation owns 10% or more of (i) Utmost Limited f/k/a AXA Isle of Man Limited's stock or (ii) Utmost International Isle of Man Limited's stock.

258. Theodoor GGC Amsterdam a/k/a Theodoor Gilissen Global Custody N.V. ("Theodoor"), through its undersigned attorneys, states that the following entities own (either directly or indirectly) 10% or more of any class of equity interests in Theodoor: Stichting Theodoor Gilissen Global Custody.

259. UBS (Luxembourg) S.A., now known as UBS Europe SE, Luxembourg Branch, is owned indirectly by UBS Group AG, a publicly traded company. UBS Group AG has no parent company and no publicly traded company owns 10% or more of UBS Group AG's stock.

260. UBS AG, also improperly named as "UBS Zurich," "UBS AG Zurich," and "UBS AG New York," is owned by UBS Group AG, a publicly traded company. UBS Group AG has no parent company and no publicly traded company owns 10% or more of UBS Group AG's stock.

261. UBS Deutschland AG, now known as UBS Europe SE, is owned indirectly by UBS Group AG, a publicly traded company. UBS Group AG has no parent company and no publicly traded company owns 10% or more of UBS Group AG's stock.

262. UBS Fund Services (Cayman) Ltd, also improperly named as "UBS Fund Services (Cayman) Limited REF Greenlake Arbitrage Fund Ltd." and now known as MUFG Alternative Fund Services (Cayman) Limited, is owned indirectly by Mitsubishi UFJ Financial Group, Inc., a publicly traded company. Mitsubishi UFJ Financial Group, Inc. has no parent company and no publicly traded company owns 10% or more of Mitsubishi UFJ Financial Group, Inc.'s stock.

263. UBS Fund Services (Ireland) Limited, now known as MUFG Alternative Fund Services (Ireland) Limited, is owned indirectly by Mitsubishi UFJ Financial Group, Inc., a publicly traded company. Mitsubishi UFJ Financial Group, Inc. has no parent company and no publicly traded company owns 10% or more of Mitsubishi UFJ Financial Group, Inc.'s stock.

264. UBS Jersey Nominees Limited, improperly named as "UBS Jersey Nominees," is owned indirectly by UBS Group AG, a publicly traded company. UBS Group AG has no parent company and no publicly traded company owns 10% or more of UBS Group AG's stock.

265. VEGA Investment Managers, formerly known as IXIS Private Capital Management ("IPCM"), states that it is an indirect wholly-owned subsidiary of Natixis S.A.

266. Verwaltungs und Privat - Bank AG Aktiengesellschaft (AMS) (now known as VP Bank AG) hereby states that it has no parent corporation and no publicly held corporation owns 10% or more of its total share capital.

267. Vontobel Asset Management Inc. hereby states that it is wholly owned by Vontobel Holding AG, which is publicly held.

268. Vorarlberger Landes- und Hypothekenbank AG, now known as Hypo Vorarlberg Bank AG, through its undersigned counsel states that Vorarlberger Landesbank-Holding is its parent company and that no publicly held company owns 10% or more of its stock.

269. Wall Street Securities S.A., f/k/a Bantal Brothers, S.A. states that its parent corporation is Banco General S.A. and no publicly traded company owns 10% or more of its stock.

270. Wegelin & Company ("Wegelin"), by and through its undersigned counsel, states the following:  Wegelin is no longer an operational company.  In or about summer 2013, Wegelin was converted into a corporation formed under Swiss law and changed its name to Wen AG.  In all matters related to this action, counsel for Wegelin will be acting on behalf of, and at the direction

of, Wen AG. Wen AG is wholly owned by Wegelin & Co. AG, a non-public holding company. No publicly-held corporation owns 10 percent or more of Wen AG's stock.

271. Woori Bank ("Woori"), through its undersigned attorneys, states that 100% of Woori's equity is owned by Woori Financial Group Inc. ("Woori FG"). There is no corporate entity that owns 10% or more of any class of Woori FG's equity interests.

272. Dunbar Assets Ireland Unlimited Company, sued herein as Zurich Capital Markets Company and Zurich Bank, is wholly owned by Zurich Financial Services EUB Holdings Limited, which in turn is directly owned by Zurich Insurance Group Ltd. Zurich Insurance Group Ltd has no parent corporation and no public company owns 10% or more of the shares in Zurich Insurance Group Ltd.

273. ZCM Asset Holding Company (Bermuda) Limited is wholly owned by Zurich Finance Company Ltd, which in turn is wholly owned by Zurich Insurance Company Ltd, which in turn is wholly owned by Zurich Insurance Group Ltd. Zurich Insurance Group Ltd has no parent corporation and no public company owns 10% or more of the shares in Zurich Insurance Group Ltd.

274. ZCM Matched Funding Corp. is wholly owned by Zurich Capital Markets Inc., which in turn is wholly owned by ZCM (U.S.) Limited, which in turn is wholly owned by Zurich Finance Company Ltd, which in turn is wholly owned by Zurich Insurance Company Ltd, which in turn is wholly owned by Zurich Insurance Group Ltd.  Zurich Insurance Group Ltd has no parent corporation and no public company owns 10% or more of the shares in Zurich Insurance Group Ltd.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................lxxx

COUNTER-STATEMENT OF ISSUES PRESENTED ...........................................1

PRELIMINARY STATEMENT ...........................................................2

COUNTER-STATEMENT OF THE CASE ............................................5

A.   THE FUNDS.................................................................5

B.   AFTER BLMIS'S FRAUD IS REVEALED, THE FUNDS ENTER
LIQUIDATION IN THE BVI AND UNSUCCESSFULLY PURSUE
CLAWBACK LITIGATION THERE ..........................................7

C.   PLAINTIFFS BRING PARALLEL CLAIMS IN THE
UNITED STATES.........................................................10

SUMMARY OF THE ARGUMENT ....................................................14

ARGUMENT ...................................................................18

I.    SECTIONS 546(e) AND 561(d) BAR PLAINTIFFS' CLAIMS ..............18

    A.   The District Court Correctly Held That Sections 546(e) And
561(d) Apply To Claims Seeking To Avoid Foreign Transfers In
Cases Under Chapter 15 ................................................18

        1.   The District Court Correctly Held That Section 561(d)'s
Incorporation Of The Section 546(e) Safe Harbor Is A
Domestic Application Of Law .....................................19

        2.   Section 561(d) Clearly And Affirmatively Applies Section
546(e) To Claims Seeking Foreign Transfers..........................28

            a.   Under Section 561(d), Section 546(e) Applies "To
The Same Extent" In A Case Under Chapter 15 ...........28

            b.   Section 561(d) Is Expressly Not Limited By The
Location Of The Relevant Transfer................................34

            c.   Comity Provides No Reason To Disregard Section
561(d)'s Express Statutory Command............................37

    B.   The Section 548(a)(1)(A) Exception To Section 546(e) Does Not
Apply To Plaintiffs' Claims ..........................................38

        1.   Section 546(e)'s Plain Language Exempts Only Specific
Bankruptcy Code Claims, Not "Analogous" Foreign-Law
Claims, From The Safe Harbor................................38

      2.     Plaintiffs Did Not Plead Any Claim That Requires Intent To Defraud .................................................................. 40

   C.     Plaintiffs' Common Law Claims Are Also Barred By The Safe Harbor .................................................................... 44

II.     THE DISTRICT COURT CORRECTLY AFFIRMED THE DISMISSAL OF PLAINTIFFS' CONTRACT AND COMMON LAW CLAIMS ...................................................................... 48

   A.     BVI Law And The Funds' Articles Make The NAVs Binding On The Funds .................................................. 49

        1.     The District Court Correctly Held That BCA Section 31 Bars Plaintiffs' Contract And Common Law Claims ............... 50

        2.     The Articles Independently Establish That Plaintiffs Are Bound By The NAVs, As The Privy Council Held In *Migani* ................................................................ 54

        3.     The District Court Correctly Applied The Illegality Defense To Bar Plaintiffs' Contract And Common Law Claims ......................................................... 60

   B.     Plaintiffs' Claims Are Also Barred Because Defendants Exchanged Good Consideration For Their Redemption Payments, As The Bankruptcy Court and ECCA Correctly Held .................................... 63

   C.     Plaintiffs Are Bound By Prior, Final Decisions In The BVI Courts Rejecting Their Very Same Arguments ................................. 65

III.   THE BANKRUPTCY COURT PROPERLY DISMISSED THE BIA SECTION 246 CLAIM FOR FAILURE TO STATE A CLAIM ................ 71

IV.   DEFENDANTS DID NOT CONSENT TO NEW YORK JURISDICTION ON PLAINTIFFS' CLAIMS BY SIGNING SUBSCRIPTION AGREEMENTS, BECAUSE THOSE CLAIMS ARE NOT "WITH RESPECT TO" THOSE AGREEMENTS ................ 74

   A.     Plaintiffs' Limitless "But-For" Approach Is Inconsistent With This Court's Precedents ...................................... 77

   B.     The District Court Correctly Held That Plaintiffs' Claims Are Not "With Respect To" The Subscription Agreements ...................... 83

CONCLUSION ....................................................................... 88

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys. v. Takeda Pharm. Co.*,
  476 F.3d 421 (7th Cir. 2007) ...............................................................81

*ABN AMRO Fund Servs. (Isle of Man) 24 Nominees Ltd. v. Krys*,
  Nos. BVIHCMAP: 11-16, 23-28 ................................................50, 51

*ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
  307 F.3d 24 (2d Cir. 2002) ..................................................................81

*Alfadda v. Fenn*,
  966 F. Supp. 1317 (S.D.N.Y. 1997) ...................................................67

*Altria Grp., Inc. v. Good*,
  555 U.S. 70 (2008)................................................................................45

*Anderson v. Hansen*,
  47 F.4th 711 (8th Cir. 2022) ...............................................................79

*Anrion Corp. v. Ivanova*,
  2023 WL 2503496 (D. Mass. Mar. 14, 2023) ...................................88

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) ...............................................69

*Anwar v. Fairfield Greenwich Ltd.*,
  No. 09-cv-118 (VM) (S.D.N.Y. Apr. 24, 2009) ..........................11, 69

*AP Servs., LLP v. Silva*,
  483 B.R. 63 (S.D.N.Y. 2012) .............................................................45

*In re Awal Bank, BSC*,
  455 B.R. 73 (Bankr. S.D.N.Y. 2011).................................................32

*Bahamas Sales Assoc., LLC v. Byers*,
  701 F.3d 1335 (11th Cir. 2012) .........................................................81

*Bailey v. ERG Enters., LP*,
    705 F.3d 1311 (11th Cir. 2013) ..........................................................80

*Bank of Augusta v. Earle*,
    38 U.S. 519 (1839)..............................................................................45

*Re Barton Mfg. Co. Ltd.*
    [1999] 1 BCLC 740 .............................................................................42

*In re Bernard L. Madoff Inv. Sec. LLC*,
    721 F.3d 54 (2d Cir. 2013) ............................................................61, 62

*Blazevska v. Raytheon Aircraft Co.*,
    522 F.3d 948 (9th Cir. 2008) ..............................................................25

*Blonder-Tongue Lab'ys., Inc. v. Univ. of Illinois Found.*,
    402 U.S. 313 (1971)..............................................................................66

*Bostock v. Clayton Cnty.*,
    140 S. Ct. 1731 (2020)..........................................................................76

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co.*,
    779 F.3d 214 (3d Cir. 2015) ............................................................82, 83

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
    56 F.3d 343 (2d Cir. 1995) ...................................................................68

*Cho v. Blackberry Ltd.*,
    991 F.3d 155 (2d Cir. 2021) .................................................................67

*In re CIL Ltd.*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018)....................................................30

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    990 F.3d 173 (2d Cir. 2021) ..............................................77, 78, 79, 80

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
    241 F.3d 123 (2d Cir. 2001) .................................................................81

*In re Coudert Bros. LLP*,
    673 F.3d 180 (2d Cir. 2012) .................................................................67

*CSFB HOLT LLC v. Collins Stewart Ltd.*,
 2004 WL 1794499 (S.D.N.Y. Aug. 10, 2004)....................................................66

*DD Growth Premium 2X Fund v. RMF Mkt. Neutral Strategies
 (Master) Ltd.*,
 [2017] UKPC 36 ..................................................................................................56

*DiStefano v. Carozzi N. Am., Inc.*,
 286 F.3d 81 (2d Cir. 2001) .................................................................................75

*Doe v. Princess Cruise Lines, Ltd.*,
 657 F.3d 1204 (11th Cir. 2011) ..........................................................................79

*Ehrenfeld v. Mahfouz*,
 518 F.3d 102 (2d Cir. 2008) ...............................................................................41

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
 651 F.3d 329 (2d Cir. 2011) .........................................................................19, 89

*Evangelista v. Ashcroft*,
 359 F.3d 145 (2d Cir. 2004) ...............................................................................36

*Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*,
 145 F.3d 505 (2d Cir. 1998) ...............................................................................87

*In re FAH Liquidating Corp.*,
 572 B.R. 117 (Bankr. D. Del. 2017)...............................................................29, 30

*In re Fairfield Sentry Ltd.*,
 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)..................................*passim*

*In re Fairfield Sentry Ltd.*,
 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ...........................13, 43, 45

*In re Fairfield Sentry Ltd.*,
 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021)....................................14, 45

*In re Fairfield Sentry Ltd.*,
 596 B.R. 275 (Bankr. S.D.N.Y. 2018)......................................................*passim*

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*
 [2014] UKPC 9 ...........................................................................................*passim*

lxxxii

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011) ...........................................................10

*Fairfield Sentry Ltd. v. Citibank, N.A. London*,
2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ...........................................*passim*

*Fairfield Sentry Ltd. v. Citibank, N.A. London*,
2023 WL 2644226 (S.D.N.Y. Mar. 27, 2023)..................................................47

*Force v. Facebook*,
934 F.3d 53 (2d Cir. 2019) ...............................................23, 24, 26, 27

*Ginther v. Provident Life & Cas. Ins. Co.*,
350 F. App'x 494 (2d Cir. 2009) .......................................................68

*Henderson v. Henderson*
(1843) 3 Hare 100 .................................................................71

*HIH Cas. & Gen. Ins. Ltd. v Chase Manhattan Bank*,
[2003] 1 All ER 349 (Comm) .........................................................59

*Holliday v. Credit Suisse Sec. (USA) LLC*,
2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021) .....................................39, 89, 90

*Howlett ex rel. Howlett v. Rose*,
496 U.S. 356 (1990)....................................................................47

*Huffington v. T.C. Grp., LLC*,
637 F.3d 18 (1st Cir. 2011).............................................................82

*In re ICP Strategic Income Fund, Ltd.*,
730 F. App'x 78 (2d Cir. 2018) ........................................................62

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) ............................................................79

*Kannuu Pty Ltd. v. Samsung Elecs. Co.*,
15 F.4th 1101 (Fed. Cir. 2021) ........................................................80

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013)....................................................................27

*Kirschner v. KPMG LLP*,
  15 N.Y.3d 446 (2010) ......................................................................63

*Kumpf v. N.Y. State United Tchrs.*,
  2022 WL 17155847 (N.D.N.Y. Nov. 22, 2022)....................................24, 53, 69

*LaSala v. UBS, AG*,
  510 F. Supp. 2d 213 (S.D.N.Y. 2007) ................................................46

*Light v. Taylor*,
  317 F. App'x 82 (2d Cir. 2009) .........................................................87

*LoSacco v. City of Middletown*,
  71 F.3d 88 (2d Cir. 1995) .................................................................17

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
  252 F.3d 218 (2d Cir. 2001) .............................................................81

*In re Lyondell Chem. Co.*,
  543 B.R. 127 (Bankr. S.D.N.Y. 2016)................................................30

*In re Maxwell Comm'n Corp.*,
  93 F.3d 1036 (2d Cir. 1996) .............................................................30

*Merit Mgmt. Group, LP v. FTI Consulting, Inc.*,
  138 S. Ct. 883 (2018).............................................................18, 26, 31

*Miller v. CSFB (In re Refco, Inc. Secs. Litig.)*,
  2009 WL 7242548 (S.D.N.Y. Nov. 13, 2009)....................................39

*Monahan v. New York City Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000) .............................................................67

*Morning Mist Holdings, Ltd. v. Krys (In re Fairfield Sentry, Ltd.)*,
  714 F.3d 127 (2d Cir. 2013) .............................................................10

*Morrison v. Nat'l Aus. Bank Ltd.*,
  561 U.S. 247 (2010).........................................................................19

*NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*,
  105 F.3d 72 (2d Cir. 1997) ...............................................................68

*Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*,
348 F.2d 693 (2d Cir. 1965) ............................................................77, 78, 79, 80

*In re Nine W. LBO Sec. Litig.*,
482 F. Supp. 3d 187 (S.D.N.Y. 2020) ..................................................45

*In re Norske Skogindustrier ASA*,
629 B.R. 717 (Bankr. S.D.N.Y. 2021)..................................................39

*O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*,
383 B.R. 231 (Bankr. S.D.N.Y. 2008)..................................................60

*Oklahoma v. Castro-Huerta*,
142 S. Ct. 2486 (2022).......................................................................37

*Patel v. Mirza*,
[2016] UKSC 42 ...............................................................................60

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007) ..........................................................80, 86

*Phillips v. Brewin Dolphin Bell Lawrie*
[2001] BCC 864 (HL)..............................................................16, 72, 73

*Picard v. Citibank, N.A.*,
12 F.4th 171 (2d Cir. 2021) ..............................................................43

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014)..................................................39

*In re Picard*,
917 F.3d 85 (2d Cir. 2019) ............................................................25, 30

*Reiss v. Fin. Performance Corp.*,
97 N.Y.2d 195 (2001).......................................................................85

*Revson v. Cinque & Cinque, P.C.*,
221 F.3d 59 (2d Cir. 2000) ...............................................................75

*RJR Nabisco, Inc. v. European Cmty.*,
579 U.S. 325 (2016)..............................................................19, 20, 27

*Roby v. Corp. of Lloyd's*,
996 F.2d 1353 (2d Cir. 1993) ............................................................82

*S.A. Mar. et Commerciale of Geneva v. Anglo-Iranian Oil Co.*
[1954] 1 All ER 529.........................................................................52

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974)..........................................................................79

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
513 B.R. 222 (S.D.N.Y. 2014) ..........................................................30

*Simmtech Co. v. Citibank, N.A.*,
2016 WL 4184296 (S.D.N.Y. Aug. 3, 2016).....................................66

*Skandinaviska Enskilda Banken AB v. Conway*
[2019] UKPC 36 ........................................................................*passim*

*In re Soundview Elite, Ltd.*,
503 B.R. 571 (Bankr. S.D.N.Y. 2014)...............................................31

*Spanski Enters., Inc. v. Telewizja Polska, S.A.*,
883 F.3d 904 (D.C. Cir. 2018)..........................................................20

*In re SPhinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006)...............................................32

*Spinelli v. Nat'l Football League*,
903 F.3d 185 (2d Cir. 2018) .............................................................86

*In re Tribune Co. Fraudulent Conv. Litig.*,
10 F.4th 147 (2d Cir. 2021) ..............................................................44

*In re Tribune Co. Fraudulent Conv. Litig.*,
946 F.3d 66 (2d Cir. 2019) ..........................................................29, 44

*United States v. Atilla*,
966 F.3d 118 (2d Cir. 2020) .............................................................52

*Walden v. Fiore*,
571 U.S. 277 (2014)..........................................................................75

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC,*
  871 F.3d 791 (9th Cir. 2017) ...............................................................79

*Western GECO LLC v. ION Geophysical Corp.,*
  138 S. Ct. 2129 (2018).......................................................................20

*Yakin v. Tyler Hill Corp.,*
  566 F.3d 72 (2d Cir. 2009) ................................................................75

*Yamaha Corp. of Am. v. United States,*
  961 F.2d 245 (D.C. Cir. 1992)...........................................................69

*Yoder v. Honeywell Inc.,*
  104 F.3d 1215 (10th Cir. 1997) .........................................................70

**Statutes**

11 U.S.C. § 544 ..............................................................................30, 40

11 U.S.C. § 546(e) ...........................................................................*passim*

11 U.S.C. § 547 ....................................................................................40

11 U.S.C. § 548(a)(1)(A) .................................................................*passim*

11 U.S.C. § 548(a)(1)(B) ...............................................................40, 43

11 U.S.C. § 548(c) ...............................................................................43

11 U.S.C. § 561(d) ..........................................................................*passim*

11 U.S.C. § 1501 ....................................................................21, 33, 37

11 U.S.C. § 1502 ..................................................................................33

11 U.S.C. § 1504 ..................................................................................35

11 U.S.C. § 1507 ..................................................................................33

11 U.S.C. § 1512 ............................................................................32, 33

11 U.S.C. § 1513 ..................................................................................33

11 U.S.C. § 1514 ..................................................................................33

11 U.S.C. § 1515(a) ........................................................35

11 U.S.C. § 1520 ............................................................33

11 U.S.C. § 1521(a)(7) ....................................................31

11 U.S.C. § 1523 ...............................................31, 32, 33

11 U.S.C. § 1528 ............................................................33

11 U.S.C. § 1529 ............................................................33

28 U.S.C. § 1292(b) ........................................................47

47 U.S.C. § 230(c)(1) ................................................23, 24

Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L.
No. 109-8, tit. VIII, §§ 801, 802, Apr. 20, 2005, 119 Stat. 138 .................21, 22

BVI Business Companies Act § 11(3) ......................................59

BVI Business Companies Act § 31.....................................*passim*

BVI Business Companies Act § 66(4)(a) ................................52

BVI Business Companies Act § 103(2) ..................................52

BVI Conveyancing and Law of Property Act 1961 § 81(1)....................................43

BVI Crim. Code. § 221 ....................................................61

BVI Insolvency Act § 184(2)..............................................48

BVI Insolvency Act § 245 ............................................40, 41

BVI Insolvency Act § 246 ...........................................*passim*

BVI Secs. & Inv. Bus. Act (2010) § 91 ...............................61

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*........................79

**Other Authorities**

Binding, BLACK'S LAW DICTIONARY (11th ed. 2019) ............................51

CHITTY ON CONTRACTS (34th ed.) ¶ 36-351 ............................................................53

COLLIER ON BANKRUPTCY ¶ 1501.04 ....................................................................20

Fed. R. of App. P. 28(f) .........................................................................................42

*Financial Transactions in Insolvency: Reducing Legal Risk Through Legislative Reform* ................................................................................................22

H.R. Rep. No. 105-688, pt. 1 ................................................................................23

H.R. Rep. No. 106-711, pt. 2 ..........................................................................22, 23

H.R. Rep. No. 109-31, pt. 1 ............................................................................22, 32

*Hearings before the Committee on Banking and Financial Services*, 105th Cong. 119 ................................................................................................22

President's Working Group on Financial Markets, *Hedge Funds, Leverage, and the Lessons of Long-Term Capital Management* ............21, 22, 23

Joseph Story, COMMENTARIES ON THE CONFLICT OF LAWS § 8 (1834) ..................46

U.S. CONST. art. VI, cl. 2 .......................................................................................46

Valid, BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................51

Valid, OXFORD ENGLISH DICTIONARY (5th ed. 2002) .............................................51

William Henry M. Hart, Jr., *Politics and the Constitution in the History of the United States*, 67 Harv. L. Rev. 1456, 1469-70 (1954)

## COUNTER-STATEMENT OF ISSUES PRESENTED

1. Are Plaintiffs' claims barred because Section 561(d) of the Bankruptcy Code, which incorporates the Section 546(e) safe harbor for transactions in connection with securities contracts, limits the powers of foreign representatives to unwind covered foreign transactions in cases under Chapter 15 to the same extent it applies to covered domestic transactions?

2. Are the liquidators of investment funds barred under British Virgin Islands law from relying on the alleged "bad faith" of the funds' own agent to recover contractually-obligated redemption payments made to shareholders, when governing law and the funds' Articles of Association make the basis for the redemption price—the Net Asset Values of the shares—binding and final?

3. Did Plaintiffs-Appellants fail to adequately plead their claims under Section 246 of the British Virgin Islands Insolvency Act by failing to allege undervalue transactions?

4. Did the District Court correctly hold that Plaintiffs' claims are not governed by the forum selection clause in the funds' subscription agreements when those claims did not implicate any provision of those agreements?

## PRELIMINARY STATEMENT

The more than 350 Defendants-Appellees ("Defendants") listed in Addendum A are alleged to have been shareholders or beneficial owners of shares in three now-defunct British Virgin Islands ("BVI") investment companies—Fairfield Sentry Ltd., Fairfield Sigma Ltd., and Fairfield Lambda Ltd. (together, the "Funds")—that invested substantially all Fund assets with Bernard L. Madoff Investment Securities LLC ("BLMIS"). In the years before BLMIS collapsed, Defendants redeemed shares at redemption prices based on the Funds' Net Asset Values ("NAVs") calculated pursuant to the document governing their rights as shareholders, the Funds' Articles of Association (the "Articles"). Contrary to the false (and legally irrelevant) narrative Plaintiffs advance before this Court, many Defendants lost millions when BLMIS was revealed as a Ponzi scheme in 2008.

In an effort to circumvent the Articles' clear terms, after the Funds entered into liquidation in the BVI in 2009, Plaintiffs-Appellees, as the Funds' liquidators ("Plaintiffs"), instituted sprawling and meritless litigation across multiple jurisdictions to recover transfers from Defendants on BVI statutory and common law grounds that are barred to them.

The claims at issue in this appeal are not based on any allegation that these Defendants knew or should have known that BLMIS was engaged in fraud. Nor do Plaintiffs premise these claims on any assertion that Defendants acted illegally.

2

Instead, this appeal represents Plaintiffs' last-ditch effort to ask this Court to reach a different conclusion from the *five courts* (below, and in the BVI and the U.K.) that have already considered and rejected Plaintiffs' claims.

As the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") correctly held, and the District Court for the Southern District of New York (the "District Court") affirmed, Plaintiffs' claims fail for several reasons, including, among others:

*First*, the District Court correctly held that Plaintiffs' statutory avoidance claims under the BVI Insolvency Act ("BIA") are barred by the safe harbor in Section 546(e) of the Bankruptcy Code (the "Code") for transfers made in connection with a securities contract. Plaintiffs cannot dispute that each element of the safe harbor is satisfied here, and that these claims—if brought by a trustee in a Chapter 7 or 11 proceeding—would fall within the safe harbor's scope. They likewise acknowledge that Section 561(d) of the Code applies the safe harbor "to the same extent" in this Chapter 15 case as in a proceeding under Chapters 7 or 11. Notwithstanding this plain statutory language, Plaintiffs argue that Section 546(e) does not apply extraterritorially, and so their claims escape the safe harbor. Under this Court's precedent, however, applying Section 546(e) (through Section 561(d)) to this case is a domestic application of law because it simply operates to limit the scope of domestic proceedings. In addition, Section 561(d) expressly and plainly

3

applies the safe harbor to "avoidance" claims brought "in a case under [C]hapter 15," which does not allow for domestic avoidance claims, so it must apply to claims to recover foreign transfers under foreign law, including Plaintiffs' claims here. It could not mean anything else. Further, the Section 548(a)(1)(A) exception to Section 546(e) does not apply to Plaintiffs' claims, and the safe harbor should equally apply to bar Plaintiffs' common law claims.

*Second*, Plaintiffs' BVI common law claims also fail because those claims require the Court to retroactively set aside the NAVs on which the Funds based their redemption payments to Defendants. But the NAVs are binding on the Funds pursuant to Section 31(1) of the BVI Business Companies Act ("BCA") and under the Funds' Articles, which required that payments to redeeming shareholders be based on those binding NAVs. Five courts—both in the U.S. and abroad—have examined whether BVI law allows Plaintiffs' common law claims to unwind payments the Funds made to their shareholders, and all have concluded that it does not.

*Third*, Plaintiffs' claims under BIA Section 246 fail for the independent reason that Plaintiffs do not plead an undervalue transaction. While the District Court did not reach the issue, its judgment can also be affirmed based on the Bankruptcy Court's conclusion that because Defendants surrendered shares to the Funds in exchange for redemption payments, the transactions could not be

4

"undervalue," as the shares had value that was not uncertain at the time of exchange.

*Finally*, Plaintiffs' attempt to sue the Funds' overwhelmingly non-U.S. shareholders in the United States based on a forum selection clause in the Funds' Subscription Agreements (the "Forum Selection Clause") fails. The Subscription Agreements provide that disputes "with respect" to *those* "Agreement[s]" can be brought in New York. But the dispute here, involving claims for recovery of redemptions at allegedly inflated NAVs, do not implicate any provision of the Subscription Agreements. This dispute is governed entirely by the Funds' separate, BVI-law-governed Articles, which are not subject to the Forum Selection Clause. As the courts below correctly recognized, Plaintiffs therefore cannot rely on the Subscription Agreements to establish personal jurisdiction and must instead establish defendant-specific contacts to support jurisdiction here.

## COUNTER-STATEMENT OF THE CASE

### A. THE FUNDS

For nearly 20 years, the BVI-organized Funds solicited investments by marketing their shares to investors outside the United States. Shareholders subscribed by executing Subscription Agreements, form contracts written by the

Funds that governed the purchase of shares. A-1022 (Subscription Agreement).[1]

Once subscribed, shareholders' rights were governed by the Funds' respective

Articles, the foundational documents establishing the rights and obligations of the

Funds, their directors, and their shareholders. A-257 (Articles).[2] The price that

Defendants paid for their shares was based on calculation of the Funds' NAVs by

the Funds' directors according to a formula mandated by the Articles. A-270 (*id.*

¶ 9(2)). The Articles also authorized shareholders to withdraw their money by

"redeeming" their shares for payments from the Funds based on the same NAV

calculations. A-272 (*id.* ¶ 10(2)).

Defendants are shareholders that allegedly redeemed shares and received

corresponding payments calculated and due to them under the Articles. Plaintiffs

do not allege that these redemptions were—at the time—anything other than

ordinary-course transactions. A-734-56 (Proposed Second Amended Complaint

¶¶ 94-209 ("PSAC")); A-4648-57 (Third Amended Complaint ¶¶ 96-135

---

[1]     "A-__" refers to the Joint Appendix and "SPA-__" refers to the Special
Appendix, both filed on January 27, 2023 with Plaintiffs' opening brief ("Br.").

[2]     Fairfield Sentry's Articles are cited for convenience. Fairfield Sigma's and
Fairfield Lambda's Articles "were at all material times in substantially the same
form in material respect as those of Sentry." A-210 (Decl. of William Hare ¶
10(a)); A-1083 (Sigma Articles); A-1132 (Lambda Articles).

6

("TAC")).[3]  The prices at which Defendants redeemed their shares were calculated

based on the NAVs as provided by the Articles and were the same prices at which

the Funds were selling shares to new investors at the time.  A-270, 272 (Articles

¶¶ 9(2), 10(2)).

**B.    AFTER BLMIS'S FRAUD IS REVEALED, THE FUNDS ENTER LIQUIDATION IN THE BVI AND UNSUCCESSFULLY PURSUE CLAWBACK LITIGATION THERE**

In December 2008, BLMIS was revealed as a Ponzi scheme.  Although

BLMIS-issued account statements reported that the Funds held shares in blue-chip

companies, that turned out to be false.  Suddenly, the value of the Funds' assets

depended on the results of BLMIS's liquidation pursuant to the Securities Investor

Protection Act ("SIPA").  More problematic for the Funds, the trustee appointed in

BLMIS's SIPA liquidation (the "Trustee") sued the Funds for over $3 billion to

recover money they withdrew from BLMIS.  *See* Form of Agreement ¶ P, *Picard*

*v. Fairfield Sentry Limited, et al.*, Adv. Pro. No. 09-01239 (BRL) (Bankr. S.D.N.Y.

May 9, 2011), ECF 69-2 (the "Settlement Agreement").

As a result, the Funds entered into liquidation in the BVI.  In 2009, the BVI

High Court (the "BVI Court") appointed Plaintiffs (or their predecessors) as the

Funds' liquidators.  A-5103 (Chapter 15 Petition).  In May 2011, Plaintiffs caused

---

[3]     Plaintiffs' complaints are largely identical as to the key issues on appeal. Defendants cite to the above-referenced exemplar complaints, relied upon below.

the Funds to settle with the Trustee for consideration including payment of $70 million.  Settlement Agreement ¶¶ 1-2.

In 2009 and 2010, Plaintiffs commenced litigation to recover redemption payments that the Funds had made to shareholders over the years.  Filing what ultimately amounted to hundreds of lawsuits, Plaintiffs did not distinguish between those shareholders they believed had notice of potential fraud and those that indisputably had none. *See generally* A-700 (PSAC); A-567 (Proposed Amended Complaint).  Because Plaintiffs relied on the Funds' shareholder records to file claims, many Defendants were not themselves Fund investors at all, but instead were financial intermediaries holding shares in the Funds as nominees or custodians for their clients.

Plaintiffs first filed more than 30 lawsuits in the BVI, against more than 70 redeeming shareholders, including many Defendants here.  A-207 (Decl. of William Hare ¶¶ 17-20); A-233 (Sentry Statement of Claim).  Plaintiffs premised their claims on the theory that the Funds' NAVs were mistakenly calculated because, due to BLMIS's fraud, the actual values were nil or nominal.  A-236 (Sentry Statement of Claim ¶¶ 9-11).

In February 2011, certain shareholders applied to the BVI Court for a trial on two preliminary issues:  (i) whether Article 11 of the Articles, which established the procedures for calculating and certifying the NAVs for subscriptions and

8

redemptions, irrevocably bound the Funds to pay redemptions at the certified NAVs; and (ii) whether the shareholders provided good consideration for their redemptions at the certified NAVs by surrendering their shares in the Funds. A-1372-73 (Decl. of Phillip Kite ¶ 9); A-307 (Defendants' Skeleton Argument). The BVI Court held that the certificates issued by the Funds did not meet the technical requirements to be binding under the Articles (the "Certificate Issue"), but that the redemptions could not be unwound because defendants had given good consideration (the "Good Consideration Issue"). A-1411 (Judgment dated September 16, 2011); A-359 (Judgment dated October 10, 2011). Plaintiffs appealed to the Eastern Caribbean Court of Appeals (the "ECCA"), which affirmed both rulings. A-1458 (Judgment dated June 13, 2012); A-1514 (Order dated June 13, 2012).

Both sides appealed the ECCA's decision to the U.K. Privy Council, the court of last resort for U.K. overseas territories, composed of U.K. Supreme Court justices. A-1566 (Appeal on Good Consideration Issue), A-1597 (Appeal on Certificate Issue). In *Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9 ("*Migani*"), the Privy Council reversed the ECCA's decision on the Certificate Issue, holding that the NAV certificates *were* binding under the Articles. SPA-149. The Privy Council did not reach, and therefore left intact, the lower courts' other basis for rejecting Plaintiffs' claims, *i.e.*, the ECCA's decision that

9

defendants gave "good consideration" when they tendered their shares. A-384 (Order dated April 16, 2014). Plaintiffs' claims were thus foreclosed for two independent reasons.

## C. PLAINTIFFS BRING PARALLEL CLAIMS IN THE UNITED STATES

In 2010, after commencing their BVI litigation, Plaintiffs began filing dozens of parallel actions against alleged redeeming shareholders in the New York Supreme Court, *see In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 672 (S.D.N.Y. 2011), and separately applied to the Bankruptcy Court for recognition of the BVI liquidation as a "foreign main proceeding" under Chapter 15, which was granted, A-5116 (Order Granting Chapter 15 Petitions).[4] Plaintiffs then removed to the Bankruptcy Court or dismissed all of their state court cases and proceeded to file (or re-file) hundreds more. *See In re Fairfield Sentry Ltd.,* 2018 WL 3756343, at *2 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*").

Plaintiffs' claims were all premised on the same theory: unbeknownst to the Funds when they paid redeeming shareholders, the NAVs were mistakenly calculated because the assets BLMIS purported to hold for the Funds did not exist. A-734 (PSAC ¶ 93); A-4652-53, 4655 (TAC ¶¶ 117, 128). Plaintiffs asserted

---

[4]     This Court affirmed the BVI as the Funds' "center of main interest." *Morning Mist Holdings, Ltd. v. Krys (In re Fairfield Sentry, Ltd.)*, 714 F.3d 127, 138 (2d Cir. 2013).

claims under the BIA, as well as common law claims for breach of contract and restitution. A-734-55 (PSAC ¶¶ 98, 113, 128, 131, 148-49, 184-98, 203-04).[5]

In 2011, the U.S. cases were stayed pending the outcome of the BVI litigation over the Certificate and Good Consideration Issues. A-193 (Am. Order Staying Redeemer Actions). In 2016, following their loss before the Privy Council in *Migani*, Plaintiffs moved for leave to amend their U.S. complaints to add allegations that Citco Fund Services Europe BV ("Citco Fund Services")—the agent the Funds' directors appointed to calculate the NAVs—acted in bad faith. A-445 (Mot. for Leave to Amend). Plaintiffs' allegations tracked those made years earlier in a lawsuit brought by the Funds' shareholders against Citco Fund Services alleging that it had suspicions of the BLMIS fraud that were undisclosed to the Funds or their shareholders. *Id.*; *see also* Consol. Am. Compl. ¶¶ 268(d), 270, *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM) (S.D.N.Y. Apr. 24, 2009).

Defendants opposed leave to amend and moved to dismiss on various grounds. In a series of decisions, the Bankruptcy Court largely granted Defendants' motion to dismiss. It first rejected Plaintiffs' argument that Defendants had consented to New York jurisdiction through the Subscription

---

[5] Plaintiffs did not assert BIA claims against all Defendants. In addition, some Defendants are not alleged to have signed Subscription Agreements.

Agreements. *Fairfield I*, 2018 WL 3756343, at *12. The Bankruptcy Court reasoned that the Subscription Agreements provided for jurisdiction *only* over claims "with respect to this Agreement and the Fund," A-1029 (Subscription Agreement ¶ 19), but Plaintiffs' claims had nothing to do with the Subscription Agreements, *Fairfield I*, 2018 WL 3756343, at *8-12.[6]

The Bankruptcy Court then dismissed Plaintiffs' common law claims on the merits, holding that, although *Migani* did not technically collaterally estop Plaintiffs, its authoritative reasoning and other BVI case law established that Plaintiffs could not use allegations of Citco Fund Services' alleged bad faith to disturb the NAVs' finality. *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 295-301 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*"). The Bankruptcy Court also dismissed the breach of contract claims, rejecting Plaintiffs' attempts to imply a term into the Articles permitting the Funds to recover overpayments based on the erroneous NAVs. *Id.* at 301-02.

Finally, the Bankruptcy Court held that Plaintiffs' BIA claims were barred by Section 546(e), which provides a safe harbor for transfers made "in connection with a securities contract" by certain types of covered financial markets

---

[6]     The Bankruptcy Court did not decide whether Plaintiffs could sufficiently allege personal jurisdiction based on Defendant-specific contacts, and instead proceeded to adjudicate the cases on the merits, with the parties' consent. A-4167 (Order and Stipulation).

participants..  The Bankruptcy Court recognized that Section 546(e) applied

because the Funds were covered entities and the redemption payments were

covered transfers and rejected Plaintiffs' argument that Section 546(e) does not

apply to "extraterritorial" transfers because it found Section 561(d) expressly

extends Section 546(e)'s safe harbor protections to proceedings in aid of foreign

liquidations under Chapter 15.  *Fairfield II*, 596 B.R. at 309-14; *In re Fairfield*

*Sentry Ltd.*, 2020 WL 7345988, at *5, *8-9 (Bankr. S.D.N.Y. Dec. 14, 2020)

("*Fairfield III*").  The Bankruptcy Court further rejected Plaintiffs' argument that

their claims were based on the Funds' "intentional fraud," and therefore fell

outside the safe harbor, because Plaintiffs had affirmed the Funds' lack of

knowledge or culpability throughout the proceedings.  *Fairfield III*, 2020 WL

7345988, at *8-9.

    The Bankruptcy Court however, rejected Defendants' argument that Section

546(e) barred Plaintiffs' non-statutory BVI law claims.  The court posited that

although the safe harbor would have precluded such claims if brought under

domestic law, it did not "preempt" foreign common law because the Supremacy

Clause (which the court viewed as the only basis for applying the safe harbor to

non-statutory claims) displaced conflicting state, but not foreign, law.  *Fairfield III*,

13

2020 WL 7345988, at *9-10; *In re Fairfield Sentry Ltd.*, 2021 WL 771677, at *3 (Bankr. S.D.N.Y. Feb. 23, 2021) ("*Fairfield IV*").[7]

In a decision dated August 24, 2022 (amended on September 22, 2022), the District Court affirmed the Bankruptcy Court's conclusions that the NAVs were binding and the BIA claims were barred by the safe harbor. While the reasoning of the lower courts differed in places, the District Court fully affirmed the Bankruptcy Court's rulings in all relevant respects. SPA-1 (*Fairfield Sentry Ltd. v. Citibank, N.A. London*, 2022 WL 4391023 (S.D.N.Y. Sept. 22, 2022) ("*Fairfield V*")).

## SUMMARY OF THE ARGUMENT

This Court should follow the conclusions reached by each of the courts to examine these issues and affirm dismissal of all of Plaintiffs' claims now on appeal.

*First*, Section 546(e)'s safe harbor—made applicable by Section 561(d) to claims in a Chapter 15 case—bars all of Plaintiffs' claims. Plaintiffs do not contest that the safe harbor requirements of Section 546(e) are met. They argue instead that Sections 546(e) and 561(d) can bar only domestic, but not foreign, transfers.

---

[7] Certain Defendants with a single common law claim left pending against them in the Bankruptcy Court have submitted petitions for interlocutory review addressing why this argument also requires dismissal of that claim. *See, e.g.*, *In Re: Fairfield Sentry Limited*, No. 23-541 (2d Cir. 2023).

But Plaintiffs are wrong that any "extraterritoriality" concerns are present here. Applying Sections 546(e) and 561(d) in U.S. courts is a domestic application; indeed, Section 561(d) is implicated only where a foreign representative comes to the United States and initiates a Chapter 15 case in U.S. courts. In any event, Section 561(d) clearly applies Section 546(e) to a foreign representative's foreign avoidance claims regarding foreign transfers, whether that application is characterized as domestic or not. The plain language of Section 561(d) applies certain provisions of the Code, including Section 546(e), to "case[s] under [C]hapter 15" "*to the same extent* as in a proceeding under [C]hapter 7 or 11." Section 561(d) therefore makes clear that Section 546(e)'s safe harbor applies and prevents Plaintiffs from avoiding the Defendants' redemption of shares.

Rather than apply the straightforward terms of Section 561(d), Plaintiffs propose an atextual reading of the Code, suggesting that Section 561(d) merely applies the safe harbor to the rare scenario where a foreign representative seeks to avoid domestic transfers. But this does not make any sense. A foreign representative cannot avoid domestic transfers under domestic law in a "case under [C]hapter 15," and so this cannot be the purpose of Section 561(d). Nor could Section 561(d) be limited only to extending Section 546(e) to foreign law claims seeking to avoid domestic transfers because such a limitation would be contrary to Section 561(d)'s textual command that it applies regardless of the "presence or

absence of assets of the debtor in the United States." Moreover, since none of Plaintiffs' BIA claims are claims "under [S]ection 548(a)(1)(A)," the only exception to the safe harbor is not applicable and cannot save Plaintiffs' claims. Plaintiffs' common law and contract claims are also barred by the Section 546(e) safe harbor—just as state law claims effectively seeking avoidance are barred.

*Second*, Plaintiffs' common law and contract claims fail for several independent reasons: (i) Defendants were entitled to receive redemption payments at the NAVs calculated pursuant to the Articles, which were binding under BCA Section 31(1) and *Migani*; (ii) as the ECCA held, Defendants provided good consideration for their redemptions; (iii) there is no basis to read into the Articles an implied term that makes alleged "bad faith" calculations of the NAVs non-binding; and (iv) Plaintiffs' common law claims are barred by the doctrines of *ex turpi causa* (*in pari delicto*) and *res judicata*.

*Third*, Plaintiffs' BIA Section 246 claims independently fail because Plaintiffs do not plead an undervalue transaction, a required element of the claim, and the narrow exception in *Phillips v. Brewin Dolphin Bell Lawrie* [2001] BCC 864 (HL), for transactions of uncertain value, is inapplicable.

*Finally*, consistent with relevant Second Circuit precedent, the District Court correctly held that Plaintiffs' claims fall outside the Subscription Agreements'

16

Forum Selection Clause, which therefore does not provide for personal jurisdiction over Defendants.[8]

---

[8] Plaintiffs' notices of appeal to this Court also included the District Court's affirmance of the Bankruptcy Court's August 10, 2020 memorandum decision denying leave to amend the complaints in 12 of the actions on appeal. Plaintiffs, however, did not include in their opening brief any argument challenging that decision, and have therefore abandoned it. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

## ARGUMENT

## I.    SECTIONS 546(E) AND 561(D) BAR PLAINTIFFS' CLAIMS

Section 546(e) "operates as a limit to the general avoiding powers of a bankruptcy trustee," *Merit Mgmt. Group, LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 888 (2018), by providing that a trustee "may not avoid" transfers made, *inter alia*, "in connection with a securities contract" and involving certain types of market participants.  Section 561(d) in turn provides that provisions of the Code "relating to securities contracts"—which Plaintiffs concede "obviously includes Section 546(e)," Br. 57—apply in a "case under [C]hapter 15 … to the same extent as in a proceeding under [C]hapter 7 or 11."  11 U.S.C. § 561(d).  The safe harbor bars Plaintiffs' claims, as the courts below held.

### A.    The District Court Correctly Held That Sections 546(e) And 561(d) Apply To Claims Seeking To Avoid Foreign Transfers In Cases Under Chapter 15

Plaintiffs do not dispute that their BIA claims satisfy the elements of the safe harbor and that the safe harbor applies in Chapter 15 cases.  Br. 57.  Nevertheless, Plaintiffs contend that the presumption against extraterritoriality renders the safe harbor inapplicable here, because the alleged transfers they seek to avoid occurred overseas.  *Id.* at 55-68.

Plaintiffs misunderstand extraterritoriality.  As the District Court recognized, Defendants are not asking the Court to reach beyond American shores to regulate conduct that occurs abroad.  SPA-34 (*Fairfield V*).  Section 561(d) limits the relief

18

that can be sought *in a U.S. court*. Applying the safe harbor in a Chapter 15 case is therefore *inherently* and *necessarily* domestic. If anything, applying the safe harbor in a Chapter 15 case sidesteps extraterritorial entanglements by restraining U.S. courts from applying the Code to unwind certain types of foreign transactions. By incorporating the Section 546(e) safe harbor for securities transactions, Section 561(d) provides certainty to both domestic and foreign securities markets by reducing the systemic risks inherent in unwinding securities transactions that Section 546(e) is designed to prevent. *See, e.g.*, *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 334 (2d Cir. 2011) ("If a firm is required to repay amounts received in settled securities transactions, it could have insufficient capital or liquidity to meet its current securities trading obligations, placing other market participants and the securities markets themselves at risk.").

    1.    **The District Court Correctly Held That Section 561(d)'s Incorporation Of The Section 546(e) Safe Harbor Is A Domestic Application Of Law**

Courts apply a two-step test to evaluate the territorial reach of a statute. Br. 52; *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016); *see also Morrison v. Nat'l Aus. Bank Ltd.*, 561 U.S. 247, 262-66 (2010). The court determines: (i) whether there is a "clear, affirmative indication" that the presumption against extraterritoriality has been rebutted; and (ii) whether the case involves a domestic application of the statute. *RJR Nabisco*, 579 U.S. at 337. To

answer the second question, courts identify the "conduct relevant to the [statute's] focus," *id.*, "by asking precisely what it is that the [statute] regulates," *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 914 (D.C. Cir. 2018). If that conduct occurs in the United States, even if other related conduct occurs abroad, the case involves a domestic application. *RJR Nabisco*, 579 U.S. at 337; *Spanski Enters.*, 883 F.3d at 914 (finding focus of statute was "on policing [copyright] infringement," which occurred in the United States, not on copyright infringement itself, which occurred abroad).

"[I]n appropriate cases" courts may "star[t] at step two," *RJR Nabisco*, 579 U.S. at 338 n.5; *Western GECO LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018), and this Court should do so here because it is clear that Section 561(d) is being applied domestically. By its terms, Section 561(d) applies only when, as here, a foreign representative comes to the United States seeking a U.S. court's assistance in a Chapter 15 case. *See* 11 U.S.C. § 561(d) (mandating statutory provisions relating to securities contracts "shall apply in a case under [C]hapter 15"); COLLIER ON BANKRUPTCY ¶ 1501.04 ("Specifically, [C]hapter 15 applies where (1) A foreign representative or foreign court seeks assistance *in the United States* in connection with a foreign proceeding ...." (emphasis added)). In this context, Section 561(d) limits the powers of the foreign representative in a U.S. proceeding. The statute bars courts from "stay[ing]" or "otherwise limit[ing]"

the enforcement of securities contracts and, with respect to securities transactions that have already occurred, it "limit[s] avoidance powers." 11 U.S.C. § 561(d).

The plain meaning of Section 561(d) is reinforced by its legislative history. Chapter 15 was enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), Pub. L. No. 109-8, tit. VIII, §§ 801, 802, Apr. 20, 2005, 119 Stat. 138, and was designed to implement the UNCITRAL Model Law on Cross-Border Insolvency, 11 U.S.C. § 1501(a). It governs U.S. court proceedings in aid of foreign main proceedings. *Id.* § 1501(b). Section 561 was enacted contemporaneously with Chapter 15 and was designed to support it. *See* Pub. L. No. 109-8, tit. VIII, § 802, tit. IX, § 907(k)(1), Apr. 20, 2005, 119 Stat. 138. Section 561(d) does not regulate underlying conduct or limit the relief available in foreign courts. Rather, it limits the assistance a U.S. court can provide to a foreign litigant *in the United States*, so that the available relief is limited to that available to domestic trustees as a matter of U.S. public policy.

That public policy was informed by the near-collapse of Long-Term Capital Management, L.P., a Cayman Islands hedge fund that invested in securities contracts and was bailed out for $3.6 billion at the urging of the Federal Reserve Bank of New York to protect the U.S. financial system. A-3549-50, 3555-56 (President's Working Group on Financial Markets, *Hedge Funds, Leverage, and the Lessons of Long-Term Capital Management* ("*Lessons of LTCM*")). In

21

advocating for what would eventually become Section 561, statements by the

Executive Branch, members of Congress, and industry groups emphasized the

importance of protecting securities transactions to prevent ripple effects in

financial markets when large foreign hedge funds fail and are liquidated.  *Id.*; A-

3669 (H.R. Rep. No. 106-711, pt. 2); A-3375-76 (*Hearings before the Committee*

*on Banking and Financial Services*, 105th Cong. 119); A-2944 (*Financial*

*Transactions in Insolvency: Reducing Legal Risk Through Legislative Reform*).

The "focus" of Section 561(d) is not on events or conduct overseas, but on

preventing foreign representatives from using U.S. courts to obtain remedies

related to transactions in the securities markets that would be unavailable in a

domestic bankruptcy proceeding.[9]  Accordingly, Section 561(d), acting as a

statutory defense when coupled with Section 546(e), ensures that protections for

securities-related transactions under the Code apply when a foreign representative

brings a case *in the United States* under Chapter 15.  *See* A-3568-69 (*Lessons of*

---

[9]      Plaintiffs argue that Section 561(d)'s enactment did not change the existing
relationship between ancillary proceedings under former Section 304 and the
Section 546(e) safe harbor.  Br. 62.  Congress was clear, however, that BAPCPA
was intended to expand protections for securities contracts in an ancillary
proceeding, not simply maintain existing protections.  *See* H.R. Rep. No. 109-31,
pt. 1, 109th Cong., 1st Sess. at 132-33 (2005) ("New section 561 of the Bankruptcy
Code clarifies that the provisions of the Bankruptcy Code related to securities
contracts, … apply in a proceeding ancillary to a foreign insolvency proceeding
under new section 304 [*i.e.*, Chapter 15] ….").

*LTCM*) (recommending that Congress clarify "that a U.S. court would apply certain key U.S. bankruptcy law protections in an ancillary proceeding taking place in the U.S.").[10]

This Court's analysis in *Force v. Facebook*, 934 F.3d 53 (2d Cir. 2019), confirms that asserting a statutory defense to liability in a U.S. court is a domestic application of the statutory defense, even if the underlying conduct occurred abroad. In *Force*, Facebook asserted Section 230(c)(1) of the Communications Decency Act (the "CDA") as an affirmative defense to claims that employees outside the United States failed to remove content created abroad. *Id.* at 72-73. Section 230(c)(1) creates a statutory defense that safeguards interactive computer service providers from liability for user-posted content. *Id.* at 64. Focusing on the second prong of the extraterritoriality analysis, this Court held that the "primary purpose" of the statute was "limiting civil liability in American courts," thus permitting a defendant to assert the defense to foreign conduct. *Id.* at 74. "The regulated conduct—the litigation of civil claims in federal courts—occur[red] entirely domestically in its application." *Id.* Like CDA Section 230(c)(1), Section

---

[10]  Recommendations from stakeholders were materially identical to the version of Section 561(d) that was ultimately enacted. *See* A-3960 (H.R. Rep. No. 105-688, pt. 1); A-3844 (H.R. Rep. No. 106-711, pt. 2).

561(d) shields defendants from certain claims that a party may assert in a U.S. court.

Plaintiffs dismiss *Force* as "inapposite" because it construed "an unrelated statute." Br. 72. But the principles set out in *Force* are not confined to the CDA. The Congressional purpose behind CDA Section 230(c)(1)—construed by this Court as "limiting civil liability in American courts," *Force*, 934 F.3d at 74— mirrors Congress's objectives in Section 561(d). *Compare* 47 U.S.C. § 230(c)(1), *with* 11 U.S.C. § 546(e); *id.* § 561(d) (limiting remedies via the safe harbor). And in both cases, while the availability of relief in a U.S. court may influence how parties behave abroad, that indirect impact does not make the underlying conduct the "focus" of the claim-limiting language. When a statute *limits* the claims that can be brought in a U.S. court, its application "occurs entirely domestically." *Force*, 934 F.3d at 74.

Notably, in *Force*, this Court looked to the Ninth Circuit's parallel analysis of "an unrelated statute," Br. 72, specifically, the General Aviation Revitalization Act's statute of repose. *Force*, 934 F.3d at 73-74 (citing *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948 (9th Cir. 2008)). As the Ninth Circuit reasoned, that statute "merely eliminates the power of any party to bring a suit … in a U.S. federal or state court," and thus "[t]he only conduct it could arguably be said to regulate is the ability of a party to initiate an action … *in American courts – an*

24

*entirely domestic endeavor*." *Blazevska*, 522 F.3d at 953 (emphasis added).

Section 561(d) likewise limits Plaintiffs' ability to unwind safe harbored

transactions.

The cases Plaintiffs cite in support of their extraterritoriality argument are

inapposite. Br. 71-73. In *In re Picard*, 917 F.3d 85 (2d Cir. 2019), the Court, in

analyzing the Code's recovery provisions (which work "in tandem" with the

avoidance provisions), held that the "focus" of a domestic U.S. trustee's *avoidance*

powers under Section 548 was the "initial transfers" sought to be avoided. The

Court concluded that the purpose of the avoidance provisions "is protecting a

debtor's estate from depletion to the prejudice of the unsecured creditor." *Id.* at 98.

Thus, the conduct being regulated was "the fraudulent transfer of property

depleting the estate." *Id.* But neither Section 561(d) nor Section 546(e) regulates

conduct; instead, they limit the remedies available in U.S. courts. Section 561(d)

does not, like Section 550, function as the "business end" of the Code's substantive

avoidance powers, *In re Picard*, 917 F.3d at 98. Rather, Section 561(d) functions

as a limitation on claims brought in a case under Chapter 15, regardless of the

source of law relied on.[11]

---

[11]     Plaintiffs' proposed focus on the redemption payments themselves would
also not necessarily establish a foreign application of the safe harbor because
Plaintiffs insist in their representative complaint that "[the defendant] received all
of its Redemption Payments at its bank account … in New York." A-718 (PSAC
¶ 37). Since Plaintiffs have conceded that at least some transfers were made to

25

Nor does *Merit Management*, 138 S. Ct. at 895-96, assist Plaintiffs. First, *Merit Management* discusses only Section 546(e) and does not address Section 561(d), which applies Section 546(e) to cases under Chapter 15 and is the operative provision in this case, as Plaintiffs acknowledge with regard to the first step of the test. Br. 57. Second, even as to Section 546(e), *Merit Management* says nothing about the safe harbor's "focus" for extraterritoriality purposes, as Plaintiffs admit. Br. 70 (noting that the *Merit Management* Court "had no reason to discuss extraterritoriality"). "*Merit Management* only discusses the 'focus' of Section 546(e) in order 'to determine how the safe harbor operates in the context of a transfer that was executed via one or more transactions,'" SPA-34 (*Fairfield V*) (quoting *Merit Mgmt.*, 138 S. Ct. at 888), which is not at issue here. The Court was answering a very different question: on which part of a multi-step transfer should a court focus in determining whether Section 546(e)'s elements are met? Here, however Plaintiffs do not dispute that the transfers they seek to avoid meet the elements of Section 546(e). Br. 57.[12]

---

domestic bank accounts or transferees, A-1835-36 (Opp. to Mot. to Dismiss), even if this Court were to conclude that Section 546(e) (through Section 561(d)) does not bar Plaintiffs' claims for foreign transfers, it would still bar claims for domestic transfers.

[12] *Merit Management* is also consistent with *Force* in recognizing that Section 546(e) is a liability-limiting provision, because it "is invoked as a defense." 138 S. Ct. at 888.

Finally, Plaintiffs miscite *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013), for the proposition that the "focus" of a jurisdiction-granting statute (the Alien Tort Statute) is "the location of the actionable conduct, not the court." Br. 72-73. *Kiobel*, however, addressed only the first step of the extraterritoriality analysis and did not address the "focus" of the statute at all. *Kiobel*, 569 U.S. at 124. In addition, while it does not define a claim's substance, the Alien Tort Statute authorizes parties to affirmatively seek relief that might be unavailable in foreign proceedings. As the Supreme Court later recognized in *RJR Nabisco*, "providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct." 579 U.S. at 346-47. In other words, the Court's concern in *Kiobel* was the possibility that U.S. courts would be asked to declare conduct that occurred in foreign countries to be illegal and to award civil damages on that basis, even when those countries would not themselves impose liability. 568 U.S. at 116-17. In this case, applying the safe harbor *avoids* the foreign entanglements caused by imposing liability. A proper interpretation of Section 561(d) raises none of the concerns in *Kiobel*. *See Force*, 934 F.3d at 73 ("Allowing a plaintiff's claim to go forward because the cause of action applies extraterritorially, while then applying the presumption to block a different

27

provision setting out defenses to that claim, would seem only to increase the possibility of international friction.").

### 2. Section 561(d) Clearly And Affirmatively Applies Section 546(e) To Claims Seeking Foreign Transfers

Because applying Section 561(d) here is exclusively domestic, there is no need to consider whether Sections 546(e) or 561(d) apply extraterritorially. As the District Court held, however, "Congress has expressed a clear intent to apply § 546(e) extraterritorially through § 561(d)." SPA-31 (*Fairfield V*). Therefore, even if the Court were to conclude that Section 546(e)'s (and Section 561(d)'s) focus is on the transfer to be avoided, rather than the act of avoidance, Section 561(d) extends Section 546(e) to transfers in cases under Chapter 15 like these and emphasizes that those protections will not be "limited based on the presence or absence of assets of the debtor in the United States." 11 U.S.C. § 561(d).

### a. Under Section 561(d), Section 546(e) Applies "To The Same Extent" In A Case Under Chapter 15

Under Section 561(d), the safe harbor limits Plaintiffs' avoidance powers "to the same extent" as it would if they were acting as a trustee in a domestic bankruptcy. 11 U.S.C. § 561(d). "[T]o the same extent" means that neither a foreign representative nor a domestic trustee "can avoid transfers with certain features, particularly those specified under § 546(e)." SPA-30 (*Fairfield V*).

28

Because Plaintiffs' claims seek to avoid covered transfers, Section 546(e) (through Section 561(d)) bars their claims, just as it would bar the claims of a domestic trustee. Plaintiffs go to great lengths to find an alternative meaning to the plain meaning of "to the same extent," arguing that domestic trustees cannot avoid foreign transfers and foreign representatives can bring domestic avoidance claims, so Section 561(d) merely operates to apply Section 546(e) to foreign representatives' domestic avoidance claims. Both of these premises are false.

*First*, whether domestic trustees can avoid foreign transfers is irrelevant to whether Section 546(e) would preclude them from doing so. Section 546(e) is carefully worded to limit trustees' avoidance powers *regardless* of the source of law from which they arise, *unless* the claims are brought under one specific statutory provision: Section 548(a)(1)(A). Section 546(e) encompasses all forms of avoidance under all sources of law. *See In re Tribune Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 84, 90-94 (2d Cir. 2019) (noting Section 546(e) employs "broad language" to "limit[] the circumstances … under which securities transactions could be unwound"). The Court need not grapple with the extent of a U.S. trustee's power to avoid foreign transfers, because Section 546(e) makes clear that it would bar such claims.[13] It does not matter if a foreign representative has

---

[13] In any event, several courts have held that domestic trustees *can* avoid foreign transfers, for example, in cases where domestic debtors made pre-petition transfers overseas. *See In re FAH Liquidating Corp.*, 572 B.R. 117, 125-26

different powers to avoid transfers under foreign law, because Section 561(d)

incorporates Section 546(e)'s limits on Plaintiffs' powers to avoid transfers and

applies them "to the same extent as in a proceeding under [C]hapter 7 or 11." 11

U.S.C. § 561(d). As the District Court correctly observed, by limiting "the power

of a foreign representative 'to the same extent' as [a] bankruptcy trustee, § 561(d)

does not mean that the two share the same set of avoidance powers or that the

powers will have the same territorial reach, but simply that the foreign

representative's powers will be limited in the same way that those of a domestic

trustee are limited—for example, neither can avoid transfers with certain features,

particularly those specified under § 546(e)." SPA-30 (*Fairfield V*). This is

consistent with *Merit Management*'s observation that the safe harbor is the other

---

(Bankr. D. Del. 2017); *In re Lyondell Chem. Co.*, 543 B.R. 127, 148 (Bankr. S.D.N.Y. 2016). Likewise, Section 544(b) permits trustees, standing in the shoes of creditors, to avoid transfers relying on non-bankruptcy law, and Defendants are aware of no decision limiting Section 544(b) to claims exclusively under domestic law. *See In re FAH*, 572 B.R. at 130 (finding German law governed Section 544 claim before dismissing claim because German law did not afford relief). While Plaintiffs thus state as an axiom that a domestic trustee can avoid only domestic transfers, they cite no good authority for that proposition. Plaintiffs' only case, *In re CIL Ltd.*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018), Br. 9, draws heavily from *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222 (S.D.N.Y. 2014), which this Court vacated in *In re Picard*, 917 F.3d at 98-100. Likewise, in *In re Maxwell Comm'n Corp.*, 93 F.3d 1036 (2d Cir. 1996), this Court specifically declined to rule on the question of extraterritoriality, affirming the decision below (on which Plaintiffs rely, Br. 9 (citing *In re Maxwell Comm'n Corp. plc*, 186 B.R. 807 (S.D.N.Y. 1995))) only on alternative grounds.

side of "the same coin" of avoidance powers, *Merit Mgmt.*, 138 S. Ct. at 894, because the safe harbor mirrors the avoidance powers that foreign representatives actually possess.

*Second*, as the District Court recognized, Plaintiffs' interpretation makes no sense because foreign representatives cannot bring domestic avoidance claims in a case under Chapter 15, despite Plaintiffs' insistence otherwise. *See* 11 U.S.C. § 1521(a)(7); SPA 31-35 (*Fairfield V*). If Section 561(d) is to mean anything when it limits avoidance powers in a case under Chapter 15, it *must* mean to limit the avoidance powers that a foreign representative actually has in a case under Chapter 15—that is, powers under foreign law. *See* SPA-31-33 (*Fairfield V*).

Plaintiffs counter that the District Court "misconceived how the relevant provisions of the Code interact" and was "flat wrong" in presuming that a foreign representative cannot seek to avoid transfers under U.S. bankruptcy law in a Chapter 15 case. Br. 59. Respectfully, it is Plaintiffs who are "flat wrong." Section 1521(a)(7) expressly bars foreign representatives from bringing avoidance claims under the Code in a Chapter 15 case. 11 U.S.C. § 1521(a)(7). Section 1523(a), relied upon by Plaintiffs, authorizes a foreign representative to bring domestic avoidance claims otherwise barred by Section 1521(a)(7) *only* in a *plenary* bankruptcy proceeding (under, for example, Chapters 7 or 11). *See In re Soundview Elite, Ltd.*, 503 B.R. 571, 595 (Bankr. S.D.N.Y. 2014) ("[S]ection 1521

of the Code, which describes the relief that may be granted upon [C]hapter 15 recognition, does not authorize a foreign representative to invoke the Code's avoidance powers *unless a [C]hapter 7 or [C]hapter 11 case is concurrently pending*.").[14]

Plaintiffs' argument that Section 561(d) applies "in proceedings *authorized by* Chapter 15," which they argue includes those brought pursuant to Section 1523(a) in a plenary case, Br. 13-14, 58-60 (emphasis added), misstates the statute. Section 561(d) applies the same limitations "in a case *under* [C]hapter 15 … as in a proceeding under [C]hapter 7 or 11." 11 U.S.C. § 561(d) (emphasis added). When foreign representatives bring claims pursuant to the standing conferred by Section 1523(a), they do so—necessarily—"in a case … *under another chapter of this*

---

[14]     11 U.S.C. § 1523(a) ("Upon recognition of a foreign proceeding, the foreign representative has standing in a case concerning the debtor pending *under another chapter of this title* to initiate actions under sections 522, 544, 545, 547, 548, 550, 553, and 724(a)." (emphasis added)); *see also In re Awal Bank, BSC*, 455 B.R. 73, 91 (Bankr. S.D.N.Y. 2011) ("The standing of a foreign representative to use U.S. avoidance law … is expressly dependent on recognition and filing a plenary case thereafter …."); *In re SPhinX, Ltd.*, 351 B.R. 103, 113 (Bankr. S.D.N.Y. 2006) ("Chapter 15 also provides flexibility by acknowledging the possibility of a concurrent plenary case under other chapters of the Bankruptcy Code while a foreign proceeding is pending, permitting a foreign representative in a recognized foreign proceeding to … participate in (11 U.S.C. §§ 1512, 1523) such a case.") (cited in Br. 54); H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 116 (2005) ("[Section 1523] confers standing on a recognized foreign representative to assert an avoidance action but only in a pending case under another chapter of this title. … This limited grant of standing in section 1523 does not create or establish any legal right of avoidance ….").

*title*," *id.* § 1523(a), *e.g.*, Chapters 7 or 11, but not "in a case under" Chapter 15 itself.[15]

Congress acted intentionally in delineating when Section 561(d) applies, considering the contrasting language used elsewhere in Chapter 15. *See, e.g.*, *id.* § 1501(b)(3) (establishing Chapter 15 applies when "a foreign proceeding and a case *under this title* with respect to the same debtor are pending concurrently"); *id.* § 1502(6) (stating the term "trustee" includes "a debtor in possession in a case *under any chapter of this title*"); *id.* § 1507(a) (using "*under this title*"); *id.* § 1512 (same); *id.* § 1513(a) (same); *id.* § 1514(a) (same); *id.* § 1520(c) (same). Section 561(d) therefore cannot be addressing proceedings referenced in Section 1523(a).

In any event, Section 1523(a) does not help Plaintiffs because, had they commenced a proceeding under Chapter 7 or 11 and sought to avoid transfers under domestic law, Section 546(e) would apply *directly* to that proceeding by its own terms—as Plaintiffs acknowledge. Br. 56 ("Section 546(e) is located in Chapter 5 of the Code, which applies only 'in a case under [C]hapter 7, 11, 12 or

---

[15]     This is consistent with Sections 1528 and 1529, which apply only after a Chapter 15 case has been commenced and exclude the possibility that the phrase "under another chapter of this title" can include a case under Chapter 15. *See* 11 U.S.C. § 1528 ("After recognition of a foreign main proceeding, a case *under another chapter of this title* may be commenced only if the debtor has assets in the United States."); *id.* § 1529 ("If a foreign proceeding and a case *under another chapter of this title* are pending concurrently regarding the same debtor ….").

13.'"). It would have been superfluous for Congress to specify in Section 561(d) that Section 546(e) applies *in a Chapter 7 or 11 case* "to the same extent as in a proceeding under [C]hapter 7 or 11." 11 U.S.C. § 561(d). The District Court thus "elided" nothing, Br. 60, when it concluded that Section 561(d) *must* have been intended to extend the safe harbor to claims brought under foreign law in the context of a (non-plenary) Chapter 15 case such as this.

*Finally*, Plaintiffs speculate that Section 561(d) might be intended to prevent a *foreign representative* from using *foreign law* to avoid a *domestic transfer*. Br. 65. But Plaintiffs cite nothing to suggest that Congress was preoccupied with such an extraordinarily narrow category of potential claims, especially because foreign law would rarely, if ever, govern a domestic transfer. (In contrast, the legislative history shows Congress was acutely concerned about the ripple effects of a foreign investment company's insolvency, precisely the situation here. *See supra* Section I.A.). Regardless, such an interpretation would not negate the District Court's conclusion that Section 561(d)'s limitations apply to avoidance claims brought by the foreign representative *regardless* of where the underlying transfer occurred—which is "the statute's best," Br. 65, and only plausible reading.

### b. Section 561(d) Is Expressly Not Limited By The Location Of The Relevant Transfer

The final sentence of Section 561(d) resolves any doubt as to Congress's intent that Section 561(d) should apply regardless of where the relevant transfer

occurred.  Section 561(d) precludes a court from preventing enforcement of

securities transactions and prevents the avoidance of such transactions to the extent

they have already occurred.  In both cases, "such enforcement [is] not to be limited

based on the presence or absence of assets of the debtor in the United States."  11

U.S.C. § 561(d).  As the Bankruptcy Court recognized, this means that foreign

representatives cannot enjoin transfers necessary to enforce securities contracts,

regardless of whether the assets to be used to satisfy such contracts are "located

within or without the United States."  *Fairfield II*, 596 B.R. at 310.  Foreign

transfers necessary to enforce securities contracts therefore cannot be enjoined.

Likewise, foreign representatives cannot avoid transfers, including foreign

transfers, previously made in connection with securities contracts.  *Id.* at 311 ("The

foreign representative cannot prevent the enforcement of the Close-Out Rights and

cannot avoid the transfers that result from the enforcement of Close-Out Rights.").

Contrary to Plaintiffs' argument that these provisions exclusively concern

the right to close on collateral ("close-out rights"), Section 561(d) expressly

applies to "*[a]ny provisions of this title relating to securities contracts*."[16]  11

---

[16]     Plaintiffs further hypothesize that Section 561(d) could have effect by
applying to "*domestic* trustees' powers to avoid 'close-out' or 'netting'
transactions" in Chapter 15 cases.  Br. 62-64.  But this reading is impossible
because domestic trustees lack standing to bring Chapter 15 cases.  *See* 11 U.S.C.
§§ 1504, 1515(a).

U.S.C. § 561(d) (emphasis added).  The Bankruptcy Court therefore correctly held that Section 561(d)'s concluding parenthetical modifies the *entire* subsection, underscoring the lack of territorial limits of *both* the prohibition on the stay of contract enforcement *and* the limitations on avoidance.  The limitations on avoidance allow the recipient of a transfer to "enforce" its rights under securities contracts with respect to payments already made.  *Fairfield II*, 596 B.R. at 311 ("[T]he Liquidators' interpretation is unreasonable because it severs the provision that protects Close-Out Rights from the clause that limits foreign avoidance claims. These provisions complement each other and cannot be viewed separately because the same concern – the domino effect of a financial meltdown – animates both clauses.").

In the context of an ancillary proceeding in aid of a foreign bankruptcy, it would have made little sense for Congress to have enacted a provision *protecting* the counterparty's right to enforce a securities-related contract against a foreign debtor while permitting the same foreign debtor's representative to unwind that transaction if it had already occurred.  By placing the parenthetical where it did, Congress evinced its intention that the entire provision should apply regardless of the situs of the relevant transaction.  *See Evangelista v. Ashcroft*, 359 F.3d 145, 152 (2d Cir. 2004) ("traditional rules of grammar indicate that the parenthetical

phrase" modifies the entire provision "because of its placement following those words instead of directly after" the first clause).[17]

### c. Comity Provides No Reason To Disregard Section 561(d)'s Express Statutory Command

Unable to muster any statutory or judicial support for their arguments, Plaintiffs invoke comity, asserting that applying a U.S. safe harbor to claims under BVI law would offend foreign law. But principles of comity are irrelevant when the statute is clear. *See Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022) ("As this Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text."). Chapter 15 and Section 561(d) are Congress's directive on how and to what extent a U.S. court will aid a foreign bankruptcy. *See* 11 U.S.C. § 1501. Permitting a foreign representative to rely on foreign law to circumvent the limitations imposed by Section 561(d) and Chapter 15 would turn comity on its head. *See* SPA-33 (*Fairfield V*) ("Appellants cannot have it both ways—benefiting from the domestic forum Chapter 15 has created for foreign law claims 'as a matter of comity,' while trying to avoid the limitations that Chapter 15 imposes on their power to bring these claims.").

---

[17] Similarly, Plaintiffs argue that the parenthetical was geared towards *in rem* jurisdiction, Br. 64 n.10, but if Congress intended to grant jurisdiction over foreign property, it must also have intended to limit avoidance actions to recover that property.

**B.** **The Section 548(a)(1)(A) Exception To Section 546(e) Does Not Apply To Plaintiffs' Claims**

Plaintiffs acknowledge that, if Section 546(e) applies, the redemptions they seek to avoid are covered transactions under the safe harbor. Nevertheless, they now attempt to evade the safe harbor by recasting their BIA claims as claims "under [S]ection 548(a)(1)(A)"—the only exception to Section 546(e)—because their "BVI avoidance claims allege actual fraud." Br. 75. This fails because the plain language of Section 546(e) allows an exception only for claims "under [S]ection 548(a)(1)(A)," not any claims with intent to defraud as an element, and in any event, Plaintiffs' claims do not plead actual fraud.

**1.** **Section 546(e)'s Plain Language Exempts Only Specific Bankruptcy Code Claims, Not "Analogous" Foreign-Law Claims, From The Safe Harbor**

Section 546(e) provides that trustees "may not avoid a [covered] transfer … except under section 548(a)(1)(A) of this title." 11 U.S.C. § 546(e). By generally prohibiting avoidance of covered transfers except under one specific section of the Code, Congress ensured that the *only* claims that can be brought to avoid transfers that otherwise fall within the safe harbor are those brought under that particular Section of the Code.

Accordingly, courts routinely apply Section 546(e) to dismiss "intentional fraud" claims brought under *state law* in Chapter 7 and Chapter 11 proceedings, even when their elements are indistinguishable from the elements of a Section

38

548(a)(1)(A) claim, because such claims are not "under [S]ection 548(a)(1)(A)." *See* 11 U.S.C. § 546(e); *Picard v. Merkin (In re BLMIS)*, 515 B.R. 117, 141 (Bankr. S.D.N.Y. 2014) (distinguishing between claims brought under Section 548(a)(1)(A) and other claims alleging intentional fraudulent transfers when applying Section 546(e)); *Miller v. CSFB (In re Refco, Inc. Secs. Litig.)*, 2009 WL 7242548, at *9 n.7 (S.D.N.Y. Nov. 13, 2009) (dismissing state law constructive fraud and fraudulent conveyance claims "with prejudice because of the safe harbor"). Construing the statute as written does not "turn[] the United States into a safe harbor even for *intentional* fraudulent transactions," *see* Br. 76, any more than it turns federal courts into a "safe harbor" for intentional fraudulent transactions barred by state law. Congress's judgment in this regard was to favor certainty and finality over creditor recoveries, and Plaintiffs' disappointment does not change Section 546(e)'s plain language. "[T]he text controls and Congress's decision to only provide an exception for a claim under Section 548(a)(l)(A) from Section 546(e) stands." *Holliday v. Credit Suisse Sec. (USA) LLC*, 2021 WL 4150523, at *9 (S.D.N.Y. Sept. 13, 2021), *appealed sub nom. In re Boston Generating, LLC*, No. 21-2543 (2d Cir. 2021).[18]

---

[18]    Plaintiffs' reliance on *In re Norske Skogindustrier ASA*, 629 B.R. 717 (Bankr. S.D.N.Y. 2021) is unavailing. That Bankruptcy Court decision, which was never reviewed by either the District or Circuit Courts, is inconsistent with Section 546(e)'s plain language and the weight of authority.

### 2. Plaintiffs Did Not Plead Any Claim That Requires Intent To Defraud

The District Court mistakenly believed that foreign law claims analogous to those under Section 548(a)(1)(A) fall outside the safe harbor, and thus applying Section 546(e) to this Chapter 15 case required it to examine the elements of Plaintiffs' claims. SPA-37-39 (*Fairfield V*). While that belief was in error for the reasons discussed above, the District Court correctly recognized that Plaintiffs had not alleged any "analogous" claims.

Indeed, Plaintiffs expressly *disclaimed* that they were bringing intentional fraud claims (and therefore did not plead the elements of such a claim). *See* A-4648-57 (TAC ¶¶ 96-135); *Fairfield II*, 596 B.R. at 310 n.50, 314 (explaining BIA claims "correspond to claims to avoid preferences under 11 U.S.C. § 547 and constructive fraudulent transfers under 11 U.S.C. §§ 544(b)(1) (incorporating state avoidance law) and 548(a)(1)(B)" and "do not allege intentional fraudulent transfers"); SPA-37 (*Fairfield V*) ("Appellants only bring unfair preference claims under BVI's Insolven[cy] Act § 245, and undervalue transaction claims under the Insolven[cy] Act § 246. Neither requires the transaction to be made 'with actual intent to hinder, delay, or defraud.'"). The most Plaintiffs argued before the lower courts was that by adding factual allegations of fraud to support a non-fraud claim,

they pled claims for fraud, an argument those courts appropriately disregarded. *See* SPA-38 (*Fairfield V*).[19]

Now, for the first time, Plaintiffs assert that BIA Section 246 *requires* an element of "actual fraud" because the claim cannot proceed if the debtor entered into the transaction in "good faith." Br. 76.[20] This argument is contrary to Plaintiffs' arguments below, *see* SPA-38 (*Fairfield V*), and is therefore waived, *see Ehrenfeld v. Mahfouz*, 518 F.3d 102, 105 (2d Cir. 2008) (finding argument waived when "Plaintiff had the opportunity to make the argument" and failed to do so "at any prior stage of this prolonged litigation"). In any event, Plaintiffs are wrong. Intentional fraud is not an element of BIA Section 246. The elements of a claim under BIA Section 246 are that the transaction was undervalue, an insolvency transaction, and entered into during the vulnerability period. A-1320-21 (First Mortimore Decl. ¶ 145). In contrast, Section 548(a)(1)(A) provides that a "trustee may avoid any transfer … if the debtor voluntarily or involuntarily … made such

---

[19]    Under Plaintiffs' logic, preference and constructive fraudulent transfer claims under the Code could avoid covered transactions notwithstanding Section 546(e), so long as a trustee added an allegation of fraud. Section 546(e) expressly forecloses this result.

[20]    Plaintiffs do not contend that their BIA Section 245 claim requires intent to defraud. Br. 76.

transfer … with actual intent to hinder, delay, or defraud any entity to which the debtor was … indebted." 11 U.S.C. § 548(a)(1)(A).

Plaintiffs confuse the issue by pointing out that a defendant sued under BIA Section 246 may assert as a statutory defense that the transferor acted in good faith. Br. 76. But the availability of good faith as an affirmative defense does not convert actual fraud into an *element* of a Section 246 claim that a plaintiff must allege and prove. Unlike under Section 548(a)(1)(A), Plaintiffs' Section 246 claim could proceed to judgment without intent ever having been pled or proven since intent must be put at issue and proved by the transferee. *See Re Barton Mfg. Co. Ltd.* [1999] 1 BCLC 740, 745 (explaining transferee's burden to establish good faith);[21] A-1751.122 (Second Moss Decl. ¶ 269) ("[Section 246(2)] is a defence and not part of the cause of action and therefore does not need to be pleaded."); A-1362-63 (First Mortimore Decl. ¶ 250). Nor would defeating a good faith defense under Section 246(2) necessarily require Plaintiffs to prove that the Funds engaged in intentional fraud. *See* A-1307 (First Mortimore Decl. ¶ 110 (citing *Derry v. Peek* [1889] 14 App Cas 337, 374)).

---

[21] The foreign cases and statutes cited herein are reproduced in the Addendum of Foreign Authorities, filed with this brief pursuant to Federal Rule of Appellate Procedure 28(f).

This concept is not unusual. Indeed, constructive fraudulent transfer claims under Section 548(a)(1)(B), which are akin to BIA Section 246 claims, *Fairfield II*, 596 B.R. at 310 n.50, fall squarely outside the Section 548(a)(1)(A) exception, even though they are subject to a "good faith" "for value" defense under Section 548(c) of the Code. *See* 11 U.S.C. §§ 546(e), 548(c); *cf. Picard v. Citibank, N.A.*, 12 F.4th 171, 196 (2d Cir. 2021) ("As a defendant asserting an affirmative defense, the transferee bears the burden of establishing its good faith under § 548(c)."). Moreover, just as the Code includes a specific provision for intentional fraud (Section 548(a)(1)(A)), so too does BVI law provide that "every conveyance …, made … with intent to defraud creditors, shall be voidable" under BVI Conveyancing and Law of Property Act 1961 § 81(1), a claim Plaintiffs never brought or pleaded. Rather, in hundreds of actions in both New York and the BVI, Plaintiffs' theory has always been that the Funds are victims who did not know that BLMIS was engaged in fraud and made a "mistake" in paying the redemptions to Defendants. *See, e.g.*, A-4617 (TAC ¶¶ 5, 7, 10, 38-39, 95, 98). Only after failing to recover on that theory have Plaintiffs reversed course to allege Citco Fund Services' "bad faith," which does not equate to "actual intent to defraud, delay or hinder." *Fairfield III*, 2020 WL 7345988, at *4. Plaintiffs simply have not alleged conduct that would satisfy the demanding elements of a claim for intentional fraud, meaning they cannot escape the safe harbor even if (counterfactually) the Section

43

548(a)(1)(A) exception were as broad as Plaintiffs contend it is. *See, e.g.*, *In re Tribune Co. Fraudulent Conv. Litig.*, 10 F.4th 147, 160 (2d Cir. 2021).

## C. Plaintiffs' Common Law Claims Are Also Barred By The Safe Harbor

Section 561(d)'s incorporation of the safe harbor bars not only Plaintiffs' BIA claims (as the District Court correctly held), but also their common law claims, which also effectively seek to avoid and recover the same transfers. As both courts below recognized, a domestic trustee would be prevented from bringing the same claims under state law. While Plaintiffs' common law claims were correctly dismissed on their merits, *see infra* Section II, the courts below should have applied Section 546(e) (through Section 561(d)) as an additional basis to dismiss Plaintiffs' common law claims.[22]

As this Court has recognized, "[t]he broad language used in Section 546(e) protects transactions" and "[a] lack of protection against the unwinding of securities transactions would create substantial deterrents, limited only by the copious imaginations of able lawyers, to investing in the securities market." *Tribune*, 946 F.3d at 90-91. Courts therefore reject efforts to accomplish what Section 546(e) forbids through creative pleading under state law. *See, e.g.*, *id.* at

---

[22]    This issue is the subject of petitions for interlocutory review pending before this Court, discussed further below.

90 (barring non-bankruptcy fraudulent transfer claims); *In re Nine W. LBO Sec. Litig.*, 482 F. Supp. 3d 187, 207 (S.D.N.Y. 2020) (barring unjust enrichment claims); *AP Servs., LLP v. Silva*, 483 B.R. 63, 71 (S.D.N.Y. 2012) (same).

In the context of a Chapter 15 case, where all the claims arise under foreign law and Section 561(d) establishes that the safe harbor applies "to the same extent" as in a Chapter 7 or 11 case, Plaintiffs should be barred from circumventing the safe harbor under foreign common law just as domestic trustees are barred under state law. The courts below, however, erroneously permitted Plaintiffs to do just that, reasoning that while state law claims are "preempted" under the Supremacy Clause, the Supremacy Clause does not extend "preemption" to foreign law. *Fairfield III*, 2020 WL 7345988, at *10; *Fairfield IV*, 2021 WL 771677, at *3; SPA-36 (*Fairfield V*).

But the Supremacy Clause is beside the point. Unlike state law, which applies in the United States as the default and is displaced only when "that was the clear and manifest purpose of Congress," *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008), foreign law applies within the United States only as a matter of comity and if doing so would be consistent with U.S. public policy, *see, e.g.*, *Bank of Augusta v. Earle*, 38 U.S. 519, 520 (1839) ("The comity thus extended to other nations is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered; and is inadmissible when contrary to its policy, or prejudicial to its

45

interests.").  Here, federal law—Section 561(d), incorporating Section 546(e)—makes clear that cases under Chapter 15 cannot be used to unwind transfers in connection with securities contracts.  Federal courts would not permit state law to frustrate that Congressional purpose, and it makes little sense for them to allow foreign law to do so.

To the extent the courts below believed the Supremacy Clause prevented them from applying Section 546(e) to bar foreign common law claims on the same basis it would bar domestic common law claims, they erred.  The Supremacy Clause declares federal law to be the supreme law of the land:

> This Constitution, and *the Laws of the United States* which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, *shall be the supreme Law of the Land*; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2 (emphasis added).  The first clause plainly makes the Code, including Sections 546(e) and 561(d), supreme over any non-federal law, whether foreign or state.  *See, e.g., LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 238 (S.D.N.Y. 2007) (applying SLUSA to foreign law claims); *see also* Joseph Story, COMMENTARIES ON THE CONFLICT OF LAWS § 8 (1834) ("It is an essential attribute of every sovereignty, that it has no admitted superior, and that it gives the supreme law within its own domains on all subjects appertaining to its sovereignty.").

The final clause of the Supremacy Clause, referencing "Laws of any State to the Contrary notwithstanding," addresses a different issue:  it confirms that "Judges in every State shall be bound"—*i.e.*, that state court judges are *also* bound to apply federal law.  *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 370 (1990) (second clause "confirm[s] that state courts have the coordinate authority and consequent responsibility to enforce the supreme law of the land"); William Henry M. Hart, Jr., *Politics and the Constitution in the History of the United States*, 67 Harv. L. Rev. 1456, 1469-70 (1954) ("[T]he occasion for [the second clause] was the special problem, peculiar to the state judges, of conflict between the commands of their own government and those of a different government.").

While the District Court did not rule for Defendants on this issue, it recognized that its ruling was one of "first impression" and that "the interaction between the Supremacy Clause and international comity principles raises sufficiently difficult questions that merit appellate review." *Fairfield Sentry Ltd. v. Citibank, N.A. London*, 2023 WL 2644226, at *3 (S.D.N.Y. Mar. 27, 2023). Accordingly, it certified its decision for review under 28 U.S.C. § 1292(b) insofar as it had declined to dismiss the one remaining common law claim (for BVI constructive trust) in 18 of these cases. *Id*.  Those Defendants (all also parties here with respect to the dismissed claims) timely petitioned this Court for review. *See, e.g.*, *In Re: Fairfield Sentry Limited*, No. 23-541 (2d Cir. 2023).

## II.  THE DISTRICT COURT CORRECTLY AFFIRMED THE DISMISSAL OF PLAINTIFFS' CONTRACT AND COMMON LAW CLAIMS

Plaintiffs stand in the shoes of the Funds and can only assert claims that the Funds themselves could assert.[23]  Yet Plaintiffs concede that each of their contract and common law claims is "predicated" on the Funds asserting that Citco Fund Services, which the Funds retained to calculate the NAVs, calculated the NAVs in bad faith.  Br. 79.  BVI law and the Funds' Articles make clear that the Funds are bound by their own certified NAVs and that Plaintiffs (standing in the Funds' shoes) cannot rely on their agent's alleged bad faith to escape the NAVs' binding effect.  Plaintiffs try to avoid these fundamental points and the Privy Council's decision in *Migani* by pretending a subsequent 2019 decision, *Skandinaviska Enskilda Banken AB v. Conway* [2019] UKPC 36 ("*Weavering II*"), held that fraudulently issued NAVs are not binding on the issuing party.  *Weavering II* held no such thing and does nothing to undermine *Migani*'s applicability here.  Plaintiffs' claims are further barred because Defendants gave good consideration for their redemption payments.  Finally, Plaintiffs may not relitigate in these U.S. proceedings whether the certified NAVs are binding or whether the Defendants

---

[23]     *See* SPA-43-44 (*Fairfield V*) (explaining Plaintiffs are acting on behalf of the Funds); *see also* BIA § 184(2) ("A liquidator is the agent of the company in liquidation.").

48

exchanged good consideration because BVI courts have already conclusively

decided both issues against them.  That Chapter 15 proceedings are intended to

"facilitate foreign bankruptcies" cannot make Plaintiffs' claims "meritorious," Br.

37, 41, when BVI law dictates otherwise.

### A.    BVI Law And The Funds' Articles Make The NAVs Binding On The Funds

The Articles govern the relationship between the Funds and their

shareholders.  Three provisions are relevant here:

- Article 11(1) establishes that "[a]ny certificate as to the Net Asset Value per Share or as to the Subscription Price or Redemption Price therefor given in good faith by or on behalf of the Directors shall be binding on all parties," A-274;

- Article 10(1) provides that, upon compliance with the relevant procedures, "the Company shall on receipt by it or its authorized agent of a request in writing … redeem or purchase all or any portion of the Shares registered in the Applicant's name," A-270; and

- Article 10(2) provides that "[t]he Redemption Price for each share shall be the Net Asset Value per Share (as determined in accordance with Article 11)," A-272.

Together, these provisions guarantee shareholders an unqualified right to

redemption payments according to the NAV per share, and further assure that

redemption payments are final and binding once completed.  BCA Section 31

likewise authorizes and protects a shareholder's reliance on the NAV certificates in

receiving redemption payments.  SPA-286-87 (BCA § 31).  The lower courts

49

correctly rejected Plaintiffs' attempts to use common law principles to unwind redemption payments that both statutory law and the governing contract protect.

### 1. The District Court Correctly Held That BCA Section 31 Bars Plaintiffs' Contract And Common Law Claims

Section 31(1) provides that "a company … may not assert against a person dealing with the company … that … a document issued on behalf of a company by a director, employee or agent of the company with actual or usual authority to issue the document is not valid or not genuine."  SPA-286 (BCA § 31(1)(e)).  This rule "applies even though [the issuing agent] acts fraudulently."  SPA-287 (BCA § 31(2)); *see also* A-1298-300 (First Mortimore Decl. ¶¶ 83-87).  The District Court correctly recognized—and Plaintiffs admit—that Plaintiffs' contract and common law claims require the Funds to disclaim the NAV certificates issued on their behalf and under their actual authority.  Section 31 therefore bars those claims.  SPA-43-44 (*Fairfield V*).

Plaintiffs concede that "Citco acted with authority" when issuing the NAVs, Br. 83, but seek to evade the consequences of that fact.  Plaintiffs argue that the ECCA's 2016 decision in *ABN AMRO Fund Servs. (Isle of Man) 24 Nominees Ltd. v. Krys*, Nos. BVIHCMAP: 11-16, 23-28 ("*ABN AMRO*"), somehow "held Section 31 inapplicable to these very Liquidators' claims" and that this is the "end of the matter."  Br. 83.  They are wrong and misstate *ABN AMRO*.  In that case, the ECCA rejected an attempt by certain defendant-shareholders to obtain an order

50

from a BVI court restraining these U.S. proceedings, concluding that the defendant-shareholders had "not demonstrated that the US Proceedings are to be restrained as being vexatious, oppressive, an abuse of process or are otherwise hopeless." SPA-103 (*ABN AMRO* ¶ 82). In doing so, it never addressed Section 31, as Plaintiffs acknowledged to the District Court. Reply Br. for Plaintiffs-Appellants at 24 n.13, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-03911 (S.D.N.Y. Apr. 23, 2020), ECF 361.

Plaintiffs further argue that although Section 31 prevents them from asserting the certificates are "not valid" or "not genuine," it does not use the word "binding," so the certificates have no legal effect. Br. 83-84. But "valid" *means* "legally binding." *See* Valid, OXFORD ENGLISH DICTIONARY (5th ed. 2002) (defining "valid" as "[p]ossessing legal authority, executed with the proper formalities; legally acceptable or *binding*" (emphasis added)); Valid, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "valid" as "[l]egally sufficient; binding"); *see also* Binding, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "binding" as "having legal force to impose an obligation"). Section 31 says the Funds are barred from asserting that the NAV is *either* "not valid" *or* "not genuine," and it means what it says: the Funds cannot rely on allegations of internal irregularity (such as Citco Fund Services' supposed bad faith) to avoid the

51

effect of documents they issued.  Plaintiffs offer no explanation of what "valid" is supposed to mean if it does not mean "legally binding."

Plaintiffs' argument that "valid" cannot mean "binding" because both terms are used in proximity elsewhere in the BCA, and BVI law "treat[s] words as adding something rather than as mere surplusage," falls flat.  Br. at 83-84.  In both sections the word "binding" is used in addition to "valid" to make clear that the relevant instrument binds not only the person or entity that issued it but also *others*. *See* BCA § 66(4)(a) (providing for conditions where a mortgage of shares will be both "valid" and also "binding" not only on the mortgagor but also on the issuing company); *id.* § 103(2) (providing for contracts to be not only "valid" as to the company but also "binding" on it "and its successors and all other parties.").  That does not suggest "valid" does not mean "binding," only that it is sometimes necessary to make clear *who* is bound by a "valid" instrument.[24]

Likewise, Plaintiffs' hypothetical example of a mistaken bank statement, Br. 84-85, ignores two important distinguishing features absent here.  Unlike the

---

[24]    Plaintiffs are also mistaken to suggest a categorical rule that each word must be given distinct meaning.  Br. at 84 & n. 14.  *S.A. Mar. et Commerciale of Geneva v. Anglo-Iranian Oil Co.* [1954] 1 W.L.R. 492 at 495 lays down no such rule, and this court has recognized that words that form a "redundant doublet, such as 'null and void,' 'arbitrary and capricious,' or 'aid and abet'" do not add additional meaning.  *See United States v. Atilla*, 966 F.3d 118, 125 (2d Cir. 2020). Accordingly, use of the synonyms "valid" and "binding" does not support plaintiff's argument that "valid" means less than "binding."

Articles, a bank's agreement with its accountholder typically allows a bank to rectify errors. *Compare* CHITTY ON CONTRACTS (34th ed.) ¶ 36-351, available at Westlaw ("Credit entries in a periodic statement or pass book constitute prima facie evidence against the banker but may be rectified within a reasonable time to show the true facts"), *with* A-272 (Articles ¶ 10(2)) ("The Redemption Price for each share *shall be* the Net Asset Value per Share." (emphasis added)). Moreover, unlike a redeeming shareholder who entirely depends on the Funds' NAV calculations, a bank customer could be charged with knowledge of the balance in their account. *See* SPA-286 (BCA § 31(1)) (providing an exception where the party "ought to have, by virtue of his or her relationship to the company, knowledge of the matters referred to in any of paragraphs (a) to (e) [of BCA § 31(1)]").

Finally, Plaintiffs' digression on Section 31's origin in the common law "Indoor Management Rule," Br. 85-86, does not help them. Plaintiffs refer to secondary sources for two variations of the Indoor Management Rule that address only a company's ability to challenge the *authority* of its agent. *Id.* The BVI, however, enacted a statute that specifically prohibits a company from challenging its own documents' *validity*, not just the agent's authority to issue them. *See* SPA-286 (BCA § 31(1)); *see also* A-1298 (First Mortimore Decl. ¶ 83) (Section 31

"gives third parties who deal with such companies much greater protection than they would have when dealing with, e.g., an English company.").

> **2.** **The Articles Independently Establish That Plaintiffs Are Bound By The NAVs, As The Privy Council Held In *Migani***

In *Migani*, which arose from Plaintiffs' initial efforts to sue the Funds' redeeming shareholders in the BVI, the Privy Council held that the Funds cannot revisit the redemption payments they made pursuant to their own NAVsbecause "the nature of a redemption transaction and the procedures [regarding the redemption of shares] make it essential that the Redemption Price should be definitively ascertained at the time of the transaction." SPA-162 (*Migani* ¶ 30); *see also Fairfield II*, 596 B.R. at 295-97, 301-02.

*Migani* held that the binding NAVs operate as a complete bar to Plaintiffs' recovery. *See* SPA-158 (*Migani* ¶ 19) (holding "redemption payments are irrevocable" upon finding that NAVs were binding). The Privy Council specifically found that "[t]he sole object of certification is to produce finality, and the scheme of the Articles … shows that finality is equally important for all determinations of the NAV per share …." SPA-161 (*id.* ¶ 26). *Migani* thus squarely rejected Plaintiffs' argument that the Funds' Articles allow the Funds to rely on their own mistake or their agent's alleged misconduct to vitiate their own NAVs. *See Fairfield II*, 596 B.R. at 295-97.

While Plaintiffs concede that *Migani* found that the Funds' NAVs are binding, Br. 23, they nevertheless seek to evade its clear holding. They primarily rely on *Weavering II*, but that case lends no support. In *Weavering II*, the fund's liquidators sought to recover redemption payments made to the defendant-shareholder as unlawful preferences under Cayman Islands law. SPA-419 (*Weavering II* ¶ 2). In an effort to challenge the fund's insolvency status (a prerequisite to establishing unlawful preferences), the defendant-shareholder argued that the fund's redemption obligations were void because they were based on fraudulent behavior, so the fund was not insolvent. SPA-424-25 (*id.* ¶ 16(a)). The Privy Council disagreed and held that, notwithstanding the fraud, the redemption obligations remained valid debt obligations, so the fund was, in fact, insolvent. SPA-430-31, 434 (*id.* ¶¶ 27, 30, 44).

Contrary to Plaintiffs' contention that *Weavering II* held that the fraudulently issued NAVs were not binding "full stop," Br. 82; *see also* Br. 79, 81, 86, 91, the Privy Council actually held they *were* binding on the company—just as the Funds' NAVs here are binding on them. SPA-434 (*Weavering II* ¶ 44) ("[T]he redemption price became a liability of the Company …."). While the Privy Council acknowledged that the *defendant-shareholder* may have been able to file an action *against the fund's liquidators* to set aside the NAVs, it made clear that the defendant-shareholder would first have to repay any redemptions received

55

pursuant to the fraudulent NAVs and show injury. SPA-431 (*id.* ¶ 30). In other words, while the NAVs may have been voidable at the option of the innocent defendant-shareholder, they were not void *ab initio* or voidable at the option of the company responsible for issuing them. Because no shareholder sought to void the NAVs in *Weavering II*, they continued to bind both the defrauding fund and the defendant-shareholder. In any event, even if Plaintiffs were correct regarding their interpretation of *Weavering* II, which they are not, *Weavering II* did not even address BVI law and cannot override BCA Section 31, as the District Court correctly concluded. SPA-46-47 (*Fairfield V*).

Accordingly, Plaintiffs' underlying premise that their allegations of Citco Fund Services' "bad faith" render *Migani* inapplicable, Br. 24 & n.3, 25-26, is wrong as a matter of law. *Weavering II* does nothing to change the applicability of *Migani*. And, as the Bankruptcy Court correctly recognized, *Migani*'s principles of "finality, certainty, and workability" have been followed by the Privy Council even in cases where—as here—liquidators allege misconduct or illegality. *Fairfield II*, 596 B.R. at 295. *Migani* contains no exception for bad faith. For example, in *DD Growth Premium 2X Fund v. RMF Mkt. Neutral Strategies (Master) Ltd.*, [2017] UKPC 36, [16]-[61], the Privy Council held that liquidators for an insolvent fund who sought to recover "illegal" payments of capital to shareholders made by the funds' directors contrary to Cayman Islands law could

56

not pursue unjust enrichment claims because the funds' payment obligation to its

shareholders was valid.  *Id.* ¶ 61.  The bottom line is that an issuing fund may not

rely on its own misconduct to void NAVs to the detriment of shareholders.  SPA-

463-65 (*Weavering II* ¶¶ 135-37 (Sir Donnell Deeny, concurring)) (discussing

*Migani*).

Finally, Plaintiffs try to evade the binding NAVs by asking this Court to

imply a contractual term in the Articles providing that NAVs issued by the Funds

in supposed "bad faith" can be voided *by the Funds themselves* in claims against

redeeming shareholders.  Article 11(1) establishes that certificates "given in good

faith by or on behalf of the Directors shall be binding on all parties."  A-274

(Articles ¶ 11(1)).  Plaintiffs argue this means that certificates given in "bad faith"

are binding on *no parties* and can be set aside by the Funds.  But that is simply not

what the Articles say (nor what logic requires).  *Fairfield II*, 596 B.R. at 301 ("The

Articles do not state that the Funds can recover inflated redemption payments.");

SPA-45 n.38 (*Fairfield V*) ("Article 11 only provides that NAVs given in good

faith shall be binding; it says nothing about NAVs given in bad faith."); *see also*

SPA-161 (*Migani* ¶ 26) ("The *sole* object of certification [under Article 11(1)] is to

produce finality…." (emphasis added)).  Indeed, as in *Weavering II*, although a

dishonestly issued NAV may not be binding on "all persons," because it may not

bind a redeeming shareholder in certain circumstances, SPA-430 (*Weavering II*

¶ 27), that does not mean it is "not 'binding'" on *anyone,* as Plaintiffs wrongly imply, Br. 81 (quoting SPA-430 (*Weavering II* ¶ 27)).  It continues to bind the fund that issued it (whether the fund did so honestly or not).  Plaintiffs' contention otherwise suffers from the logical fallacy of arguing that, "If P, then Q" necessarily means "If not P, then not Q."

Nor is re-writing the Articles to conform to Plaintiffs' desired reading permissible.  Under BVI law, the test for reading an implied term into a contract is obviousness and business necessity.  A-1305-06, 1311-12 (First Mortimore Decl. ¶¶ 103-07, 120-23).  As the District Court reasoned, "it is neither obvious nor efficient nor consistent with the parties' expectations to imply that subscribers, redeemers or the Funds agreed to open-ended liability based on hindsight for incorrectly stated NAVs." *Fairfield II*, 596 B.R. at 302.  The function of Article 11(1)'s certification provision is to ensure that shareholders cannot second-guess the Directors' good faith determination of the NAVs, thus ensuring that transactions based on the NAVs are final.  This was critical to the functioning of the Funds because the NAVs controlled the price for both purchases and sales of the Funds' shares.  A-270, 272 (Articles ¶¶ 9(2), 10(2)).

Moreover, it would make no sense to allow the Funds to avoid a binding payment obligation because of their agent's bad faith.  *See* A-1301 (First Mortimore Decl. ¶¶ 90-91) (Citco Fund Services' alleged bad faith is attributed to

the Funds). "[A] contract will generally be construed in such a way as to prevent a party from taking advantage from its own wrong." *Fairfield II*, 596 B.R. at 299; *see also HIH Cas. & Gen. Ins. Ltd. v Chase Manhattan Bank*, [2003] 1 All ER 349 (Comm) at ¶ 16 (Lord Bingham) (a party seeking to contractually exclude the consequences of its agent's deceit must express so "in clear and unmistakable terms on the face of the contract"); A-1300 (First Mortimore Decl. ¶¶ 88) ("[A] contract will be interpreted so far as possible in such a manner as not to permit one party to it to take advantage of his own wrong." (citing Kim Lewison, *The Interpretation of Contracts* § 7.10 (7th ed. 2020))).[25]

As the District Court correctly recognized, nothing in Article 11(1) suggests an intent to import an unwritten contractual term that would so dramatically deviate from the default statutory regime and common law principles. Indeed, such a term, even if adopted expressly, would likely be unenforceable because "[t]he memorandum and articles of a company have no effect to the extent that they contravene or are inconsistent with [the BCA]." BCA § 11(3); *see also* A-1299-300 (First Mortimore Decl. ¶ 85).

---

[25] Nor can Plaintiffs, who stand in the Funds' shoes, escape the Funds' alleged bad faith, for the reasons set forth *infra* Section II.A.3.

### 3. The District Court Correctly Applied The Illegality Defense To Bar Plaintiffs' Contract And Common Law Claims

Even if Plaintiffs' efforts to rely on their own agent's alleged "bad faith" did not fail on the basis of the Articles and BCA Section 31, they would still run headlong into a bedrock principle that "[n]o court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." *Patel v. Mirza*, [2016] UKSC 42 [1] (citing *Holman v. Johnson* (1775) 1 Cowp 341, 343); *see also* A-1302-04 (First Mortimore Decl. ¶¶ 93-97). BVI law does not allow Plaintiffs to bring claims against third parties that require them to prove their own agent's bad faith, as Plaintiffs concede all their contract and common law claims require. *See* Br. 79.

The closely related doctrines of *in pari delicto* and *ex turpi causa* both embody this rule and bar Plaintiffs' claims here. *See O'Connell v. Arthur Andersen LLP (In re AlphaStar Ins. Grp. Ltd.)*, 383 B.R. 231, 274 (Bankr. S.D.N.Y. 2008) (*ex turpi causa* "doctrine is essentially the same as *in pari delicto*"); SPA 44 n.37 (*Fairfield V*) (noting similarity between *ex turpi causa* and *in pari delicto*). As the District Court explained, "[E]ven if [Defendants] were unjustly enriched, [Plaintiffs] acting on behalf of the Funds cannot seek to recover based on the inflated NAVs issued by the Funds themselves." SPA 44 (*Fairfield V*); *see also* SPA 47 & SPA 44 n.37 (*Fairfield V*); A-1302 (First Mortimore Decl. ¶ 93). The District Court's reasoning is consistent with this Court's holding more

than a decade ago that the BLMIS liquidating trustee could not do what Plaintiffs seek to do here: rely on alleged misconduct of the entity they are liquidating as a basis for claims against redeeming investors. *See In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 64 (2d Cir. 2013) ("[The trustee] stands in the shoes of [the fund] and may not assert claims against third parties for participating in a fraud that [the fund] orchestrated.").

None of Plaintiffs' arguments undermine the District Court's analysis.

*First*, Plaintiffs assert that the doctrine applies only to illegal or immoral acts and that the Funds' behavior was neither. Br. 86. While Plaintiffs do not allege that the Funds defrauded their investors as BLMIS did, Plaintiffs plainly allege that Citco Fund Services—acting on the Funds' behalf—knowingly issued NAV certificates containing incorrect information. A-727 (PSAC ¶ 66) ("[Citco Fund Services] knew that such account statements contained incorrect information"), A-728 (*id.* ¶ 68) ("[Citco Fund Services] issued Certificates … with willful blindness to the fact that they could not confirm whether the Funds' assets actually existed"). This conduct, as alleged, was illegal. A-1302-03 (First Mortimore Decl. ¶ 95); *see also* BVI Crim. Code § 221 (prohibiting false accounting); BVI Secs. & Inv. Bus. Act (2010) § 91 (prohibiting misleading statements).

*Second*, Plaintiffs incorrectly argue that their claims do not entail "benefitting" from Citco Fund Services' misconduct and suggest that bankruptcy

trustees are somehow categorically immune from "benefitting" from the debtor's misconduct.  Br. 86.  However, the Funds benefitted from their agent's certification of the NAVs because that was necessary for the Funds' operation, including both subscriptions and redemptions.  *See In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78, 82 (2d Cir. 2018) (summary order) (*in pari delicto* barred liquidator's claim where investment manager's misconduct benefitted debtor fund by sustaining investment vehicle in which debtor fund had invested).  Indeed, the Funds received subscription payments from shareholders based on the same allegedly inflated NAVs set by Citco Fund Services.  There is no exception for "bankruptcy trustees" (or foreign liquidators), who stand in the debtor's shoes.  *See Bernard L. Madoff Inv. Sec.*, 721 F.3d at 64 n.12.

*Third*, Plaintiffs argue that *ex turpi causa* should not be applied whenever liquidators seek to recover funds for further distribution to creditors because doing so would be contrary to the public interest.  Br. 87 (citing SPA-448, 461 (*Weavering II* ¶¶ 80, 124)).  Under this logic, *ex turpi causa* could never bar liquidators' claims.  Even *Weavering II*, however, states that when the law "requires the repayment of the money to the liquidators," it does so "subject to possible defences."  SPA-448 (*Weavering II* ¶ 80); *see also Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d at 64 n.12 (finding trustee's claims barred by *in pari delicto* notwithstanding trustee's purported purpose of recovering funds for distribution to

creditors).[26]  Accordingly, the Privy Council considered whether *ex turpi causa* barred the liquidators claims in *Weavering II*.  It declined to apply the defense, not because doing so would be contrary to the public interest, but because the cause of action was not founded on an "illegal act" of the fund.  The cause of action was founded on violation of a Cayman Islands statute prohibiting unfair preferences. SPA-440, 461 (*Weavering II* ¶¶ 63, 124).  Here, to prove their contract and common law claims, unlike their statutory claims, Plaintiffs must prove the Funds' allegedly illegal acts (as Plaintiffs concede).

*Finally*, Plaintiffs mistakenly argue that the parties contracted around the effect of their agent's allegedly illegal conduct "by making good faith a condition precedent to the NAVs being binding."  Br. 89.  Again, no such "condition precedent" exists and there is no basis to write one into the Articles.  *See supra* Section II.A.2.

### B. Plaintiffs' Claims Are Also Barred Because Defendants Exchanged Good Consideration For Their Redemption Payments, As The Bankruptcy Court and ECCA Correctly Held

Not only are the NAVs binding, but Defendants also provided good consideration, which independently bars Plaintiffs' claims.  Although the District

---

[26]  The *in pari delicto* doctrine is entirely consistent with the public interest, and its application to an agent's wrongdoing is supported by "strong considerations of public policy."  *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 466 (2010).  *But see* Br. 88-89 (positing a conflict).

Court did not reach the issue, the Bankruptcy Court correctly held that Defendants'
return of shares in exchange for the Redemption Price independently requires
dismissal of Plaintiffs' contract and common law claims. *Fairfield II*, 596 B.R. at
300-01 ("[Defendants] gave the consideration required by their contracts with the
Funds when they surrendered their shares in exchange for the Funds' discharge of
their contractual redemption obligations."); *see also id.* at 299 n.35.

In addition to correctly applying BVI law on good consideration, the
Bankruptcy Court followed controlling foreign judgments regarding these Funds
and this dispute that already found that redeeming shareholders provided good
consideration. Plaintiffs litigated and lost the Good Consideration Issue before the
BVI Court, which held that Plaintiffs' common law claims were barred because
"the redemption of shares in this case amounted to a bargain and sale for which the
consideration received by [Fairfield] Sentry was the surrender of the rights of the
redeeming shareholder." A-1421-22 (Preliminary Issues Decision ¶¶ 34-36). The
ECCA affirmed, noting that "[Fairfield] Sentry's contractual obligations gave rise
to a debt obligation whatever the value of the shares and the surrender of the rights
to the shares by the [Defendants] …, having fully performed their part of the
contract, gave good consideration which defeats [Fairfield] Sentry's restitutionary
claim." A-1507 (ECCA Decision § 80). On further appeal, the Privy Council,
after resolving the Certificate Issue against Plaintiffs, "dismissed" the appeal with

respect to the ECCA's decision on good consideration.  SPA-162 (*Migani* ¶ 32).

This dismissal leaves the ECCA's decision intact, final, and binding.  *See* A-1963-

66 (Second Mortimore Decl. ¶¶ 12-17); SPA-11 n.21 (*Fairfield V*); *Fairfield II*,

596 B.R. at 288.[27]

### C.    Plaintiffs Are Bound By Prior, Final Decisions In The BVI Courts Rejecting Their Very Same Arguments

While the District Court correctly applied BVI law, as discussed above, this

Court need not reach whether the NAVs are binding or Defendants paid good

consideration because *res judicata* bars Plaintiffs from rearguing issues that they

previously litigated and lost in final decisions of the ECCA and the Privy Council.

Specifically, Plaintiffs argued in *Migani* that the NAVs were not binding,

and they lost.  *See supra* Section II.A.2.  Plaintiffs also argued that Defendants'

provision of good consideration did not bar their claims, and they lost on that issue

in the ECCA as well.  *See supra* Section II.B; *see also* A-1274, 1281-82, 1286-87

(First Mortimore Decl. ¶¶ 22, 24, 39-40, 50-56) (explaining that the Privy

---

[27]    While *Migani* did not reach the issue, it reinforced the ECCA's holding on good consideration by explaining that because "the shares [have] been surrendered in exchange for the amount properly due under the Articles, the redemption payments are irrecoverable."  SPA-158 (*Migani* ¶ 19); *see also* A-1313 (First Mortimore Decl. ¶ 125) (quoting *Barclays Bank Ltd v. WJ Simms Son & Cooke (Southern) Ltd* [1980] 1 QB 677, 695C-D (holding mistaken payment unrecoverable where "the payment is made for good consideration")).

Council's decision to dismiss the appeal left the ECCA's decision on good

consideration intact as a final judgment on the merits for purposes of preclusion).

This Court should give preclusive effect to these foreign judgments.

The District Court never reached the merits of Defendants' preclusion

arguments because it mistakenly believed that Defendants had waived them by

relying on federal preclusion law rather than BVI preclusion law. SPA-40-43

(*Fairfield V*). The District Court alternatively held that *Migani* could not have

preclusive effect here because Plaintiffs had not raised the Funds' own bad faith in

*Migani*, and so the issue was "not actually litigated in the BVI Proceedings." SPA-

42-43 n.35 (*Fairfield V*).

These conclusions were mistaken. *First*, federal law—not BVI law—

determines the preclusive effect of the BVI proceedings here. "It has been held in

non-diversity cases since *Erie R. Co. v. Tompkins*, that the federal courts will apply

their own rule of res judicata." *Blonder-Tongue Lab'ys., Inc. v. Univ. of Illinois

Found.*, 402 U.S. 313, 324 n.12 (1971) (quoting *Heiser v. Woodruff*, 327 U.S. 726,

733 (1946)). This rule applies to foreign judgments. *See Simmtech Co. v.

Citibank, N.A.*, 2016 WL 4184296, at *6, *10 (S.D.N.Y. Aug. 3, 2016) (Korean

judgment), *aff'd*, 697 F. App'x 35 (2d Cir. 2017); *CSFB HOLT LLC v. Collins

Stewart Ltd.*, 2004 WL 1794499, at *6 (S.D.N.Y. Aug. 10, 2004) (U.K. order).

And it makes sense because "a United States court should not be confined to using

the foreign court's mechanisms or else forgo achieving its own objectives."

*Alfadda v. Fenn*, 966 F. Supp. 1317, 1329 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 41 (2d

Cir. 1998).[28]

     *Second*, under federal preclusion law, Plaintiffs may not now argue that the

NAVs are not binding or that Defendants did not pay good consideration. *Res*

*judicata* applies when "(1) the previous action involved an adjudication on the

merits; (2) the previous action involved the plaintiffs or those in privity with them;

[and] (3) the claims asserted in the subsequent action were, or could have been,

raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d

275, 285 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). For *res*

*judicata* to apply, the actual claims asserted need not be identical. "Even claims

based upon different legal theories are barred [by res judicata] provided they arise

from the same transaction or occurrence." *Cho v. Blackberry Ltd.*, 991 F.3d 155,

168 (2d Cir. 2021) (quoting *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198

F.3d 85, 88 (2d Cir. 1999)) (alteration in original). Moreover, the parties need not

be exactly the same. Instead, "the requisite privity must be found in the substantial

---

[28]    The District Court reached the wrong conclusion by mistakenly relying on *Coudert*, a decision that addressed which state's choice-of-law rule to apply to a state law claim originally brought in state court. *See* SPA-41-42 (*Fairfield V*) (citing *In re Coudert Bros. LLP*, 673 F.3d 180 (2d Cir. 2012)). Nothing in *Coudert* supports applying state choice-of-law rules to questions of preclusion in cases commenced in federal court.

identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995); *see also NBN Broad., Inc. v. Sheridan Broad. Networks, Inc.*, 105 F.3d 72, 73, 76, 79 (2d Cir. 1997) (applying *res judicata* against plaintiff in subsequent case even though defendants not named in prior case).

As discussed above, Plaintiffs already litigated both the Certificate Issue and the Good Consideration Issue against Fund shareholders to the BVI's court of last resort and lost.  In resolving the Certificate Issue, *Migani* squarely addressed whether the NAVs were binding, and Plaintiffs were obligated to advance in those proceedings all of their reasons why the NAVs were not binding.  "The parties are bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494, 495 (2d Cir. 2009) (quoting *Harborside Refrigerated Servs., Inc. v. Vogel*, 959 F.2d 368, 372 (2d Cir.1992)).  Similarly, the BVI proceedings conclusively determined that the Funds paid good consideration for the redemptions, and Plaintiffs were required to advance all reasons why that rule did not preclude liability.

Plaintiffs were well aware of the facts that they now allege show Citco Fund Services' bad faith, yet strategically chose not to advance those factual contentions

or any legal theory predicated on them. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442-43 (S.D.N.Y. 2010) (refusing to dismiss aiding and abetting fraud claim against Citco Fund Services in Madoff-related action in which Plaintiffs appeared); Letter from the Liquidators, *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM), (S.D.N.Y. Sept. 22, 2009), ECF 241. "If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 257-58 (D.C. Cir. 1992).

*Third*, even if the District Court were correct that BVI preclusion law applies here, it erred in finding that Defendants waived their preclusion arguments under BVI law because they only argued the issue under federal law. To the contrary, Defendants argued that even if BVI law applies, the result would be the same. *See* Consol. Br. for Defendants-Appellees at 48 n.36, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-03911 (S.D.N.Y. March 9, 2020), ECF 281. Particularly given the nature of the issue (*i.e.*, an articulation of the same argument made under different law), the District Court was wrong to find that referring to BVI law in a footnote waived arguments using it. *Compare* SPA-42 n.34 (*Fairfield V*), *with Kumpf v. N.Y. State United Tchrs.*, 2022 WL 17155847, at \*7 (N.D.N.Y. Nov. 22,

2022) (considering argument in footnote where adversary responded to it); *see also* Reply Br. for Liquidators at 28, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-03911 (S.D.N.Y. Apr. 23, 2020), ECF 361 (addressing preclusion under BVI law). In any event, Defendants did not waive the preclusion issue by arguing it under the purportedly wrong law. *See Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 n.3 (10th Cir. 1997) ("defendant … did not waive the statute of limitations defense simply by pleading the defense based on the wrong choice of law" and considering defendant's defense on appeal under correct choice of law).

*Finally*, even if BVI preclusion law applied, Plaintiffs still could not relitigate these two issues serially against different shareholders. A-1283-88 (First Mortimore Decl. ¶¶ 42-56); A-1966-84 (Second Mortimore Decl. ¶¶ 18-49).

> Except in special circumstances where this would cause injustice, issue estoppel bars the raising in subsequent proceedings of points which (i) were not raised in the earlier proceedings or (ii) were raised but unsuccessfully. If the relevant point was not raised, the bar will usually be absolute if it could with reasonable diligence and should in all the circumstances have been raised.

A-1284 (First Mortimore Decl. ¶ 43) (quoting *Virgin Atlantic Airways Ltd v. Zodiac Seats UK Ltd* [2014] AC 160, U.K. Supreme Court, at § 22). And BVI preclusion law—like federal preclusion law—does not impose a strict privity requirement. A-1284 (*id.* ¶ 45) (citing *OJSC Oil Co. Yugraneft v. Abramovich* [2008] EWHC 2613 (Comm), English High Court at §§ 396-97). "One type of

case where privity is recognised is where C knows of proceedings between A and B in which his rights are being tested but stands back and does nothing." A-1285 (First Mortimore Decl. ¶ 47) (quoting *Resolution Chems. Ltd v. H Lundbeck A/S* [2013] EWCA Civ 924, English Court of Appeal, at § 26).

Here, a BVI court would conclude that there is sufficient privity between the three Funds, on the one hand, and all the Defendants, on the other hand, even though some but not all were parties in *Migani*. A-1286 (*id.* ¶¶ 50-53). For the same reasons as under federal preclusion law, Plaintiffs "could" and "should" have raised their agent's alleged bad faith in the BVI proceedings. They simply chose not to. Moreover, a BVI court would also apply *Henderson v. Henderson* (1843) 3 Hare 100, Eng. Ch., to bar re-litigation of whether the NAVs are binding or Defendants paid good consideration. *Henderson* prevents "a party [from] misusing or abusing the process of the court by seeking to raise before it the issue which could have been raised before." A-1287 (First Mortimore Decl. ¶ 54) (quoting *Johnson v. Gore Wood & Co* [2002] 2 AC 1, 31 (HL).

## III. THE BANKRUPTCY COURT PROPERLY DISMISSED THE BIA SECTION 246 CLAIM FOR FAILURE TO STATE A CLAIM

While the Court need not reach the issue since the safe harbor bars Plaintiffs' BIA claims, the dismissal of Plaintiffs' claims under BIA Section 246 can be affirmed on the alternative ground that Plaintiffs failed to plead the elements of the claim. *Fairfield II*, 596 B.R. at 303-06.

71

To state a claim under Section 246, Plaintiffs must allege that (i) the transaction was undervalued, (ii) the company was unable to pay its debts as they fell due at the time or as a consequence of entering into the transaction, and (iii) the transaction was entered into during the vulnerability period. A-1320-21 (First Mortimore Dec. ¶ 145). The only element preserved for appeal is whether the transactions were undervalue. *See* Br. 92.

BVI law is clear that whether a transaction was "undervalue" is judged at the time of the transfer, not with the benefit of hindsight. A-1357 (First Mortimore Decl. ¶ 239); *see also* A-1332 (*id.* ¶ 173) ("[T]he BVI Court consistently directs its inquiry to the information that was reasonably available to an objective observer at the time each transaction was entered into, without intrusion of hindsight."); *Fairfield II*, 596 B.R. at 304-05. Because Defendants surrendered shares in the Funds in exchange for payments of equivalent value at the time of the transactions, the transactions were definitionally not "undervalue." *Fairfield II*, 596 B.R. at 300-01 (noting the Funds were legally obligated to pay the calculated NAV in exchange for the shares).

Invoking a narrow exception to this rule under *Phillips v. Brewin Dolphin Bell Lawrie* [2001] BCC 864 (HL) (appeal taken from Eng.) ("*Phillips*"), Plaintiffs argue that "BVI law looks to reality with the benefit of hindsight." Br. 94. But that is not the holding in *Phillips*, which stands instead for the proposition that use

72

of hindsight knowledge is permissible "*only* where at the time the transaction is entered into the value of the asset is known by the parties or would be known to a reasonably well-informed purchaser to be uncertain (or precarious), or subject to a contingency (the happening or non-happening of an event)."  A-1358 (First Mortimore Decl. ¶ 240) (emphasis added).  In other words, when the parties to the transaction *at the time* knew or should have known that the value of their exchange was uncertain and would only become certain upon the occurrence of future events, then those future occurrences can be considered for the purpose of assessing if the transaction was undervalue.  *Id*.

This case is nowhere close to that exception because Plaintiffs do not allege that the Funds or Defendants had any reason to believe there was *anything* uncertain about the exchange of value when it was made.  Rather, the Articles made clear that the value of the shares was determined by the NAVs certified by the Funds' directors, and those NAVs were binding even if mistaken.  *See* SPA-159-60, 162 (*Migani* ¶¶ 21-24, 30-31) (finding that the NAVs calculated at the time of the redemptions were binding on the Funds).  Unlike in *Phillips*, there was nothing contingent about the exchange of value here.

Indeed, even in hindsight, the payments made by the Funds to Defendants were not undervalued.  When Defendants tendered their shares to the Funds, they became creditors of the Funds in an amount established by the Funds' NAVs.  The

73

payments made by the Funds to Defendants discharged those lawful debts.

*Fairfield II*, 596 B.R. at 298 ("[T]he redemption payments themselves were lawful and discharged the Funds' valid obligations."); SPA-45 (*Fairfield V*) (affirming).

## IV. DEFENDANTS DID NOT CONSENT TO NEW YORK JURISDICTION ON PLAINTIFFS' CLAIMS BY SIGNING SUBSCRIPTION AGREEMENTS, BECAUSE THOSE CLAIMS ARE NOT "WITH RESPECT TO" THOSE AGREEMENTS

Plaintiffs predicate personal jurisdiction against hundreds of foreign Defendants on the common theory that, by signing Subscription Agreements containing the Forum Selection Clause providing for jurisdiction over actions "with respect to th[e] [Subscription] Agreement *and* the Fund," A-1029 (Subscription Agreement § 19) (emphasis added), Defendants allegedly consented to suit in New York on Plaintiffs' claims.[29]  Because Plaintiffs' claims are undisputedly "with respect to … the Fund," the issue is whether they are also "with respect to the [Subscription] Agreement[s]."  *Id.*  As the District Court concluded, "[T]he Subscription Agreement[s] simply contain[] no provision that is relevant enough to make this dispute 'with respect to' them."  SPA-24 (*Fairfield V*).

---

[29]     In the Bankruptcy Court, Plaintiffs alternatively argued that Defendants had sufficient suit-related "minimum contacts" to support specific personal jurisdiction. The court declined to address that contention because it involved defendant-specific "factual disputes."  *Fairfield I*, 2018 WL 3756343, at *12.  The "minimum contacts" question was therefore not presented to the District Court, *see* SPA-17 n.27 (*Fairfield V*), and is not at issue here.

Plaintiffs' claims instead derive from the Articles, the separate contract that governs NAV calculations and redemptions, which is not subject to the Forum Selection Clause.

Determining "the meaning of a forum selection clause is a matter of contract interpretation." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 75 (2d Cir. 2009). As "nearly all Defendants" allegedly signed identical Subscription Agreements, Br. 18, those agreements are self-evidently form contracts drafted by the Funds, in whose shoes Plaintiffs now stand. Accordingly, any "equivocal contract provisions" must be construed against Plaintiffs. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000) (applying New York law). Moreover, Plaintiffs bear the burden of establishing a *prima faci*e case of personal jurisdiction over foreign Defendants. *See, e.g.*, *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).[30] Holding Plaintiffs to their burden is essential to protect Defendants from an unconstitutional exercise of personal jurisdiction. "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs and third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

---

[30]     To acquire shares in the Funds, Defendants were required to represent that they were not "U.S. Persons." *See* A-1025-26 (Subscription Agreement § 5(a)-(b)).

Plaintiffs' claims concern only Defendants' redemptions of shares in the Funds and the NAVs set at redemption, not Defendants' initial subscriptions for shares. These claims implicate—indeed, are governed by—the Articles, not the Subscription Agreements. In arguing that the Forum Selection Clause nonetheless confers jurisdiction here, Plaintiffs proceed from the premise that "with respect to" (like such "synonymous" phrases as "in connection with" and "related to") is "expansive." Br. 45. But that general proposition does not begin to resolve the question at hand: what connection must Plaintiffs establish between their claims and the Subscription Agreements to bring those claims within the Forum Selection Clause?

Plaintiffs advance a "but-for" test.[31] That is: if Defendants had not initially signed the Subscription Agreements, the Funds never would have issued shares to Defendants; if shares had never been issued to Defendants, they would not have been able to redeem those shares; and if Defendants had never redeemed the shares, then they would not have received redemption payments calculated at NAVs that Plaintiffs now claim were too high. Because the Subscription Agreements created the first link in this chain, Plaintiffs argue, their claims are

---

[31] "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020).

"with respect to" those agreements.  Br. 46-47.  But that sweeping and attenuated approach[32] is at odds with this Court's precedents, which instead require a direct relationship between the claims and the Subscription Agreements.

### A.    Plaintiffs' Limitless "But-For" Approach Is Inconsistent With This Court's Precedents

This Court has twice rejected a "but-for" approach to the interpretation of dispute resolution clauses employing such phrases as "in connection with" or "relating to."  In *Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*, 348 F.2d 693 (2d Cir. 1965) (Marshall, J.), and *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), this Court required—as the District Court did here—that the factual allegations underlying the asserted claims implicate the particular agreement or condition referenced in the relevant dispute resolution clause.

*Necchi* involved a distribution agreement, providing that "'[a]ll matters, disputes or disagreements arising out of or *in connection with this Agreement* shall be finally settled' by arbitration."  348 F.2d at 695 (emphasis added).  The defendant demanded arbitration on nine disputed items.  *Id*. at 695-96.  Analyzing

---

[32]    Under Plaintiffs' "but-for" approach, *all* claims between the Funds and shareholders, governed by the Articles, would be subject to New York jurisdiction. That would necessarily sweep into New York courts all manner of intracorporate disputes under the Articles, such as claims that the Fund acted *ultra vires* in its investments or borrowings (A-278-80 (Articles ¶ 12)) or improperly convened or conducted its shareholders' meetings (A-284-88 (*id.* ¶¶ 20-44))—even though the BVI-law Articles contain no clause providing for New York jurisdiction.

each item separately, the Court affirmed the District Court's order compelling arbitration as to two disputes because "they directly relate[d] to certain provisions in the agreement." *Id*. at 697. The remaining seven disputes, however, lacked the necessary connection—in one instance, because the dispute was "governed by" a separate agreement between the parties that had no arbitration clause. *Id.* at 698. Although the claims would not have arisen but for the distribution agreement that provided the overall basis for the parties' "working relationship," this Court held them insufficiently related to that agreement to be subject to its arbitration clause. *Id.* That scenario precisely parallels this case: the dispute over Defendants' redemptions at the certified NAVs is governed by the Articles, a separate agreement lacking a forum selection clause, not the Subscription Agreements. Although Plaintiffs' claims may generally relate to the parties' overall "working relationship," they are not "with respect to the Agreement."

In *Cooper*, this Court again rejected a "but-for" approach. The issue there was whether an arbitration clause covering disputes "relating to employment" encompassed an employee's claims against an investment advisor that managed the employer's profit-sharing retirement plan. 990 F.3d at 178. "[F]ocus[ing]" on the "limitations that [it found] implicit in the phrase 'relating to'" in the context of the arbitration clause, *id*. at 182, this Court—approving decisions of the Fifth, Ninth, and Eleventh Circuits—rejected the "but-for" approach to relatedness, *see*

78

*id*. at 182-83.[33]  "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, the phrase would not have much limiting power because really, universally, relations stop nowhere."  *Id.* at 183 (quoting *Jones*, 583 F.3d at 238-39, and *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).[34]

Plaintiffs' "but-for" test and reliance on a limitless interpretation of "related to" and similar phrases cannot survive *Necchi* and *Cooper*.  The teachings of those cases apply here; although each involves an arbitration clause, such a clause "is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  Indeed, this is an even stronger case than those for rejecting a "but-for" approach, because a judicial forum selection clause does not create tension with the federal policy liberally promoting arbitration, evidenced by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. and expressly

---

[33]     *Cooper* approved of the decisions in *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017); *Doe v. Princess Cruise Lines, Ltd*., 657 F.3d 1204 (11th Cir. 2011); and *Jones v. Halliburton Co*., 583 F.3d 228 (5th Cir. 2009).

[34]     The Eighth Circuit, citing *Cooper*, *Jones*, *Doe*, and *Welch*, also later rejected a "but-for" approach to an arbitration clause covering "any dispute arising under or related in any way to" the agreement at issue.  *Anderson v. Hansen*, 47 F.4th 711, 715-18 (8th Cir. 2022).

79

acknowledged in *Necchi*, 348 F.2d at 697, and *Cooper*, 990 F.3d at 179. "[T]he absence of a congressional policy on forum clauses prompting us to err on the side of coverage is significant." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 390 (2d Cir. 2007).

The correctness of the District Court's approach is further confirmed by *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, 15 F.4th 1101 (Fed. Cir. 2021). There, the Federal Circuit, applying New York law and affirming a Southern District of New York decision, construed the forum selection clause in a non-disclosure agreement ("NDA") requiring that any claims "relating to this Agreement" be brought in a court in Manhattan. *Id.* at 1105. The plaintiff argued that the clause precluded defendants from challenging the patentability of plaintiff's technology in another forum, but the Federal Circuit disagreed based on its analysis of the subject matter and purpose of the NDA and the nature of the claims at issue: "the [NDA] implicates confidentiality and not the intellectual property rights of the parties." *Id.* at 1107. Accordingly, the court found the "connection" urged by plaintiff "too attenuated" to bring the patentability claims within the forum selection clause's scope. *Id.* at 1109; *see also Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1317–18 (11th Cir. 2013) (where a forum selection clause applied to any dispute "related in any way to" certain contracts, only claims with a "direct relationship to" those contracts were subject to the clause; "the fact that a dispute could not have arisen

80

but for an agreement does not mean that dispute necessarily 'relates to' that agreement"); *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340-41 (11th Cir. 2012) (similar); *Abbott Lab'ys. v. Takeda Pharm. Co*., 476 F.3d 421, 425 (7th Cir. 2007) ("a 'but for' test of 'arising out of' or 'related to' would be unsound" in the forum selection context) (Posner, J.) (dicta).

Plaintiffs ignore these authorities, which reject the "but-for" test and require a direct relationship between the particular claims and agreements at issue[35] and instead rely heavily on two decisions rendered by courts that—unlike this Court—have not rejected the "but-for" test. *See* Br. 46 (citing *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co.*, 779 F.3d 214 (3d Cir. 2015)). That difference alone provides sufficient reason not to follow Plaintiffs' cases. Moreover, those two cases—which no court in this Circuit has ever cited—are readily distinguished.

---

[35] Plaintiffs' principal Second Circuit authority, *Coregis Ins. Co. v. Am. Health Found., Inc*., 241 F.3d 123 (2d Cir. 2001), *see* Br. 45-48, is inapposite. *Coregis* did not employ or approve a "but-for" test. Rather, the Court there held, unremarkably, that an insurance policy exclusion for claims "related to" the insured's "insolvency" or "financial impairment" applied to claims alleging that the insured misrepresented its financial condition "to hide the fact that financial failure was looming on the horizon." 241 F.3d at 130. *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24 (2d Cir. 2002), and *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001), *see* Br. 45, 46, 48, concern the categorization of arbitration clauses as "broad" or "narrow" for purposes of the presumption of arbitrability, which is not at issue here.

In *Huffington*, the plaintiff alleged that to induce him to invest in the fund at issue, defendants misrepresented the risks associated with that investment. 637 F.3d at 21.[36] The First Circuit held that these claims were "with respect to" the subscription agreement because the alleged misrepresentations all related to the "contracted-for purchase." *Id*. at 22. The same was true in *Carlyle*, involving investments in the same fund by a different investor. *See Carlyle Inv. Mgmt. LLC v. Plaza Mgmt. Overseas S.A.*, 2013 WL 4407685, at *3 (D. Del. Aug. 14, 2013), *aff'd sub nom. Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214 (3d Cir. 2015). Here, by contrast, Plaintiffs' claims do not involve Defendants' initial decisions to purchase shares of the Funds or the parties' execution or performance of any obligations under the Subscription Agreements. Instead, the claims concern only Defendants' redemptions (*i.e.*, sales) of shares, which are governed by the Articles, not the Subscription Agreements.

---

[36]     *Huffington* illustrates the fallacy of Plaintiffs' contention that the District Court's supposedly "crabbed reading" would limit the claims within the Forum Selection Clause to those involving "pure breaches" of the Subscription Agreements. Br. 48 (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)). As in *Huffington*, and for that matter *Carlyle* and *Roby*, a misrepresentation claim based on allegedly false statements made by the Fund to induce a subscriber to invest would be "with respect to" the Subscription Agreement.

## B. The District Court Correctly Held That Plaintiffs' Claims Are Not "With Respect To" The Subscription Agreements

Once Plaintiffs' untenable "but-for" test is rejected, it is clear that Plaintiffs' claims are not "with respect to" the Subscription Agreement, as the District Court held. *See* SPA-22-25 (*Fairfield V*). As Plaintiffs themselves previously represented to the BVI Court, Plaintiffs' claims have everything to do with the Articles and nothing to do with the Subscription Agreements.[37]

As the Privy Council explained, "the Subscription Agreement binds the subscriber to his subscription and to the terms of the Fund Documents, but is otherwise concerned entirely with acknowledgements, representations and warranties…." SPA-154 (*Migani* ¶ 10). It is the Articles, not the Subscription Agreement, that "govern the redemption of [Sentry's] shares," *id*., and contain the detailed provisions governing all aspects of share issuance, share redemption, and NAV determination, A-269-78 (Articles ¶¶ 9-11); *see also* SPA-154-62 (*Migani* ¶¶ 11-32) (discussing pertinent aspects of these provisions).

---

[37] BVI law required Plaintiffs to apply for leave to serve non-BVI defendants located elsewhere. *See* Br. 22-24. To convince the BVI Court to authorize such service and thereby acquire jurisdiction over the defendants, Plaintiffs represented that "the [BVI] claims are not made on or in respect of the [New York law-governed Subscription] Agreements." A-1662, 1669 (Sentry's Skeleton Arguments). Based on those representations—which Plaintiffs contradict in their arguments here—the BVI Court granted Plaintiffs' applications and issued orders authorizing service of claim forms and statements of claims "out of the jurisdiction." A-1670-88 (Orders dated April 12, 2010 and May 13, 2010).

Plaintiffs' own complaints debunk their bald assertion that the redemption payments to Defendants were made "pursuant to the Subscription Agreements." Br. 36. "Aside from the forum selection clause at issue," the complaints did "not mention any other specific provision of the Subscription Agreement [Plaintiffs] believe are implicated by their claims." SPA-23 (*Fairfield V*). Instead, they acknowledged that Plaintiffs' claims depended on provisions of the Articles.[38] Plaintiffs "did not dispute that the issues related to the NAV and the Redemption Payments here are governed by the Articles, which set out the procedure for NAV calculation and redemption." *Id*. Unsurprisingly, Plaintiffs' opening brief confirms this. *See* Br. 20 ("The Directors delegated to Citco the authority to 'redeem Shares in accordance with' the Articles."); Br. 40 ("[T]he Funds' Articles of Association require that NAVs be certified in good faith to be binding.").

Although Plaintiffs tout the Subscription Agreement's references to redemptions, *see* Br. 19, these are not operative provisions—they do not govern the redemption process at all (the Articles do that), and consist merely of: (i) acknowledgements that the subscriber is aware of the limited provisions for redemptions (which in turn are set out in the Articles), A-1028 (Subscription

---

[38]     *See, e.g.*, A-719 (PSAC ¶ 41) ("Article 11 … provides that '[a]ny certificate as to the Net Asset Value per Share … given in good faith by or on behalf of the Directors shall be binding on all parties.'"); A-748 (*id.* ¶ 166) (explaining relevance of "redemption process under the Articles" for BIA claims).

Agreement § 9); and (ii) blank spaces for the subscriber to fill in its bank account information to receive any eventual redemption payments, A-1034 (*id.* § 30(g)). The District Court correctly concluded that these "limited references contained in the Subscription Agreement[s]" did not support Plaintiffs' argument. SPA-24 (*Fairfield V*).

Plaintiffs essentially seek a judicial rewriting of the Forum Selection Clause, effectively amending that provision either to: (i) encompass claims "with respect to" the *Articles*, not merely the Subscription Agreements, as though these separate agreements constituted a single integrated whole; or (ii) read "with respect to *the Fund*," rather than (as the Funds actually drafted the clause) "with respect to *the Agreement and* the Fund" (emphasis added). But this gambit fails for two independent reasons. *First*, it violates the settled principle of New York law that "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001) (internal quotations omitted). *Second*, Plaintiffs unsuccessfully made these arguments below, *see* SPA-24-25 (*Fairfield V*), but have abandoned them on appeal, *see* Br. 46-51 (failing to argue alternative bases asserted below). They should not be permitted to now revive them through the back door.

Moreover, as the District Court noted, Plaintiffs' proposed interpretation would render "superfluous" the term "the Agreement" in "this Agreement and the Fund." SPA-22 (*Fairfield V*). "Interpretations 'that render provisions of a contract superfluous' are particularly disfavored." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002)).[39]

Finally, this Court should reject Plaintiffs' "policy" and "efficiency" arguments. Plaintiffs tout the supposed advantages of forum selection clauses to international trade and commerce. *See* Br. 44. But "[h]owever important a forum selection clause is to the efficient functioning of international business, it is a creature of contract," *Philips*, 494 F.3d at 387 (citation omitted), and "[f]orum selection clauses are enforced only when they encompass the claim at issue,"

---

[39]  Plaintiffs attempt to rebut the District Court's conclusion by conjuring two hypothetical Fund-related claims that are not "with respect to the Agreement." But neither involves a dispute between the Funds and an investor *qua* investor; the first does not even involve an investor. *See* Br. 50. For any investment-related dispute, Plaintiffs' reading renders "the Agreement" superfluous.

Plaintiffs also claim that the District Court's interpretation "creates superfluity" because any claim sufficiently relating to the Subscription Agreement would also "necessarily relate to the Funds." Br. 50-51. Not so. For example, a claim by the Fund for rescission of a Subscription Agreement based on a subscriber's material misrepresentation of its status (*e.g.*, as a non-"U.S. Person" or a "Professional Investor," *see* A-1026 (Subscription Agreement § 5(b)-5(c))) would relate to the Subscription Agreement but not the Fund.

*Light v. Taylor*, 317 F. App'x 82, 83 (2d Cir. 2009) (summary order); *see also*

*Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509

(2d Cir. 1998) (courts construing disputes about the application of a contractual

forum selection clause "must address whether application of the clause to

[plaintiff's] claim is proper").[40]

Equally unavailing is Plaintiffs' complaint that unless the District Court's

decision is reversed, they "must continue to expend precious resources litigating

personal jurisdiction against dozens (and potentially hundreds) of Defendants …."

Br. 44.  Any such expenditure results solely from Plaintiffs' (or the Funds') own

choices.  Plaintiffs were not required to bring suit in New York; the Forum

Selection Clause expressly reserved the Funds' "right to commence any

Proceeding or otherwise proceed against [a] Subscriber in any other jurisdiction,"

A-1029 (Subscription Agreement § 19), and Plaintiffs could have continued to

pursue claims against all Defendants in the BVI.  Similarly, the Funds could have

---

[40]     Plaintiffs suggest that their claims should be centralized in one forum and
speculate that the parties "wanted to channel most disputes between the investors
and the Funds to courts in New York."  Br. 36; *see also* Br. 49 (suggesting that this
is what "the parties chose").  But no evidence in the record supports this
conjecture.  Indeed, as Plaintiffs admitted, A-2825-26 (Oral Argument Tr.), and the
Bankruptcy Court found, there is no extrinsic evidence of the parties' intent.
*Fairfield I*, 2018 WL 3756343, at *10.  It is, moreover, counterintuitive that the
central forum for litigation of BVI-law disputes involving the Articles of a BVI
corporation would be anywhere but the BVI.  *See supra* n.32.

87

included in their form Subscription Agreements a broader version of the Forum Selection Clause—*e.g.*, one providing that any action "with respect to the Fund may be brought in New York." As the District Court pointed out, "[i]f the forum selection clause was meant to be 'with respect to' all Fund Documents including the Articles, it would have been written to clearly state such." SPA-25 (*Fairfield V*). Alternatively, the Funds could have inserted a forum selection clause in their Articles. *See, e.g.*, *Anrion Corp. v. Ivanova*, 2023 WL 2503496, at *2 (D. Mass. Mar. 14, 2023) (dismissing claims based on mandatory forum selection clause in foreign company's Articles of Association). They failed, however, to do any of this.

## CONCLUSION

The Court should affirm the District Court's judgments dismissing Plaintiffs' claims and denying them leave to amend.

Dated: New York, New York
    May 5, 2023

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Nowell D. Bamberger*

    Jeffrey A. Rosenthal
    David Z. Schwartz
    Abigail K. Gotter-Nugent
    One Liberty Plaza

New York, NY 10006
T: 212-225-2000
F: 212-225-3999
jrosenthal@cgsh.com
dschwartz@cgsh.com
agotter@cgsh.com

Nowell D. Bamberger
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
T: 202-974-1500
F: 202-974-1999
nbamberger@cgsh.com

*Counsel for Murdoch and Company, Robinson and Company, HSBC Bank USA, N.A., Somers Nominees (Far East) Limited, HSBC Private Bank (Suisse) S.A., HSBC Securities Services (Luxembourg) SA, HSBC Private Bank (C.I.) Limited f/k/a HSBC Private Bank (Guernsey) Limited, HSBC International Trustee Limited, HSBC Institutional Trust Services (Asia) Limited, Republic Nominees Limited f/k/a HSBC Private Banking Nominee 1 (Jersey) Limited, Banco Nominees 2 (Guernsey) Limited f/k/a Banco Nominees (I.O.M) Limited, HSBC Bank Bermuda Limited, and HSBC Latin America Holdings (UK) Limited (successor-in-interest to HSBC Securities (Panama) S.A.)*

–and–

*BNY AIS Nominees Ltd., BNY Mellon International Ltd., FKA PFPC Bank Ltd., PFPC International Bank Limited and PNC International Bank Ltd.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

>Carmine D. Boccuzzi, Jr.
>One Liberty Plaza
>New York, NY 10006
>T: 212-225-2000
>F: 212-225-3999
>cboccuzzi@cgsh.com

>Elsbeth Bennett
>2112 Pennsylvania Avenue, N.W.
>Washington, D.C. 20037
>T: 202-974-1500
>F: 202-974-1999
>ebennett@cgsh.com

*Counsel for Citigroup Global Markets Limited; Citibank NA London; Citibank (Switzerland) AG; Citivic Nominees Limited; Cititrust Bahamas Limited*

HERBERT SMITH FREEHILLS NEW YORK LLP

>Marc J. Gottridge
>450 Lexington Avenue
>New York, NY 10017
>Tel. (917) 542-7600
>marc.gottridge@hsf.com

*Counsel for Barclays Bank (Suisse) SA, Caixabank S.A., as successor by merger to Barclays Bank S.A., sued as "Barclays Bank SA Madrid", and Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank and Trust Limited), sued as "Barclays Private Bank & Trust (Channel Islands) Limited"*

90

FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP

Bruce S. Kaplan
Jeffrey C. Fourmaux
7 Times Square
New York, NY 10036
Tel. (212) 833-1100
bkaplan@fklaw.com
jfourmaux@fklaw.com

*Counsel for DGAM Alternative Strategy Fund L.P.,
DGAM Alternative Strategy Fund IL SPC - Cell A,
DGAM Alternative Strategy Fund IL SPC - Cell B,
and DGAM Asset Allocation Fund L.P.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with Local R. 32.1(a)(4)(A), because it contains 20,974 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: New York, New York
     May 5, 2023

By:  */s/ Nowell D. Bamberger*
         Nowell D. Bamberger

**ADDENDUM A**
**DEFENDANTS- APPELLEES[1]**

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees[2] |
|---|---|---|---|
| 1. | Theodoor GGC Amsterdam, AKA Theodoor Gilissen Global Custody N.V. | 22-2277 | Robert A. Rich<br>Hunton Andrews Kurth LLP<br>200 Park Avenue, 52nd Floor<br>New York, New York 10166<br>Telephone: 202-309-1000<br>Email: rrich2@HuntonAK.com<br><br>*Attorneys for Theodoor GGC Amsterdam* |
| 2. | RBC Dominion Securities, Inc. | 22-2104<br>22-2285 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for RBC Dominion Securities* |

[1] The names of Defendants-Appellees included in this Addendum reflect parties named as Defendants by the Liquidators in the relevant complaints (or to the extent there has been an update to the docket in a particular Action changing the name of a defendant, the updated defendant name) (the "As-Named Defendants"). The inclusion of the As-Named Defendants in this Addendum is not and shall not be construed as an acknowledgement that any such As-Named Defendants are cognizable legal entities or as a waiver of any substantive or procedural rights and remedies by any such As-Named Defendants, all of which are hereby expressly reserved.

[2] The Appellee Liaison Committee contacted known counsel of record for each Appellee at their last known email address. The signature blocks included in this Addendum reflect counsel who responded to the Appellee Liaison Committee. The statements concerning representation contained in the signature blocks represent solely the views of the counsel in that signature block and shall not be construed as an acknowledgement that any party was incorrectly sued or named as a party.

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 3. | 1. Banca Popolare di Bari S.C.p.A, in Amministrazione Straordinaria, successor in interest to TercasCassa di Risparmio Della Provincia di Teramo S.P.A | 22-2150 22-2289 | Robert A. Rich<br>200 Park Avenue<br>New York, New York 10166<br>Phone:  (212) 309-1000<br>Facsimile: (212) 309-1100<br>Email: rrich2@huntonak.com<br><br>-and<br><br>Joseph P. Rovira (Tex. Bar No. 24066008)<br>Hunton Andrews Kurth LLP<br>600 Travis, Suite 4200<br>Houston, Texas 77002<br>Telephone: (713) 220-4200<br>Facsimile: (713) 220-4285<br>E-mail:  josephrovira@huntonak.com<br><br>*Counsel for Banca Popolare di Bari S.p.A., successor-in-interest to Tercas-Cassa di Risparmio Della Provincia di Teramo S.p.A.* |
| 4. | ABN AMRO Global Custody N.V. | 22-2112 22-2292 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for ABN AMRO Global Custody N.V. (sued as FS ABN AMBRO Global Custody)* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 5. | 1. Standard Chartered International (USA) LLC, FKA Standard Chartered International (USA) Ltd.<br><br>2. Banque Privee Edmond de Rothschild (Europe) | 22-2115<br>22-2293 | Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Standard Chartered Holdings Inc. (as successor in interest to Standard Chartered International (USA) LLC, f/k/a Standard Chartered International (USA) Ltd.)*<br><br>John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for Edmond de Rothschild (Europe) (sued as Banque Privee Edmond de Rothschild (Europe))* |
| 6. | Meritz Fire & Marine Insurance Company Ltd. | 22-2116<br>22-2352 | SHEPPARD MULLIN RICHTER & HAMPTON LLP<br>Michael T. Driscoll, Esq.<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Tel: (212) 653-8700<br>Fax: (212) 653-8701 |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | E-mail: mdriscoll@sheppardmullin.com<br><br>*Attorneys for Meritz Fire & Marine Insurance Company Ltd.* |
| 7. | 1. Schroder & Co. (Asia) Ltd.<br><br>2. Perenco SA | 22-2181<br>22-2360 | ROPES & GRAY LLP<br>Andrew G. Devore<br>800 Boylston Street<br>Boston, MA 02199<br>Telephone: (617) 951-7000<br>Andrew.Devore@ropesgray.com<br><br>*Attorney for Schroder & Co. (Asia) Ltd. and Perenco SA* |
| 8. | Banco Santander International S.A., FKA Banco Santander (Suisse) S.A. | 22-2132<br>22-2361 | Richard Levin<br>Carl Wedoff<br>Jenner & Block LLP<br>1155 Avenue of the Americas<br>New York NY 10036<br>(212) 891-1600<br>rlevin@jenner.com<br>cwedoff@jenner.com<br><br>*Attorneys for Banco Santander International S.A.* |
| 9. | Bank Hapoalim (Suisse) Ltd., AKA Banque Hapoalim (Suisse) S.A | 22-2133<br>22-2376 | Scott S. Balber<br>Jonathan C. Cross<br>Herbert Smith Freehills New York LLP<br>450 Lexington Ave., 14th Floor<br>New York, NY 10017<br>Tel: (917) 542-7600<br>scott.balber@hsf.com<br>jonathan.cross@hsf.com<br><br>*Attorneys for Bank Hapoalim (Suisse) Ltd.* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 10. | Mizrahi Tefahot Bank Ltd., AKA Mizrahi Bank Ltd. | 22-2136 22-2382 | Scott B. Schreiber<br>Rosa J. Evergreen<br>Daniel R. Bernstein<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br>(202) 942-5000<br>-and-<br>Kent A. Yalowitz<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>(212) 836-8000<br><br>*Attorneys for Mizrahi Tefahot Bank Limited* |
| 11. | Banque SYZ SA, FKA Banque Syz & Co. SA | 22-2125 22-2420 | Richard Levin<br>Carl Wedoff<br>Jenner & Block LLP<br>1155 Avenue of the Americas<br>New York NY 10036<br>(212) 891-1600<br>rlevin@jenner.com<br>cwedoff@jenner.com<br><br>*Attorneys for Banque SYZ SA* |
| 12. | Banque Piguet & Cie S.A | 22-2212 22-2384 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for Piguet Galland & Cie SA (sued as Banque Piguet & Cie S.A.)* |
| 13. | 1. Banco Bilbao Vizcaya Argentaria (Portugal) S.A.,<br><br>2. Banco Bilbao Vizcaya Argentaria, S.A.<br><br>3. BBVA Fundas Privanza<br><br>4. BBVA Grand Cayman<br><br>5. BBVA Miami | 22-2201<br>22-2463 | Heather Lamberg<br>WINSTON & STRAWN LLP<br>1901 L Street, NW<br>Washington, DC 20036<br>Telephone: (202) 282-5274<br>hlamberg@winston.com<br><br>*Attorneys for Banco Bilbao Vizcaya Argentaria (Portugal) S.A., Banco Bilbao Vizcaya Argentaria, S.A., BBVA Fundas Privanza, BBVA Grand Cayman, and BBVA Miami* |
| 14. | Merrill Lynch, Pierce, Fenner & Smith, Inc. | 22-2228<br>22-2387 | Pamela A. Miller<br>O'MELVENY & MYERS LLP<br>Seven Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>E-mail: pmiller@omm.com<br><br>*Attorney for Merrill Lynch, Pierce, Fenner & Smith, Inc.* |
| 15. | Neue Bank AG | 22-2233<br>22-2388 | FOX HORAN & CAMERINI LLP<br>William M. Brodsky<br>885 Third Avenue, 17th Fl.<br>New York, New York 10022 |

|     | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|-----|----------------------|--------------------|-------------------------------------|
|     |                      |                    | 212-480-4800<br>wmbrodsky@foxlex.com<br><br>*Attorneys for Neue Bank AG* |
| 16. | Lombardy Properties Limited | 22-2256<br>22-2506 | Joshua E. Abraham<br>BUTZEL LONG PC<br>477 Madison Avenue, Suite 1230<br>New York, NY 10022<br>(212) 374-5370<br>abraham@butzel.com<br><br>*Attorneys for Lombardy Properties Limited* |
| 17. | 1. Fund Nominees Limited<br><br>2. Collins Stewart (CI) Ltd. | 22-2286<br>22-2510 | Jacob M Kaplan<br>L Andrew S. Riccio<br>452 Fifth Avenue<br>New York, NY 10018<br>United States<br>T: 212-626-4100<br>F: 212-310-1896<br>jacob.kaplan@bakermckenzie.com<br>andrew.riccio@bakermckenzie.com<br><br>*Attorneys for Fund Nominees Limited and Collins Stewart (CI) Limited* |
| 18. | Vontobel Asset Mgmt. Inc., | 22-2119 | WUERSCH & GERING LLP<br>Gregory F. Hauser<br>Joshua A. Dachs<br>100 Wall Street, 10th Floor<br>New York, New York  10005<br>T: 212-509-5050<br>F: 212-509-9559 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | gregory.hauser@wg-law.com <br> joshua.dachs@wg-law.com <br><br> *Attorneys for Vontobel Asset Management Inc., sued as Vontobel Asset Mgt. Inc.* |
| 19. | 1. SG Private Banking (Suisse) SA, NKA Societe Generale Private Banking (Suisse) S.A <br><br> 2. FIF Advanced Limited | 22-2288 <br> 22-2523 | John F. Zulack <br> Lauren J. Pincus <br> David A. Shaiman <br> Allegaert Berger & Vogel LLP <br> 111 Broadway, 20th Floor <br> New York, NY 10006 <br> T: 212-571-0550 <br> F: 212-571-0555 <br> jzulack@abv.com <br> lpincus@abv.com <br> dshaiman@abv.com <br><br> AND <br><br> Steven Wolowitz <br> Christopher J. Houpt <br> Mayer Brown LLP <br> 1221 Avenue of the Americas <br> New York, NY 10020 <br> T: 212-506-2500 <br> swolowitz@mayerbrown.com <br> choupt@mayerbrown.com <br><br> *Attorneys for Société Générale Private Banking (Suisse) S.A. (f/k/a SG Private Banking Suisse S.A.)(sued as SG Private Banking (Suisse) SA NKA Societe Generale Private Banking (Suisse) S.A.)* |

|     | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
| --- | --- | --- | --- |
|     |     |     | WOLLMUTH MAHER & DEUTSCH LLP<br>William A. Maher<br>wmaher@wmd-law.com<br>Fletcher W. Strong<br>fstrong@wmd-law.com<br>500 Fifth Avenue<br>New York, NY 10110<br>T: (212) 382-3300<br>F: (212) 382-0050<br><br>*Attorneys for FIF Advanced, Ltd.* |
| 20. | 1. Sherli Elghanian Krayem<br><br>2. Roya Rebecca Elghanian | 22-2183<br>22-2482 | Caitlin C. Conklin<br>K&L Gates LLP<br>One Newark Center, 10th Floor<br>Newark, NJ 07102<br>Phone: 1-973-848-4049<br>Fax: 1-973-848-4001<br>Caitlin.Conklin@klgates.com<br><br>Wm. Shaw McDermott<br>K&L Gates LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA 02111-2950<br>O: 617.261.3120<br>Fax: 617.261.3175<br>C: 781.367.1593<br>shaw.mcdermott@klgates.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Sherli Elghanian Krayem and Roya Rebecca Elghanian* |
| 21. | Bank of America National Trust and Savings Association | 22-2188 22-2644 | Pamela A. Miller O'MELVENY & MYERS LLP Seven Times Square New York, New York 10036 Telephone: (212) 326-2000 E-mail: pmiller@omm.com *Attorney for Bank of America National Trust and Savings Association* |
| 22. | Banque de Luxembourg | 22-2189 22-2513 | COOLEY LLP Michael Aaron Klein 55 Hudson Yards New York, NY 10001 T: 212-479-6000 F: 212-479-6275 mklein@cooley.com *Counsel for Banque de Luxembourg* |
| 23. | FS/BBVA Miami | 22-2238 22-2517 | Heather Lamberg WINSTON & STRAWN LLP 1901 L Street, NW Washington, DC 20036 Telephone: (202) 282-5274 hlamberg@winston.com *Attorneys for BBVA Miami (sued as FS/BBVA Miami)* |
| 24. | HSBC Institutional Trust Services (Asia) Limited | 22-2267 22-2528 | Cleary Gottlieb Steen & Hamilton LLP Jeffrey A. Rosenthal Joseph M. Kay |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for HSBC Institutional Trust Services (Asia) Limited* |
| 25. | Credit Suisse International | 22-2303<br>22-2516 | WILLIAM J. SUSHON<br>DANIEL S. SHAMAH<br>O'MELVENY & MYERS LLP<br>Times Square Tower<br>Seven Times Square<br>New York, New York 10036<br>(212) 326-2000<br><br>*Attorneys for Credit Suisse International* |
| 26. | 1.  FS Oddo & Cie | 22-2192<br>22-2534 | Victor P. Muskin<br>Muskin Law Offices<br>767 Third Avenue, Suite 2400 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 2. OAM | | New York, NY 10017<br>(212) 688-3200<br>(917) 301-6950<br>victor@muskinlaw.com<br><br>*Attorneys for FS Oddo & Cie and OAM* |
| 27. | Citibank NA London | 22-2101<br>22-2557 | Cleary Gottlieb Steen & Hamilton LLP<br>Carmine D. Boccuzzi, Jr.<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>cboccuzzi@cgsh.com<br><br>Elsbeth Bennett<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>ebennett@cgsh.com<br><br>*Attorneys for Citibank NA London* |
| 28. | Utmost Limited, FKA AXA Isle of Man Limited | 22-2221 | T. Carter White<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 768-6700<br>Facsimile: (212) 768-6800<br>Email: carter.white@dentons.com<br><br>*Attorneys for Utmost Limited f/k/a AXA Isle of Man Limited* |

|     | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
| --- | --- | --- | --- |
| 29. | 1.  Caceis Bank Luxembourg<br><br>2.  Natixis S.A.<br><br>3.  CDC ICM The Ghos Portfolio a/k/a CDC IXIS Capital Markets;<br><br>4.  Eurogate Farad Global Niche;<br><br>5.  ICIB Atlantique Alpha Master;<br><br>6.  ICIB Centre France Alpha Prot Master;<br><br>7.  ICIB Cote d'Armor Alpha Master;<br><br>8.  ICIB Ethias Allocation Master;<br><br>9.  ICIB Hyperion Alternative Basket II Master;<br><br>10. ICIB Hyperion Alternative Basket Master;<br><br>11. ICIB Natexis Lux Alpha Master;<br><br>12. ICM Tactical Master; and<br><br>13. Strategy Sicav Edpaf<br><br>(Natixis S.A. contends that defendants (3) - (13) are accounts that were opened | 22-2219<br>22-2567 | Cleary Gottlieb Steen & Hamilton LLP<br>Elizabeth Vicens<br>One Liberty Plaza<br>New York, New York 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CACEIS Bank Luxembourg*<br><br>Joseph Cioffi<br>H. Seiji Newman<br>Bruce M. Ginsberg<br>Adam M. Levy<br>Christine DeVito<br>DAVIS+GILBERT LLP<br>1675 Broadway<br>New York, NY 10019<br>T: (212) 468-4800<br>jcioffi@dglaw.com<br>hsnewman@dglaw.com<br>bginsberg@dglaw.com<br>alevy@dglaw.com<br>cdevito@dglaw.com<br><br>*Attorneys for Natixis S.A.; CDC ICM The Ghos Portfolio a/k/a CDC IXIS Capital Markets; Eurogate Farad Global Niche; ICIB Atlantique Alpha Master; ICIB Centre France Alpha Prot Master; ICIB Cote d'Armor Alpha Master; ICIB Ethias Allocation Master; ICIB Hyperion Alternative Basket II Master; ICIB Hyperion* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | and/or operated by Natixis S.A. or its predecessors in title.) | | *Alternative Basket Master; ICIB Natexis Lux Alpha Master; ICM Tactical Master; and Strategy Sicav Edpaf* |
| 30. | EFG Bank, AKA EFG Bank AG AND/OR EFG Bank SA | 22-2259 22-2566 | KOBRE & KIM LLP<br>Adam M. Lavine<br>adam.lavine@kobrekim.com<br>800 Third Avenue<br>New York, NY 10022<br>Telephone (212) 488-1200<br><br>*Attorneys for EFG Bank AG* |
| 31. | BNP Paribas Luxembourg SA, NKA BGL BNP Paribas | 22-2560 | Cleary Gottlieb Steen & Hamilton LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for BGL BNP Paribas S.A. (f/k/a BNP Paribas Luxembourg)* |
| 32. | 1. Altigefi-Altipro Master, AKA Olympia Capital Management<br><br>2. BNP Paribas Securities Services Luxembourg | 22-2611 | Heather Lamberg<br>WINSTON & STRAWN LLP<br>1901 L Street, NW<br>Washington, DC 20036<br>Telephone: (202) 282-5274<br>hlamberg@winston.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 3. Rothschild and Cie Banque-EGA<br><br>4. Anima SGR S.p.A, FKA Clessidra SGR S.p.A. | | *Attorneys for Altipro Master Fund (sued as Altigefi-Altipro Master, AKA Olympia Capital Management)*<br><br>Cleary Gottlieb Steen & Hamilton LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for BNP Paribas Securities Services Luxembourg (n/k/a BNP Paribas, Luxembourg Branch)*<br><br>John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Rothschild & Co. Asset Management Europe (f/k/a Rothschild & Cie Gestion), management company of the fund Elan Gestion Alternative (sued as Rothschild and Cie Banque-EGA)* |
| 33. | 1. Robinson & Co.<br><br>2. Murdoch & Co. | 22-2265<br>22-2603 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgs.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for Robinson & Co. and Murdoch & Co.* |
| 34. | Republic Nominees Limited, FKA HSBC Private Banking Nominee 1 (Jersey) Ltd. | 22-2270<br>22-2606 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for Republic Nominees Limited, FKA HSBC Private Banking Nominee 1 (Jersey) Ltd.* |
| 35. | 1. HSBC Securities Services (Luxembourg) S.A.<br><br>2. Private Space Ltd. | 22-2229<br>22-2568 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for HSBC Securities Services (Luxembourg) S.A.*<br><br>GILMARTIN, POSTER & SHAFTO, LLP<br>Michael C. Lambert<br>845 Third Avenue, 17th Floor<br>New York, NY 10022<br>Tel. (212) 425-3220<br>mclambert@lawpost-nyc.com<br><br>*Attorney for Private Space Ltd.* |
| 36. | 1. HSBC Private Bank (C.I.) Limited, FKA HSBC Private Bank (Guernsey) Limited<br><br>2. Republic Nominees Limited<br><br>3. HSBC Private Bank (C.I.) Limited | 22-2306<br>22-2580 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for HSBC Private Bank (C.I.) Limited, FKA HSBC Private Bank (Guernsey) Limited, Republic Nominees Limited, and HSBC Private Bank (C.I.) Limited* |
| 37. | ANDbanc Andorra, AKA Andorra Banc Agricol Reig, S.A | 22-2275<br>22-2587 | **DLA Piper LLP (US)**<br>Rachel Ehrlich Albanese<br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Tel.: (212) 335-4500<br>Fax: (212) 335-4501<br>Rachel.Albanese@us.dlapiper.com<br><br>*Attorneys for ANDBanc Andorra a/k/a Andorra Banc Agricol Reig, S.A.* |
| 38. | HSBC Private Bank (Suisse) S.A. | 22-2239<br>22-2608 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for HSBC Private Bank (Suisse) S.A* |
| 39. | 1. Zurich Capital Markets Company<br><br>2. ZCM Asset Holding Co. Bermuda<br><br>3. ZCM Matched Funding Corp.<br><br>4. HSBC Bank USA, N.A.<br><br>5. Citibank (Switzerland) AG<br><br>6. Citivic Nominees Limited<br><br>7. EFG Private Bank SA<br><br>8. Safra National Bank of New York<br><br>9. Merrill Lynch Bank (Suisse) SA, improperly named as Merrill Lynch Bank | 22-2562 | BOIES SCHILLER FLEXNER LLP<br>ALAN B. VICKERY<br>STEVEN I. FROOT<br>55 Hudson Yards<br>New York, New York 10001<br>212-446-2300<br>avickery@bsfllp.com<br>sfroot@bsfllp.com<br><br>JENNA C. SMITH<br>30 South Pearl St., 11th floor<br>Albany, New York 12207<br>518-694-4257<br>jsmith@bsfllp.com<br><br>*Attorneys for Zurich Capital Markets Company, ZCM Asset Holding Company (Bermuda) Limited (misnamed in pleadings as ZCM Asset Holding Co. Bermuda), and ZCM Matched Funding Corp.* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for HSBC Bank USA, N.A.*<br><br>Cleary Gottlieb Steen & Hamilton LLP<br>Carmine D. Boccuzzi, Jr.<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>cboccuzzi@cgsh.com |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | Elsbeth Bennett<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>ebennett@cgsh.com<br><br>*Attorneys for Citibank (Switzerland) AG; Citivic Nominees Limited*<br><br>KOBRE & KIM LLP<br>Adam M. Lavine<br>adam.lavine@kobrekim.com<br>800 Third Avenue<br>New York, NY 10022<br>Telephone (212) 488-1200<br><br>*Attorneys for Defendant EFG Bank AG (FKA and sued as EFG Private Bank SA)*<br><br>Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Safra National Bank of New York*<br><br>Pamela A. Miller<br>O'MELVENY & MYERS LLP<br>Seven Times Square |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | New York, New York 10036<br>Telephone: (212) 326-2000<br>E-mail: pmiller@omm.com<br><br>*Attorney for Merrill Lynch Bank (Suisse) SA, improperly named as Merrill Lynch Bank* |
| 40. | 1. Dresdner Bank Schweiz n/k/a LGT Bank (Switzerland) Ltd.<br><br>2. LGT Bank in Liechtenstein AG, NKA LGT Bank AG<br><br>3. Verwaltungs-und Privat-Bank Aktiengesellschaft<br><br>4. Centrum Bank Aktiengesellschaft<br><br>5. National Bank of Kuwait S.A.K.<br><br>6. NBK Banque Privée Suisse SA<br><br>7. Harmony Capital Fund Ltd.<br><br>8. Lloyds TSB Bank Geneva, NKA Lloyds TSB Bank, plc<br><br>9. RBS Coutts Bank Ltd., NKA Coutts & Co. Ltd.<br><br>10. Bank Julius Baer & Co. Ltd.<br><br>11. Fairfield Investment Fund Ltd. | 22-2208<br>23-687 | WUERSCH & GERING LLP<br>Gregory F. Hauser<br>Jascha D. Preuss<br>Joshua A. Dachs<br>100 Wall Street, 10th Floor<br>New York, New York  10005<br>T: 212-509-5050<br>F: 212-509-9559<br>gregory.hauser@wg-law.com<br>jascha.preuss@wg-law.com<br>joshua.dachs@wg-law.com<br><br>*Attorneys for LGT Bank in Liechtenstein AG (now known as LGT Bank AG); LGT Bank (Switzerland) Ltd. (as successor in interest to Dresdner Bank (Schweiz) AG, sued as Dresdner Bank Schweiz); Verwaltungs- und Privat-Bank Aktiengesellschaft (now known as VP Bank AG); and Centrum Bank Aktiengesellschaft (now part of VP Bank AG)*<br><br>Richard A. Cirillo<br>Cirillo Law Office<br>246 East 33rd Street # 1<br>New York, NY 10016<br>T: +1 917-541-6778<br>E: richard@cirillo-law.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 12. Fairfield GCI Fund (sued as Fairfield Investment GCI)<br><br>13. FIF Advanced Ltd.<br><br>14. Compagnie Bancaire Helvétique<br><br>15. BCV AMC Defensive AL Fund<br><br>16. Banque Cantonale Vaudoise<br><br>17. Société Générale Bank & Trust<br><br>18. Edmond de Rothschild (Suisse) S.A.<br><br>19. Rothschild Bank Geneva (Dublin)<br><br>20. Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano S.A<br><br>21. Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG<br><br>22. Lombard Odier Darier Hentsch & Cie<br><br>23. Union Bancaire Privée, UBP SA (sued as ABN AMRO Schweiz AG a/k/a ABN AMRO (Switzerland) AG) | | *Attorney for National Bank of Kuwait, and NBK Banque Privée (Suisse) S.A.*<br><br>Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br>*Attorneys for Harmony Capital Fund Ltd., Lloyds TSB Bank Geneva, n/k/a Lloyds Bank, plc, RBS Coutts Bank Ltd., n/k/a Coutts & Co. Ltd.*<br><br>MCKOOL SMITH, P.C.<br>Eric B. Halper<br>ehalper@mckoolsmith.com<br>Hal M. Shimkoski<br>hshimkoski@mckoolsmith.com<br>One Manhattan West<br>395 9th Avenue, 50th Floor<br>New York, NY 10001<br>T: (212) 402-9400<br>F: (212) 402-9444<br>*Attorneys for Defendants Bank Julius Baer & Co. Ltd.*<br><br>WOLLMUTH MAHER & DEUTSCH LLP<br>William A. Maher<br>wmaher@wmd-law.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 24. Vorarlberger Landes- und Hypothekenbank AG | | Fletcher W. Strong<br>fstrong@wmd-law.com<br>500 Fifth Avenue<br>New York, NY 10110<br>T: (212) 382-3300<br>F: (212) 382-0050 |
| | 25. CACEIS Bank Luxembourg | | |
| | 26. UBS AG New York | | |
| | 27. UBS AG Zurich | | *Attorneys for Fairfield Investment Fund Limited, Fairfield GCI Fund (sued as Fairfield Investment GCI), and FIF Advanced, Ltd.* |
| | 28. UBS Jersey Nominees | | |
| | 29. BNP Paribas (Suisse) SA | | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com |
| | 30. BNP Paribas (Suisse) SA Ex Fortis (NKA BNP Paribas (Suisse) SA) | | |
| | 31. BNP Paribas (Suisse) SA Private (NKA BNP Paribas (Suisse) SA) | | |
| | 32. Banque Pictet & Cie SA (sued as Pictet & Cie) | | |
| | 33. Corner Banca SA | | *Attorneys for CBH Compagnie Bancaire Helvetique SA (sued as Compagnie Bancaire Helvétique); GERIFONDS SA, as manager of BCV AMC Defensive Alt Fund (sued as BCV AMC Defensive Al Fund); Banque Cantonale Vaudoise; Société Générale Luxembourg (sued as Societe Generale Bank & Trust); Edmond de Rothschild (Suisse) S.A. (sued as Rothschild Bank Geneva (Dublin), Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano S.A.); Rothschild & Co Bank AG (sued as Rothschild Bank AG* |
| | 34. Finter Bank Zurich | | |
| | 35. IHAG Handelsbank AG | | |
| | 36. PKB Privatbank AG | | |
| | 37. Banca Unione di Credito | | |

| Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|
| 38. BSI AG<br><br>39. BSI Ex Banca Del Gottardo<br><br>40. EFG Bank SA Switzerland<br><br>41. EFG Eurofinancier D'Invest MCL<br><br>42. BBVA (Suisse) SA<br><br>43. Sis Seeganintersettle<br><br>44. Six SIS Ltd.<br><br>45. Dexia Banque Internationale a Luxembourg, now known as Banque Internationale à Luxembourg SA<br><br>46. Bank J. Safra Sarasin AG, FKA Bank Sarasin & Cie<br><br>47. Banca Arner S.A.<br><br>48. Clariden Leu Ltd.<br><br>49. Credit Suisse AG Zurich<br><br>50. Quasar Fund SPC Class A and Class B CGCNV<br><br>51. Hapoalim (Switzerland) Ltd. | | *Zurich (Dublin) a/k/a Rothschild Bank AG); Banque Lombard Odier & Cie SA (sued as Lombard Odier Darier Hentsch & Cie)*<br><br>Steven Wolowitz<br>Christopher J. Houpt<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br><br>*Attorneys for Société Générale Luxembourg (sued as Societe Generale Bank & Trust*<br><br>Mark G. Hanchet<br>Kevin C. Kelly<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>mhanchet@mayerbrown.com<br>kkelly@mayerbrown.com<br><br>Marc R. Cohen<br>Mayer Brown LLP<br>1999 K St NW<br>Washington, DC 20006<br>T: 202-263-5282<br>mcohen@mayerbrown.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Banque Lombard Odier & Cie SA (sued as Lombard Odier Darier Hentsch & Cie)*<br><br>**HARNIK LAW FIRM**<br>Stephen M. Harnik<br>1225 Park Ave.<br>New York, New York 10128<br>T: (212) 599-7575<br>F: (212) 867-8120<br>Email: stephen@harnik.com<br><br>*Attorneys for Vorarlberger Landes- Und Hypothekenbank AG (now known as Hypo Vorarlberg Bank AG)*<br><br>**LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for Union Bancaire Privée, UBP SA (sued as ABN AMRO Schweiz AG a/k/a ABN AMRO (Switzerland) AG)*<br><br>Cleary Gottlieb Steen & Hamilton LLP<br>Elizabeth Vicens<br>One Liberty Plaza<br>New York, New York 10006 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | T: 212-225-2000<br>F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CACEIS Bank Luxembourg*<br><br>Marshall R. King<br>Gabriel Herrmann<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Tel.: (212) 351-4000<br>mking@gibsondunn.com<br>gherrmann@gibsondunn.com<br><br>*Attorneys for UBS AG (improperly named as "UBS AG New York" and "UBS AG Zurich") and UBS Jersey Nominees Limited (improperly named as "UBS Jersey Nominees")*<br><br>Wachtell, Lipton, Rosen & Katz<br>Emil A. Kleinhaus<br>Angela K. Herring<br>51 West 52nd Street<br>New York, NY 10019<br>tel: (212) 403-1000<br>fax: (212) 403-2000<br>email: eakleinhaus@wlrk.com<br>    akherring@wlrk.com<br><br>*Attorneys for Banque Pictet & Cie SA (sued as Pictet & Cie)* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Cleary Gottlieb Steen & Hamilton LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis (n/k/a BNP Paribas (Suisse) SA), and BNP Paribas (Suisse) SA Private (n/k/a BNP Paribas (Suisse) SA)*<br><br>George W. Shuster, Jr.<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800<br>Facsimile: (212) 230-8888<br>Email: george.shuster@wilmerhale.com<br><br>*Counsel for Defendant-Appellees Corner Banca SA, Finter Bank Zurich (n/k/a Bank Vontobel AG), Privatbank IHAG Zurich AG (sued as IHAG Handelsbank AG), PKB Privatbank AG, and Banca Arner SA (n/k/a* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *One Swiss Bank)*<br><br>**KOBRE & KIM LLP**<br>Adam M. Lavine<br>adam.lavine@kobrekim.com<br>800 Third Avenue<br>New York, NY 10022<br>Telephone (212) 488-1200<br><br>*Attorneys for Defendants Banca Unione di Credito, BSI AG, Banca Del Gottardo (sued as BSI Ex Banca Del Gottardo), EFG Bank AG (sued as EFG Bank SA Switzerland), and EFG Bank (Monaco) S.A.M. (sued as EFG Eurofinancier D'Invest MCL)*<br><br>Heather Lamberg<br>WINSTON & STRAWN LLP<br>1901 L Street, NW<br>Washington, DC 20036<br>Telephone: (202) 282-5274<br>hlamberg@winston.com<br><br>*Attorneys for BBVA (Suisse) SA*<br>CHAFFETZ LINDSEY LLP<br>Andreas A. Frischknecht<br>a.frischknecht@chaffetzlindsey.com<br>Erin E. Valentine<br>e.valentine@chaffetzlindsey.com<br>1700 Broadway, 33rd Floor<br>New York, NY 10019<br>T: (212) 257-6960 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Defendants Six Sis AG, AKA Sis SegaInterSettle AG and Six SIS Ltd.*<br><br>Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 878-8000<br>Email: jeff.butler@cliffordchance.com<br><br>*Attorneys for Banque Internationale à Luxembourg SA*<br><br>Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Bank J. Safra Sarasin AG, f/k/a Bank Sarasin & Cie*<br><br>William J. Sushon<br>Daniel S. Shamah<br>Kayla N. Haran<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>wsushon@omm.com<br>dshamah@omm.com kharan@omm.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Credit Suisse AG Zurich and Clariden Leu Ltd.*<br><br>KLEINBERG KAPLAN WOLFF & COHEN, P.C.<br>Norris D. Wolff, Esq.<br>500 Fifth Avenue, 38th Floor<br>New York, New York 10110<br>(212) 986-6000<br>nwolff@kkwc.com<br><br>*Attorneys for Defendant Quasar Fund SPC Class A and Class B CGCNV (sued as Quasarfuns SPC) (10-ap-3635, 10-ap-3636)*<br><br>Scott S. Balber<br>Jonathan C. Cross<br>Herbert Smith Freehills New York LLP<br>450 Lexington Ave., 14th Floor<br>New York, NY 10017<br>Tel: (917) 542-7600<br>scott.balber@hsf.com<br>jonathan.cross@hsf.com<br><br>*Attorneys for Hapoalim (Switzerland) Ltd.* |
| 41. | 1. Dresdner Bank Schweiz, NKA LGT Bank (Switzerland) Ltd.<br><br>2. LGT Bank in Liechtenstein AG, NKA LGT Bank AG | 22-2304<br>23-715 | WUERSCH & GERING LLP<br>Gregory F. Hauser<br>Jascha D. Preuss<br>Joshua A. Dachs<br>100 Wall Street, 10th Floor<br>New York, New York 10005<br>T: 212-509-5050 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 3. Verwaltungs-und Privat-Bank Aktiengesellschaft<br><br>4. Centrum Bank Aktiengesellschaft<br><br>5. Arden International Capital Limited<br><br>6. Harmony Capital Fund Ltd.<br><br>7. Lloyds TSB Bank Geneva, NKA Lloyds Bank plc<br><br>8. RBS Coutts Bank Ltd., NKA Coutts & Co. Ltd.<br><br>9. Bank Julius Baer & Co. Ltd.<br><br>10. RBC Dexia Investor Service Julius Baer SICAV<br><br>11. Fairfield Investment Fund Ltd.<br><br>12. Fairfield GCI Fund (sued as Fairfield Investment GCI)<br><br>13. FIF Advanced Ltd.<br><br>14. Compagnie Bancaire Helvétique<br><br>15. BCV AMC Defensive AL Fund<br><br>16. Banque Cantonale Vaudoise | | F: 212-509-9559<br>gregory.hauser@wg-law.com<br>jascha.preuss@wg-law.com<br>joshua.dachs@wg-law.com<br><br>*Attorneys for LGT Bank in Liechtenstein AG (now known as LGT Bank AG); LGT Bank (Switzerland) Ltd. (as successor in interest to Dresdner Bank (Schweiz) AG, sued as Dresdner Bank Schweiz); Verwaltungs- und Privat-Bank Aktiengesellschaft (now known as VP Bank AG); and Centrum Bank Aktiengesellschaft (now part of VP Bank AG)*<br><br>Richard A. Cirillo<br>Cirillo Law Office<br>246 East 33rd Street # 1<br>New York, NY 10016<br>T: +1 917-541-6778<br>E: richard@cirillo-law.com<br><br>*Attorney for National Bank of Kuwait, and NBK Banque Privée (Suisse) S.A.*<br><br>WOLLMUTH MAHER & DEUTSCH LLP<br>William A. Maher<br>wmaher@wmd-law.com<br>Fletcher W. Strong<br>fstrong@wmd-law.com<br>500 Fifth Avenue<br>New York, NY 10110<br>T: (212) 382-3300<br>F: (212) 382-0050 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 17. Société Générale Bank & Trust<br><br>18. Edmond de Rothschild (Suisse) S.A.<br><br>19. Rothschild Bank Geneva (Dublin)<br><br>20. Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano S.A<br><br>21. Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG)<br><br>22. Lombard Odier Darier Hentsch & Cie)<br><br>23. Union Bancaire Privée, UBP SA (sued as ABN AMRO Schweiz AG, AKA ABN AMRO (Switzerland) AG)<br><br>24. Vorarlberger Landesund Hypothekenbank AG<br><br>25. CACEIS Bank Luxembourg<br><br>26. UBS AG New York<br><br>27. UBS AG Zurich<br><br>28. UBS Jersey Nominees | | *Attorneys for Fairfield Investment Fund Limited, Fairfield GCI Fund (sued as Fairfield Investment GCI), and FIF Advanced, Ltd.*<br><br>Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for Harmony Capital Fund Ltd., Lloyds TSB Bank Geneva, n/k/a Lloyds Bank, plc, RBS Coutts Bank Ltd., n/k/a Coutts & Co. Ltd.*<br><br>MCKOOL SMITH, P.C.<br>Eric B. Halper<br>ehalper@mckoolsmith.com<br>Hal M. Shimkoski<br>hshimkoski@mckoolsmith.com<br>One Manhattan West<br>395 9th Avenue, 50th Floor<br>New York, NY 10001<br>T: (212) 402-9400<br>F: (212) 402-9444<br><br>*Attorneys for Defendants Bank Julius Baer & Co. Ltd.*<br><br>William J. Sushon |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 29. BNP Paribas (Suisse) SA<br><br>30. BNP Paribas (Suisse) SA Ex Fortis, NKA BNP Paribas (Suisse) SA<br><br>31. BNP Paribas (Suisse) SA Private, NKA BNP Paribas (Suisse) SA<br><br>32. InCore Bank AG<br><br>33. Banque Pictet & Cie SA (sued as Pictet & Cie)<br><br>34. Corner Banca SA<br><br>35. Finter Bank Zurich<br><br>36. IHAG Handelsbank AG<br><br>37. PKB Privatbank AG<br><br>38. Banca Unione di Credito<br><br>39. BSI AG<br><br>40. BSI Ex Banca Del Gottardo<br><br>41. EFG Bank SA Switzerland<br><br>42. EFG Eurofinancier D'Invest MCL<br><br>43. BBVA (Suisse) SA | | Daniel S. Shamah<br>Kayla N. Haran<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>wsushon@omm.com<br>dshamah@omm.com kharan@omm.com<br><br>*Attorneys for Credit Suisse AG Zurich and Clariden Leu Ltd.*<br><br>John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for CBH Compagnie Bancaire Helvetique SA (sued as Compagnie Bancaire Helvétique); GERIFONDS SA, as manager of BCV AMC Defensive Alt Fund (sued as BCV AMC Defensive Al Fund); Banque Cantonale Vaudoise; Société Générale Luxembourg (sued as Societe Generale Bank & Trust); Edmond de Rothschild (Suisse) S.A. (sued as Rothschild Bank Geneva (Dublin), Rothschild Lugano Dublin a/k/a Banca Privata Edmond de Rothschild Lugano* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 44. Sis Seeganintersettle<br><br>45. Six SIS Ltd.<br><br>46. Dexia Banque Internationale a Luxembourg, now known as Banque Internationale à Luxembourg SA<br><br>47. Bank J. Safra Sarasin AG, FKA Bank Sarasin & Cie<br><br>48. Bank Leumi le-Israel B.M.<br><br>49. Banca Arner S.A.<br><br>50. Clariden Leu Ltd.<br><br>51. Credit Suisse AG Zurich<br><br>52. Quasar Fund SPC Class A and Class B CGCNV<br><br>53. National Bank of Kuwait<br><br>54. NBK Banque Privée Suisse SA<br><br>55. Hapoalim (Switzerland) Ltd. | | *S.A.); Rothschild & Co Bank AG (sued as Rothschild Bank AG Zurich (Dublin) a/k/a Rothschild Bank AG); Banque Lombard Odier & Cie SA (sued as Lombard Odier Darier Hentsch & Cie)*<br><br>Steven Wolowitz<br>Christopher J. Houpt<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br><br>*Attorneys for Société Générale Luxembourg (sued as Societe Generale Bank & Trust)*<br><br>Marc R. Cohen<br>Mayer Brown LLP<br>1999 K St NW<br>Washington, DC 20006<br>T: 202-263-5282<br>mcohen@mayerbrown.com<br><br>*Attorneys for Banque Lombard Odier & Cie SA (sued as Lombard Odier Darier Hentsch & Cie)*<br><br>Wachtell, Lipton, Rosen & Katz<br>Emil A. Kleinhaus<br>Angela K. Herring<br>51 West 52nd Street<br>New York, NY 10019 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | tel: (212) 403-1000<br>fax: (212) 403-2000<br>email: eakleinhaus@wlrk.com<br>      akherring@wlrk.com<br><br>*Attorneys for Banque Pictet & Cie SA (sued as Pictet & Cie)*<br><br>Heather Lamberg<br>WINSTON & STRAWN LLP<br>1901 L Street, NW<br>Washington, DC 20036<br>Telephone: (202) 282-5274<br>hlamberg@winston.com<br><br>*Attorneys for BBVA (Suisse) SA*<br><br>**LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for Union Bancaire Privée, UBP SA (sued as ABN AMRO Schweiz AG a/k/a ABN AMRO (Switzerland) AG)*<br><br>CHAFFETZ LINDSEY LLP<br>Andreas A. Frischknecht |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | a.frischknecht@chaffetzlindsey.com<br>Erin E. Valentine<br>e.valentine@chaffetzlindsey.com<br>1700 Broadway, 33rd Floor<br>New York, NY 10019<br>T: (212) 257-6960<br><br>*Attorneys for Defendants Six Sis AG, AKA Sis SegaInterSettle AG and Six SIS Ltd.*<br><br>**HARNIK LAW FIRM**<br>Stephen M. Harnik<br>1225 Park Ave.<br>New York, New York 10128<br>T: (212) 599-7575<br>F: (212) 867-8120<br>Email: stephen@harnik.com<br><br>*Attorneys for Vorarlberger Landes- Und Hypothekenbank AG (now known as Hypo Vorarlberg Bank AG)*<br><br>Cleary Gottlieb Steen & Hamilton LLP<br>Elizabeth Vicens<br>One Liberty Plaza<br>New York, New York 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CACEIS Bank Luxembourg* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Marshall R. King<br>Gabriel Herrmann<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Tel.: (212) 351-4000<br>mking@gibsondunn.com<br>gherrmann@gibsondunn.com<br><br>*Attorneys for UBS AG (improperly named as "UBS AG New York" and "UBS AG Zurich") and UBS Jersey Nominees Limited (improperly named as "UBS Jersey Nominees")*<br><br>Cleary Gottlieb Steen & Hamilton LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for BNP Paribas (Suisse) SA, BNP Paribas (Suisse) SA Ex Fortis (n/k/a BNP Paribas (Suisse) SA), and BNP Paribas (Suisse) SA Private (n/k/a BNP Paribas (Suisse) SA)*<br><br>George W. Shuster, Jr.<br>WILMER CUTLER PICKERING HALE |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800<br>Facsimile: (212) 230-8888<br>Email: george.shuster@wilmerhale.com<br><br>*Counsel for Defendant-Appellees Corner Banca SA, Finter Bank Zurich (n/k/a Bank Vontobel AG), Privatbank IHAG Zurich AG (sued as IHAG Handelsbank AG), PKB Privatbank AG, and Banca Arner SA (n/k/a One Swiss Bank)*<br><br>DAVIS POLK & WARDWELL LLP<br>Elliot Moskowitz<br>Andrew Ditchfield<br>450 Lexington Avenue<br>New York, New York 10017<br>Tel: (212) 450-4000<br>Fax: (212) 701-5800<br>elliot.moskowitz@davispolk.com<br>andrew.ditchfield@davispolk.com<br><br>*Attorneys for Bank Leumi le-Israel B.M.*<br><br>Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Telephone: (212) 878-8000<br>Email: jeff.butler@cliffordchance.com<br><br>*Attorneys for Banque Internationale à Luxembourg SA*<br><br>Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Bank J. Safra Sarasin AG, f/k/a Bank Sarasin & Cie*<br><br>**KOBRE & KIM LLP**<br>Adam M. Lavine<br>adam.lavine@kobrekim.com<br>800 Third Avenue<br>New York, NY 10022<br>Telephone (212) 488-1200<br><br>*Attorneys for Defendants Banca Unione di Credito, BSI AG, Banca Del Gottardo (sued as BSI Ex Banca Del Gottardo), EFG Bank AG (sued as EFG Bank SA Switzerland), and EFG Bank (Monaco) S.A.M. (sued as EFG Eurofinancier D'Invest MCL)*<br><br>KLEINBERG KAPLAN WOLFF & COHEN, P.C.<br>Norris D. Wolff, Esq.<br>500 Fifth Avenue, 38th Floor<br>New York, New York 10110<br>(212) 986-6000 |

|  | **Defendants-Appellees** | **Second Circuit No.** | **Attorneys for Defendants-Appellees** |
|---|---|---|---|
|  |  |  | nwolff@kkwc.com<br><br>*Attorneys for Defendant Quasar Fund SPC Class A and Class B CGCNV (sued as Quasarfuns SPC) (10-ap-3635, 10-ap-3636)*<br><br>Scott S. Balber<br>Jonathan C. Cross<br>Herbert Smith Freehills New York LLP<br>450 Lexington Ave., 14th Floor<br>New York, NY 10017<br>Tel: (917) 542-7600<br>scott.balber@hsf.com<br>jonathan.cross@hsf.com<br><br>*Attorneys for Hapoalim (Switzerland) Ltd.* |
| 42. | Citibank (Switzerland) AG | 22-2308<br>22-2591 | Cleary Gottlieb Steen & Hamilton LLP<br>Carmine D. Boccuzzi, Jr.<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>cboccuzzi@cgsh.com<br><br>Elsbeth Bennett<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>ebennett@cgsh.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Citibank (Switzerland) AG* |
| 43. | Deutsche Bank Trust Company Americas | 22-2254 22-2594 | **MOSES & SINGER LLP** Mark N. Parry The Chrysler Building 405 Lexington Avenue New York, New York 10174 mparry@mosessinger.com  *Attorneys for Deutsche Bank Trust Company Americas* |
| 44. | Deutsche Bank (Suisse) SA | 22-2347 22-2535 | **MOSES & SINGER LLP** Mark N. Parry The Chrysler Building 405 Lexington Avenue New York, New York 10174 mparry@mosessinger.com  *Attorneys for Deutsche Bank (Suisse) SA* |
| 45. | 1. Deutsche Bank (Cayman)  2. Sciens CFO 1 Feeder Fund Ltd.  3. Sciens Global Opportunity Fund | 22-2349 22-2368 | **MOSES & SINGER LLP** Mark N. Parry The Chrysler Building 405 Lexington Avenue New York, New York 10174 mparry@mosessinger.com  *Attorneys for Deutsche Bank (Cayman)*  Ralph A. Siciliano, Esq. Amanda M. Leone, Esq. Tannenbaum Helpern Syracuse & Hirschtritt LLP 900 Third Avenue New York, NY 10022 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Tel: (212) 508-6700<br><br>*Attorneys for Sciens CFO 1 Feeder Fund Ltd. and Sciens Global Opportunity Fund* |
| 46. | Deutsche Bank AG (Singapore) | 22-2340<br>22-2370 | **MOSES & SINGER LLP**<br>Mark N. Parry<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>mparry@mosessinger.com<br><br>*Attorneys for Deutsche Bank (Cayman)* |
| 47. | Blubank Ltd., NKA Inteligo Bank Ltd. | 22-2242<br>22-2345 | Heather Lamberg<br>WINSTON & STRAWN LLP<br>1901 L Street, NW<br>Washington, DC 20036<br>Telephone: (202) 282-5274<br>hlamberg@winston.com<br><br>*Attorneys for Inteligo Bank Ltd. Panama Branch f/k/a/ Blubank Ltd. Panama Branch (sued as Blubank Ltd., NKA Inteligo Bank Ltd.)* |
| 48. | 1. Banco Itau International, FKA Bank Boston International Florida<br><br>2. Blush Nominees, LLC<br><br>3. Brown Brothers Harriman & Co.<br><br>4. Credit Agricole (Miami) | 22-2210<br>22-2364 | RANDALL MARTIN<br>JEFFREY J. RESETARITS<br>SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 848-4000<br><br>*Attorneys for Appellee Banco Itaú International (FKA Bank Boston International Florida and Banco Itaú Europa International)* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 5. Credit Lyonnais Miami, NKA LCL-LE Credit Lyonnais S.A. Miami <br><br> 6. Credit Lyonnais, NKA LCLLE Credit Lyonnais SA <br><br> 7. Credit Lyonnais SA <br><br> 8. Fox Nominees, LLC <br><br> 9. SCB Nominees (CI) Ltd. | | Cleary Gottlieb Steen & Hamilton LLP <br> Elizabeth Vicens <br> One Liberty Plaza <br> New York, New York 10006 <br> T: 212-225-2000 <br> F: 212-225-3999 <br> evicens@cgsh.com <br><br> *Attorney for Blush Nominees, LLC f/k/a Blush & Co., Brown Brothers Harriman & Co., Credit Agricole (Miami), Credit Lyonnais Miami n/k/a LCL-LE Credit Lyonnais S.A. Miami, Credit Lyonnais n/k/a LCL-LE Credit Lyonnais S.A., and Fox Nominees, LLC f/k/a Fox & Co.* <br><br> Andrew J. Finn <br> Sullivan & Cromwell LLP <br> 125 Broad Street <br> New York, NY 10004 <br> T: (212) 558-4000 <br> finna@sullcrom.com <br><br> *Attorneys for SCB Nominees (CI) Ltd.* |
| 49. | 1. Dresdner Lateinamerika AG, FKA Dresdner Bank LateinAmerika AG <br><br> 2. UBS Deutschland AG, as successor to Dresdner LateinAmerika AG | 22-2428 | Andrew M. Leblanc <br> Melanie W. Yanez <br> MILBANK LLP <br> 1850 K Street, NW, Suite 1100 <br> Washington, DC 20006 <br> T: 202-835-7500 <br> F: 202-263-7586 <br> aleblanc@milbank.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | mwyanez@milbank.com<br><br>*Attorneys for Dresdner Lateinamerika AG*<br><br>Marshall R. King<br>Gabriel Herrmann<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Tel.: (212) 351-4000<br>mking@gibsondunn.com<br>gherrmann@gibsondunn.com<br><br>*Attorneys for UBS Deutschland AG, now known as UBS Europe SE* |
| 50. | CDC IXIS | 22-2396 | Cleary Gottlieb Steen & Hamilton LLP<br>Elizabeth Vicens<br>One Liberty Plaza<br>New York, New York 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CDC IXIS* |
| 51. | Itaú Europa Luxembourg, S.A. | 22-2245<br>22-2405 | RANDALL MARTIN<br>JEFFREY J. RESETARITS<br>SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 848-4000 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Appellee Itaú BBA International (Cayman) Ltd. (FKA Itaú Europa Luxembourg, S.A., FKA Banco Itaú Europa Luxembourg, S.A.)* |
| 52. | SNS Global Custody B.V. | 22-2264 22-2357 | George W. Shuster, Jr. WILMER CUTLER PICKERING HALE AND DORR LLP 7 World Trade Center 250 Greenwich Street New York, New York 10007 Telephone: (212) 230-8800 Facsimile: (212) 230-8888 Email: george.shuster@wilmerhale.com <br><br> *Counsel for Defendant-Appellees SNS Bank N.V. and SNS Global Custody B.V.* |
| 53. | UBS Fund Services (Cayman) Limited REF Greenlake Arbitrage Fund Ltd. | 22-2234 | Marshall R. King Gabriel Herrmann GIBSON, DUNN & CRUTCHER LLP 200 Park Avenue New York, New York 10166 Tel.: (212) 351-4000 mking@gibsondunn.com gherrmann@gibsondunn.com <br><br> *Attorneys for UBS Fund Services (Cayman) Ltd (improperly named as "UBS Fund Services (Cayman) Limited REF Greenlake Arbitrage Fund Ltd."), and now known as MUFG Alternative Fund Services (Cayman) Limited* |
| 54. | Banque Pictet & Cie SA (sued as Pictet & Cie) | 22-2269 22-2334 | Wachtell, Lipton, Rosen & Katz Emil A. Kleinhaus Angela K. Herring |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | 51 West 52nd Street<br>New York, NY 10019<br>tel: (212) 403-1000<br>fax: (212) 403-2000<br>email: eakleinhaus@wlrk.com<br>akherring@wlrk.com<br><br>*Attorneys for Banque Pictet & Cie SA (sued as Pictet & Cie)* |
| 55. | 1. ABN AMRO Retained Nominees (IOM) Limited<br><br>2. Platinum All Weather Fund | 22-2203<br>22-2336 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for ABN AMRO Retained Nominees (IOM) Limited*<br><br>Scott B. Schreiber<br>Rosa J. Evergreen<br>Daniel R. Bernstein<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br>(202) 942-5000<br>-and-<br>Kent A. Yalowitz<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | New York, New York 10019<br>(212) 836-8000<br><br>*Attorneys for Appellee Platinum All Weather Fund Limited* |
| 56. | Wall Street Securities, FKA Bantal Brothers S.A. | 22-2271<br>22-2338 | Joshua E. Abraham<br>BUTZEL LONG PC<br>477 Madison Avenue, Suite 1230<br>New York, NY 10022<br>(212) 374-5370<br>abraham@butzel.com<br><br>*Attorneys for Wall Street Securities, FKA Bantal Brothers S.A.* |
| 57. | UBS AG New York | 22-2172<br>22-2577 | Marshall R. King<br>Gabriel Herrmann<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Tel.: (212) 351-4000<br>mking@gibsondunn.com<br>gherrmann@gibsondunn.com<br><br>*Attorneys for UBS AG (improperly named as "UBS AG New York")* |
| 58. | 1. Credit Suisse (Bahamas), AKA Credit Suisse (Bahamas) Limited<br><br>2. Credit Suisse AG, Nassau Branch | 22-2281 | William J. Sushon<br>Daniel S. Shamah<br>Kayla N. Haran<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061 |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | wsushon@omm.com<br>dshamah@omm.com kharan@omm.com<br><br>*Attorneys for Credit Suisse (Bahamas) and Credit Suisse AG, Nassau Brach* |
| 59. | Maria Férère, as Liquidator of Banco Atlantico (Bahamas), AKA Banco Atlantico (Bahamas) Bank & Trust Limited | 22-2251 | OTTERBOURG P.C.<br>Richard G. Haddad<br>Andrew S. Halpern<br>230 Park Avenue<br>New York, New York 10169-0075<br>Tel: (212) 661-9100<br>E-mail: rhaddad@otterbourg.com<br>          ahalpern@otterbourg.com<br><br>*Attorneys for Maria Férère, as Liquidator of Defendant-Appellee Banco Atlántico (Bahamas) a/k/a Banco Atlántico (Bahamas) Bank &Trust Limited (In Voluntary Liquidation)* |
| 60. | 1. FIF Advanced Limited<br><br>2. SG Private Banking (Suisse) SA, NKA Societe Generale Private Banking (Suisse) S.A | 22-2248<br>22-2339 | WOLLMUTH MAHER & DEUTSCH LLP<br>William A. Maher<br>wmaher@wmd-law.com<br>Fletcher W. Strong<br>fstrong@wmd-law.com<br>500 Fifth Avenue<br>New York, NY 10110<br>T: (212) 382-3300<br>F: (212) 382-0050<br><br>*Attorneys for FIF Advanced, Ltd.*<br><br>John F. Zulack<br>Lauren J. Pincus |

|   | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|   |   |   | David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>AND<br><br>Steven Wolowitz<br>Christopher J. Houpt<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br><br>*Attorneys Société Générale Private Banking (Suisse) S.A. (f/k/a SG Private Banking Suisse S.A.)(sued as SG Private Banking (Suisse) SA NKA Societe Generale Private Banking (Suisse) S.A.)* |
| 61. | 1. Banco Atlantico Gibraltar Ltd., AKA EFG Bank (Gibraltar) Ltd.<br><br>2. European Financial Group EFG SA, AKA European Financial Group EFG (Luxembourg) S.A. | 22-2314 | KOBRE & KIM LLP<br>Adam M. Lavine<br>adam.lavine@kobrekim.com<br>800 Third Avenue<br>New York, NY 10022<br>Telephone (212) 488-1200 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Defendants EFG Bank (Gibraltar) Ltd. and European Financial Group EFG SA* |
| 62. | Merrill Lynch Bank (Suisse) SA | 22-2107 22-2350 | Pamela A. Miller O'MELVENY & MYERS LLP Seven Times Square New York, New York 10036 Telephone: (212) 326-2000 E-mail: pmiller@omm.com *Attorney for Merrill Lynch Bank (Suisse) SA* |
| 63. | 1. Abdul Hamid M. Saeed 2. Al Nahyan Mansour Zayed | 22-2166 | CHALOS & CO, P.C. George M. Chalos Briton P. Sparkman 55 Hamilton Avenue Oyster Bay, New York 11771 Tel: 516-714-4300 Fax: 516-750-9051 gmc@chaloslaw.com bsparkman@chaloslaw.com *Attorneys for Abdul Hamid M. Saeed and Al Nahyan Mansour Zayed* |
| 64. | Monte Paschi Ireland Limited | 22-2287 22-2622 | James C. McCarroll John C. Scalzo Reed Smith LLP 599 Lexington Avenue New York, New York 10022 (212) 521-5400 jmccarroll@reedsmith.com jscalzo@reedsmith.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Monte Paschi Ireland Limited* |
| 65. | 1. Standard Chartered Premium Fund, FKA American Express Offshore Alternative Investment Fund<br><br>2. ZCM Asset Holding Company (Bermuda) Limited<br><br>3. Zurich Bank | 22-2375 | Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Standard Chartered Premium Fund, f/k/a American Express Offshore Alternative Investment Fund*<br><br>BOIES SCHILLER FLEXNER LLP<br>ALAN B. VICKERY<br>STEVEN I. FROOT<br>55 Hudson Yards<br>New York, New York 10001<br>212-446-2300<br>avickery@bsfllp.com<br>sfroot@bsfllp.com<br><br>JENNA C. SMITH<br>30 South Pearl St., 11th floor<br>Albany, New York 12207<br>518-694-4257<br>jsmith@bsfllp.com<br><br>*Attorneys for ZCM Asset Holding Company (Bermuda) Limited and Zurich Bank* |
| 66. | Nomura International PLC | 22-2614<br>22-2631 | RANDALL MARTIN<br>JEFFREY J. RESETARITS<br>SHEARMAN & STERLING LLP |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | 599 Lexington Avenue<br>New York, New York 10022<br>(212) 848-4000<br><br>*Attorneys for Nomura International PLC* |
| 67. | Lombard Odier Darier Hentsch & Cie | 22-2391<br>22-2472 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>AND<br><br>Mark G. Hanchet<br>Kevin C. Kelly<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>mhanchet@mayerbrown.com<br>kkelly@mayerbrown.com<br><br>Marc R. Cohen<br>Mayer Brown LLP<br>1999 K St NW |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Washington, DC 20006<br>T: 202-263-5282<br>mcohen@mayerbrown.com<br><br>*Attorneys for Banque Lombard Odier & Cie SA (sued as Lombard Odier Darier Hentsch & Cie)* |
| 68. | 1. Graziela Strina de Toledo Arruda<br><br>2. Luisa M. Strina | 22-2207<br>22-2475 | LEECH TISHMAN ROBINSON BROG, PLLC<br>Steven B. Eichel<br>seichel@leechtishman.com<br>Daniel E. Kelly<br>dkelly@leechtishman.com<br>875 Third Avenue, 9th Floor<br>New York, New York 10022<br>T: (212) 603-6300<br>F: (212) 956-2164<br><br>*Attorneys for Graziela Strina de Toledo Arruda and Luisa M. Strina* |
| 69. | 1. SG Hambros Nominees (Jersey) AKA SG Hambros Nominees (Jersey) Limited<br><br>2. SG Hambros Bank (Channel Islands) Limited – Guernsey a/k/a SG Hambros Bank (Channel Islands) Limited<br><br>3. Hambros Guernsey Nominees, AKA Hambros (Guernsey Nominees) Limited | 22-2243 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>AND |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 4. SG Hambros Bank & Trust (Guernsey) Ltd. | | Steven Wolowitz<br>Christopher J. Houpt<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br><br>*Attorneys for SG Kleinwort Hambros (CI) Limited (sued as SG Hambros Bank & Trust (Guernsey) Ltd. and SG Hambros Bank (Channel Islands) Limited Guernsey, AKA SG Hambros Bank (Channel Islands) Limited); Hambros Guernsey Nominees, AKA Hambros (Guernsey Nominees) Limited; SG Hambros Nominees (Jersey), AKA SG Hambros Nominees (Jersey) Limited* |
| 70. | ING Bank (Suisse) SA, as predecessor to Bank Julius Baer & Co. Ltd. | 22-2279<br>22-2494 | MCKOOL SMITH, P.C.<br>Eric B. Halper<br>ehalper@mckoolsmith.com<br>Hal M. Shimkoski<br>hshimkoski@mckoolsmith.com<br>One Manhattan West<br>395 9th Avenue, 50th Floor<br>New York, NY 10001<br>T: (212) 402-9400<br>F: (212) 402-9444<br><br>*Attorneys for Defendant ING Bank (Suisse) SA, as predecessor to Bank Julius Baer & Co. Ltd..* |
| 71. | Sumitomo Trust & Banking Co., Ltd. | 22-2309<br>22-2512 | Jordan Stern<br>Zeb Landsman |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Becker, Glynn, Muffly, Chassin & Hosinski LLP<br>299 Park Avenue, 16th Floor<br>New York, New York 10171<br>Telephone: (212) 888-3033<br>Facsimile: (212) 888-0255<br>jstern@beckerglynn.com<br>zlandsman@beckerglynn.com<br><br>*Counsel for Sumitomo Trust & Banking Co., Ltd.* |
| 72. | Natixis Wealth Management Luxembourg, FKA Natixis Private Banking International S.A. | 22-2311<br>22-2488 | Joseph Cioffi<br>H. Seiji Newman<br>Bruce M. Ginsberg<br>Adam M. Levy<br>Christine DeVito<br>**DAVIS+GILBERT LLP**<br>1675 Broadway<br>New York, NY 10019<br>T: (212) 468-4800<br>jcioffi@dglaw.com<br>hsnewman@dglaw.com<br>bginsberg@dglaw.com<br>alevy@dglaw.com<br>cdevito@dglaw.com<br><br>*Attorneys for Natixis Wealth Management Luxembourg, FKA Natixis Private Banking International S.A.* |
| 73. | Celfin International Limited, NKA BTG Pactual (Cayman) International Holding Limited | 22-2358<br>22-2489 | Joshua D. Liston<br>Beys Liston & Mobargha LLP<br>New York, NY 10022<br>T: 646-755-3601<br>F: 646-755-3599 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | jliston@blmllp.com<br><br>*Attorneys for Celfin International Limited, NKA BTG Pactual (Cayman) International Holding Limited* |
| 74. | FS Stichting Stroeve Global | 22-2291<br>22-2493 | Robert A. Rich<br>Hunton Andrews Kurth LLP<br>200 Park Avenue, 52nd Floor<br>New York, New York 10166<br>Telephone: 202-309-1000<br>Email: rrich2@HuntonAK.com<br><br>*Attorneys for FS Stichting Stroeve Global Custody* |
| 75. | 1. Clearstream Banking SA<br><br>2. Quintet Private Bank (Europe) SA, FKA Kredietbank SA Luxembourgeoise | 22-2211<br>22-2497 | JOSHUA DORCHAK<br>MORGAN, LEWIS & BOCKIUS LLP<br>101 Park Avenue<br>New York, New York 10178<br>(212) 309-6700<br><br>*Attorneys for Appellees Clearstream and Clearstream Banking SA*<br><br>Robert A. Rich<br>Hunton Andrews Kurth LLP<br>200 Park Avenue, 52nd Floor<br>New York, New York 10166<br>Telephone: 202-309-1000<br>Email: rrich2@HuntonAK.com<br><br>*Attorneys for Quintet Private Bank (Europe) SA f/k/a Kreidietbank SA Luxembourgeoise* |
| 76. | Six Sis AG, AKA Sis SegaInterSettle AG | 22-2140<br>22-2500 | CHAFFETZ LINDSEY LLP<br>Andreas A. Frischknecht |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | a.frischknecht@chaffetzlindsey.com<br>Erin E. Valentine<br>e.valentine@chaffetzlindsey.com<br>1700 Broadway, 33rd Floor<br>New York, NY 10019<br>T: (212) 257-6960<br><br>*Attorneys for Defendants Six Sis AG, AKA Sis SegaInterSettle AG* |
| 77. | Arden International Capital Limited | 22-2362 | M. William Munno<br>SEWARD & KISSEL LLP<br>One Battery Park Plaza<br>New York, NY 10004<br>T: 212-574-1200<br>F: 212-480-8421<br>munno@sewkis.com<br><br>and<br><br>Michael B. Weitman<br>WESTERMAN BALL EDERER MILLER<br>  ZUCKER & SHARFSTEIN, LLP<br>1201 RXR Plaza<br>New York, NY 10104<br>T: 516-622-9200<br>mweitman@westermanllp.com<br><br>*Counsel for Arden International Capital Limited* |
| 78. | 1. VEGA Investment Managers f/k/a IXIS Private Capital Management ("IPCM") | 22-2278<br>22-2641 | Joseph Cioffi<br>H. Seiji Newman<br>Bruce M. Ginsberg<br>Adam M. Levy |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 2. CACEIS Bank EX IXIS IS | | Christine DeVito<br>**DAVIS+GILBERT LLP**<br>1675 Broadway<br>New York, NY 10019<br>T: (212) 468-4800<br>jcioffi@dglaw.com<br>hsnewman@dglaw.com<br>bginsberg@dglaw.com<br>alevy@dglaw.com<br>cdevito@dglaw.com<br><br>*Attorneys for VEGA Investment Managers f/k/a IXIS Private Capital Management ("IPCM")*<br><br>Cleary Gottlieb Steen & Hamilton LLP<br>Elizabeth Vicens<br>One Liberty Plaza<br>New York, New York 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CACEIS Bank EX IXIS IS* |
| 79. | Bordier & Cie | 22-2369<br>22-2642 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555 |

|   | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|   |   |   | jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for Bordier & Cie SCmA (sued as Border & Cie)* |
| 80. | Banque SYZ SA, as successor to Royal Bank of Canada (Suisse) | 22-2137<br>22-2514 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for Banque SYZ SA, as successor to Royal Bank of Canada (Suisse)* |
| 81. | Credit Suisse (Luxembourg) SA | 22-2235<br>22-2509 | William J. Sushon<br>Daniel S. Shamah<br>Kayla N. Haran<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>wsushon@omm.com<br>dshamah@omm.com kharan@omm.com<br><br>*Attorneys for Credit Suisse (Luxembourg) SA* |
| 82. | Banco Inversis SA | 22-2197<br>22-2654 | **DLA Piper LLP (US)**<br>Rachel Ehrlich Albanese<br>1251 Avenue of the Americas |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | New York, New York 10020-1104<br>Tel.: (212) 335-4500<br>Fax: (212) 335-4501<br>Rachel.Albanese@us.dlapiper.com<br><br>*Attorneys for Banco Inversis S.A.* |
| 83. | 1. Dexia Banque Internationale à Luxembourg, now known as Banque Internationale à Luxembourg SA<br><br>2. Candriam World Alternative, FKA Dexia World Alternative | 22-2170<br>22-2529 | Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 878-8000<br>Email: jeff.butler@cliffordchance.com<br><br>*Attorneys for Banque Internationale à Luxembourg SA*<br><br>**HUGHES HUBBARD & REED LLP**<br>Christopher K. Kiplok<br>chris.kiplok@hugheshubbard.com<br>Jeffrey S. Margolin<br>jeff.margolin@hugheshubbard.com<br>One Battery Park Plaza<br>New York, NY 10004<br>(212) 837-6000<br><br>*Counsel to Candriam World Alternative (F/K/A Dexia World Alternative)* |
| 84. | Dexia Private Bank (Switzerland), now known as Banque Internationale à Luxembourg (Suisse) SA | 22-2139<br>22-2522 | Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 878-8000 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Email:  jeff.butler@cliffordchance.com<br><br>*Attorneys for Banque Internationale à Luxembourg (Suisse) SA* |
| 85. | Commercial Bank of Kuwait | 22-2380<br>22-2521 | John A. Pintarelli<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone:  (212) 878-8000<br>Email:  john.pintarelli@pillsburylaw.com<br><br>*Attorneys for Commercial Bank of Kuwait* |
| 86. | Natixis S.A., FKA Natexis Banques Populaires | 22-2393 | Joseph Cioffi<br>H. Seiji Newman<br>Bruce M. Ginsberg<br>Adam M. Levy<br>Christine DeVito<br>**DAVIS+GILBERT LLP**<br>1675 Broadway<br>New York, NY 10019<br>T: (212) 468-4800<br>jcioffi@dglaw.com<br>hsnewman@dglaw.com<br>bginsberg@dglaw.com<br>alevy@dglaw.com<br>cdevito@dglaw.com<br><br>*Counsel for Defendants Natixis S.A., formerly known as Natexis Banques Populaires, and FCP-BE CAEN* |
| 87. | 1.  UBS Fund Services (Cayman) Limited | 22-2383<br>22-2366 | Marshall R. King<br>Gabriel Herrmann<br>GIBSON, DUNN & CRUTCHER LLP |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 2. The Legacy Fund<br><br>3. DGAM Alternative Strategy Fund II, SPC – Cell A<br><br>4. DGAM Alternative Strategy Fund II, SPC – Cell B<br><br>5. DGAM Alternative Strategy Fund L.P.<br><br>6. DGAM Asset Allocation Fund L.P. | | 200 Park Avenue<br>New York, New York 10166<br>Tel.: (212) 351-4000<br>mking@gibsondunn.com<br>gherrmann@gibsondunn.com<br><br>*Attorneys for UBS Fund Services (Cayman) Ltd, now known as MUFG Alternative Fund Services (Cayman) Limited*<br><br>Bruce S. Kaplan<br>Jeffrey C. Fourmaux<br>FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP<br>7 Times Square, New York, NY 10036-6516<br>Tel: (212) 833-1100<br>Fax: (212) 833-1250<br>bkaplan@fklaw.com<br>jfourmaux@fklaw.com<br><br>*Attorneys for DGAM Alternative Strategy Fund II, SPC-Cell A; DGAM Alternative Strategy Fund II, SPC-Cell B; DGAM Alternative Strategy Fund L.P.; DGAM Asset Allocation Fund L.P.* |
| 88. | Banco Nominees 2 (Guernsey) Limited, FKA Banco Nominees (IOM) Limited | 22-2416 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for Banco Nominees 2 (Guernsey) Limited, FKA Banco Nominees (IOM) Limited* |
| 89. | BNP Paribas Arbitrage SNC | 22-2158<br>22-2576 | Cleary Gottlieb Steen & Hamilton LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for BNP Paribas Arbitrage SNC* |
| 90. | BNP Paribas Private Bank & Trust Cayman Limited | 22-2284<br>22-2574 | Cleary Gottlieb Steen & Hamilton LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for BNP Paribas Private Bank and Trust Cayman Ltd. (n/k/a BNP Paribas Bank & Trust Cayman Limited)* |
| 91. | Citivic Nominees Limited | 22-2216<br>22-2545 | Cleary Gottlieb Steen & Hamilton LLP<br>Carmine D. Boccuzzi, Jr.<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>cboccuzzi@cgsh.com<br><br>Elsbeth Bennett<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>ebennett@cgsh.com<br><br>*Attorneys for Citivic Nominees Limited* |
| 92. | Bank Morgan Stanley AG | 22-2218<br>22-2583 | James H. Bicks<br>David Roth<br>WIGGIN AND DANA LLP<br>437 Madison Ave, 35th Floor<br>New York, New York 10022<br>Tel:  (212) 490-1700 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Fax: (212)551-2888<br>jbicks@wiggin.com<br>droth@wiggin.com<br><br>*Counsel for Defendant Bank Morgan Stanley AG* |
| 93. | 1. Credit Suisse Gibraltar Limited<br><br>2. Credit Suisse Nominees, AKA Credit Suisse Nominees (Guernsey) Limited A/C Gib | 22-2230<br>22-2573 | William J. Sushon<br>Daniel S. Shamah<br>Kayla N. Haran<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>wsushon@omm.com<br>dshamah@omm.com<br>kharan@omm.com<br><br>*Attorneys for Credit Suisse Gibraltar Limited and Credit Suisse Nominees A/K/A Credit Suisse Nominees (Guernsey) Limited A/C Gib* |
| 94. | Hansard Europe DAC (sued as Hansard Europe Ltd.) | 22-2237<br>22-2592 | James R. Warnot, Jr.<br>Patrick C. Ashby<br>Linklaters LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>james.warnot@linklaters.com<br>patrick.ashby@linklaters.com<br>(212) 903-9000<br><br>*Attorneys for Hansard Europe Ltd.* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 95. | BGL BNP Paribas S.A. (as successor-in-interest to BGL (FKA Fortis Banque Luxembourg (FKA Banque Générale du Luxembourg))) | 22-2236 22-2596 | Cleary Gottlieb Steen & Hamilton LLP Roger A. Cooper Ari D. MacKinnon Thomas S. Kessler One Liberty Plaza New York, NY 10006 T: 212-225-2000 F: 212-225-3999 racooper@cgsh.com amackinnon@cgsh.com tkessler@cgsh.com<br><br>*Attorneys for BGL BNP Paribas S.A. (f/k/a Banque Générale du Luxembourg (f/k/a FS/Fortis Banque Luxembourg))* |
| 96. | Bank Julius Baer & Co. Ltd. | 22-2354 22-2575 | MCKOOL SMITH, P.C. Eric B. Halper ehalper@mckoolsmith.com Hal M. Shimkoski hshimkoski@mckoolsmith.com One Manhattan West 395 9th Avenue, 50th Floor New York, NY 10001 T: (212) 402-9400 F: (212) 402-9444<br><br>*Attorneys for Bank Julius Baer & Co. Ltd.* |
| 97. | Credit Agricole (Suisse) SA | 22-2263 22-2579 | Cleary Gottlieb Steen & Hamilton LLP Elizabeth Vicens One Liberty Plaza New York, New York 10006 T: 212-225-2000 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CA Indosuez (Switzerland) SA f/k/a Credit Agricole (Suisse) SA a/k/a Banque du Credit Agricole (Suisse) SA* |
| 98. | 1. BP Alpha S.A., NKA BP Alpha (Agente De Valores S.A.)<br><br>2. Martin Lavarello<br><br>3. Nadine Pavolvsky | 22-2367<br>22-2586 | **MOSES & SINGER LLP**<br>Mark N. Parry<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>mparry@mosessinger.com<br><br>*Attorneys for BP Alpha S.A. NKA BP Alpha (Agente De Valores S.A.), Martin Lavarello and Nadine Pavolsky* |
| 99. | Schroder & Co. Bank AG, | 22-2240<br>22-2598 | ROPES & GRAY LLP<br>Andrew G. Devore<br>800 Boylston Street<br>Boston, MA 02199<br>Telephone: (617) 951-7000<br>Andrew.Devore@ropesgray.com<br><br>*Attorney for Schroder & Co. Bank AG* |
| 100. | UBS (Luxembourg) S,A., NKA UBS Europe SE, Luxembourg Branch | 22-2174<br>22-2572 | Marshall R. King<br>Gabriel Herrmann<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Tel.: (212) 351-4000<br>mking@gibsondunn.com<br>gherrmann@gibsondunn.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for UBS (Luxembourg) S.A., now known as UBS Europe SE, Luxembourg Branch* |
| 101. | FS/Swedclient/IAM | 22-2272 22-2590 | Katten Muchin Rosenman LLP Anthony L. Paccione Mark T. Ciani 50 Rockellefer Plaza New York, NY 10020 Anthony.paccione@katten.com Mark.ciani@katten.com Phone: 212-940-8800 *Attorneys for Swedbank, erroneously named as FS/Swedclient/IAM and Swedbank/IAM* |
| 102. | American Express Bank (London), FKA American Express Bank Ltd., NKA Standard Chartered Bank | 22-2276 22-2597 | Andrew J. Finn Sullivan & Cromwell LLP 125 Broad Street New York, NY 10004 T: (212) 558-4000 finna@sullcrom.com *Attorneys for American Express Bank (London), f/k/a American Express Bank Ltd., n/k/a Standard Chartered Bank* |
| 103. | Banque SCS Alliance SA n/k/a CBH Compagnie Bancaire Helvetique SA | 22-2280 22-2539 | John F. Zulack Lauren J. Pincus David A. Shaiman Allegaert Berger & Vogel LLP 111 Broadway, 20th Floor New York, NY 10006 T: 212-571-0550 F: 212-571-0555 jzulack@abv.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for CBH Compagnie Bancaire Helvetique SA (sued as Banque SCS Alliance SA n/k/a CBH Compagnie Bancaire Helvetique SA)* |
| 104. | Mirabaud & Cie SA, FKA Mirabaud & Cie, AKA Mirabaud & Cie Banquiers Prives) | 22-2429<br>22-2548 | Richard Levin<br>Carl Wedoff<br>Jenner & Block LLP<br>1155 Avenue of the Americas<br>New York NY 10036<br>(212) 891-1600<br>rlevin@jenner.com<br>cwedoff@jenner.com<br><br>*Attorneys for Mirabaud & Cie SA* |
| 105. | 1. BP Alpha S.A., NKA BP Alpha (Agente De Valores S.A.)<br><br>2. UBS Fund Services (Ireland) Ltd.<br><br>3. UBS Zurich | 22-2431<br>22-2552 | **MOSES & SINGER LLP**<br>Mark N. Parry<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>mparry@mosessinger.com<br><br>*Attorneys for BP Alpha S.A. NKA BP Alpha (Agente De Valores S.A.)*<br><br>Marshall R. King<br>Gabriel Herrmann<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Tel.: (212) 351-4000<br>mking@gibsondunn.com<br>gherrmann@gibsondunn.com<br><br>*Attorneys for UBS AG (improperly named as "UBS Zurich")*<br>*and UBS Fund Services (Ireland) Limited, now known as MUFG*<br>*Alternative Fund Services (Ireland) Limited* |
| 106. | Barclays Bank (Suisse) SA | 22-2342<br>22-2554 | HERBERT SMITH FREEHILLS NEW YORK LLP<br>Marc J. Gottridge<br>450 Lexington Avenue<br>New York, NY 10017<br>Tel. (917) 542-7600<br>marc.gottridge@hsf.com<br><br>*Counsel for Barclays Bank (Suisse) SA, Caixabank S.A., as*<br>*successor by merger to Barclays Bank S.A., sued as "Barclays*<br>*Bank SA Madrid", and Zedra Trust Company (Jersey) Limited*<br>*(f/k/a Barclays Private Bank and Trust Limited), sued as "Barclays*<br>*Private Bank & Trust (Channel Islands) Limited"* |
| 107. | 1. National Bank of Kuwait<br><br>2. NBK Banque (Suisse) S.A. | 22-2241<br>22-2556 | Richard A. Cirillo<br>Cirillo Law Office<br>246 East 33rd Street # 1<br>New York, NY 10016<br>T: +1 917-541-6778<br>E: richard@cirillo-law.com<br><br>*Attorney for National Bank of Kuwait and NBK Banque Privée*<br>*(Suisse) S.A.* |
| 108. | Clearstream Banking SA | 22-2252<br>22-2558 | JOSHUA DORCHAK<br>MORGAN, LEWIS & BOCKIUS LLP<br>101 Park Avenue |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | New York, New York 10178<br>(212) 309-6700<br><br>*Attorneys for Appellees Clearstream and Clearstream Banking SA* |
| 109. | 1. Arden Asset Management, Inc.<br><br>2. Arden Endowment Advisers, Ltd. | 22-2346 | M. William Munno<br>SEWARD & KISSEL LLP<br>One Battery Park Plaza<br>New York, NY 10004<br>T: 212-574-1200<br>F: 212-480-8421<br>munno@sewkis.com<br><br>and<br><br>Michael B. Weitman<br>WESTERMAN BALL EDERER MILLER<br>ZUCKER & SHARFSTEIN, LLP<br>1201 RXR Plaza<br>New York, NY 10104<br>T: 516-622-9200<br>mweitman@westermanllp.com<br><br>*Counsel for Arden Asset Management, Inc. and Arden Endowment Advisers, Ltd.* |
| 110. | Architas, FKA AXA Private Management | 22-2343<br>22-2559 | T. Carter White<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 768-6700<br>Facsimile: (212) 768-6800 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Email: carter.white@dentons.com<br><br>*Attorneys for Architas f/k/a AXA Private Management* |
| 111. | 1. Caliber Investments Ltd.<br><br>2. Melrose Investments Ltd | 22-2129<br>22-2551 | Jordan Stern<br>Zeb Landsman<br>Becker, Glynn, Muffly, Chassin & Hosinski LLP<br>299 Park Avenue, 16th Floor<br>New York, New York 10171<br>Telephone: (212) 888-3033<br>Facsimile: (212) 888-0255<br>jstern@beckerglynn.com<br>zlandsman@beckerglynn.com<br><br>*Counsel to Caliber Investments Ltd. and Melrose Investments Ltd* |
| 112. | KGI Asia Limited (successor- in-interest to Grand Cathay Securities (Hong Kong) Limited) | 22-2130<br>22-2450 | AKERMAN LLP<br>David W. Parham (admitted pro hac vice)<br>Laura Taveras (admission pending)<br>2001 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>Telephone: (214) 720-4300<br>Facsimile: (214) 981-9339<br>david.parham@akerman.com<br><br>*Counsel For Kgi Asia Limited As Successor In Interest To Defendant Grand Cathay Securities (Hong Kong) Limited* |
| 113. | Merrill Lynch International | 22-2266<br>22-2395 | Pamela A. Miller<br>O'MELVENY & MYERS LLP<br>Seven Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>E-mail: pmiller@omm.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorney for Merrill Lynch International* |
| 114. | Natixis S.A. (in its own capacity and as successor-in- interest to IXIS Corporate & Investment Bank) | 22-2131 22-2479 | Joseph Cioffi<br>H. Seiji Newman<br>Bruce M. Ginsberg<br>Adam M. Levy<br>Christine DeVito<br>**DAVIS+GILBERT LLP**<br>1675 Broadway<br>New York, NY 10019<br>T: (212) 468-4800<br>jcioffi@dglaw.com<br>hsnewman@dglaw.com<br>bginsberg@dglaw.com<br>alevy@dglaw.com<br>cdevito@dglaw.com<br><br>*Counsel for Natixis S.A. (in its own capacity and as successor in-interest to IXIS Corporate & Investment Bank)* |
| 115. | Bank Hapoalim B.M. | 22-2462 22-2484 | Scott S. Balber<br>Jonathan C. Cross<br>Herbert Smith Freehills New York LLP<br>450 Lexington Ave., 14th Floor<br>New York, NY 10017<br>Tel:  (917) 542-7600<br>scott.balber@hsf.com<br>jonathan.cross@hsf.com<br><br>*Attorneys for Bank Hapoalim B.M.* |
| 116. | Barfield Nominees Limited | 22-2585 22-2491 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for Barfield Nominees Ltd.* |
| 117. | Korea Exchange Bank | 22-2607<br>22-2499 | Richard A. Cirillo<br>Cirillo Law Office<br>246 East 33rd Street # 1<br>New York, NY 10016<br>T: +1 917-541-6778<br>E: richard@cirillo-law.com<br><br>*Attorney for Korea Exchange Bank* |
| 118. | Deutsche Bank Nominees (Jersey) Limited | 22-2145<br>22-2507 | **MOSES & SINGER LLP**<br>Mark N. Parry<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>mparry@mosessinger.com<br><br>*Attorneys for Deutsche Bank Nominees (Jersey) Limited* |
| 119. | ING Luxembourg SA (sued as FS/ING Lux) | 22-2148<br>22-2255 | Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone:  (212) 878-8000<br>Email:  jeff.butler@cliffordchance.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for ING Luxembourg SA* |
| 120. | SG Private Banking (LuganoSvizzera) SA, a/k/a SG Private Banking Suisse SA | 22-2162 22-2261 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>AND<br><br>Steven Wolowitz<br>Christopher J. Houpt<br>Bradley A. Cohen<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br>bacohen@mayerbrown.com<br><br>*Attorneys for Société Générale Private Banking (Suisse) S.A. (f/k/a SG Private Banking Suisse S.A.)as successor in interest to Société Générale Private Banking (Lugano-Svizzera) S.A. (sued as SG Private Banking (LuganoSvizzera) SA, AKA SG Private Banking (Suisse) SA)* |

|   | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 121. | Global Fund Porvenir | 22-2413 | James R. Warnot, Jr.<br>Patrick C. Ashby<br>Linklaters LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>james.warnot@linklaters.com<br>patrick.ashby@linklaters.com<br>(212) 903-9000<br><br>*Attorneys for Global Fund Porvenir* |
| 122. | Bipielle Bank (Suisse) in Liquidation (sued as Bipielle Banke (Suisse)) | 22-2173<br>22-2262 | James R. Warnot, Jr.<br>Patrick C. Ashby<br>Linklaters LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>james.warnot@linklaters.com<br>patrick.ashby@linklaters.com<br>(212) 903-9000<br><br>*Attorneys for Bipielle Banke (Suisse)* |
| 123. | Banque Degroof Bruxelles a/k/a Banque Degroof SA Bruxelles | 22-2167<br>22-2356 | Gary J. Mennitt<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10038<br>T: 212-698-3831<br>F: 212-314-0011<br>gary.mennitt@dechert.com<br><br>*Attorneys for Banque Degroof Bruxelles a/k/a Banque Degroof SA Bruxelles* |
| 124. | Banc of America Securities LLC | 22-2421 | Pamela A. Miller |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | O'MELVENY & MYERS LLP<br>Seven Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>E-mail: pmiller@omm.com<br><br>*Attorney for Banc of America Securities LLC* |
| 125. | Bureau of Labor Insurance | 22-2195<br>22-2363 | Jennifer Fiorica Delgado<br>1251 Avenue of the Americas<br>New York, NY 10022<br>T: 646-414-6962<br>F: 973-597-6313<br>jdelgado@lowenstein.com<br><br>*Attorneys for Bureau of Labor Insurance* |
| 126. | Credit Industriel et Commercial Singapore Branch | 22-2142<br>22-2373 | DEBEVOISE & PLIMPTON LLP<br>Erica S. Weisgerber<br>(eweisgerber@debevoise.com)<br>Shannon R. Selden<br>(srselden@debevoise.com)<br>919 Third Avenue<br>New York, New York 10022<br>(212) 909-6000<br><br>*Attorneys for Credit Industriel et Commercial Singapore Branch* |
| 127. | Multi-Strategy Fund Limited | 22-2161 | Robert J. Lack<br>Jeffrey C. Fourmaux<br>FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP<br>7 Times Square, New York, NY 10036-6516<br>Tel: (212) 833-1100<br>Fax: (212) 833-1250 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | rlack@fklaw.com<br>jfourmaux@fklaw.com<br><br>*Attorneys for Multi-Strategy Fund Ltd.* |
| 128. | Cathay Life Insurance Co. Ltd. | 22-2164<br>22-2341 | AKERMAN LLP<br>David W. Parham (admitted pro hac vice)<br>Laura Taveras (admission pending)<br>2001 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>Telephone:   (214) 720-4300<br>Facsimile:    (214) 981-9339<br>david.parham@akerman.com<br><br>*Counsel For Cathay Life Insurance Co., Ltd.* |
| 129. | NYROY, Royal Bank of Canada | 22-2175<br>22-2344 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for Royal Bank of Canada, erroneously identified as NYROY, Royal Bank of Canada* |
| 130. | BNP Paribas Securities Nominees Ltd., AKA Harrier Holdings Limited | 22-2186<br>22-2399 | Cleary Gottlieb Steen & Hamilton LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza<br>New York, NY 10006 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for BNP Paribas Securities Nominees Ltd. (a/k/a Harrier Holdings Limited)* |
| 131. | Parson Finance Panama SA | 22-2176 | Douglas A. Kellner<br>Eugene F. Getty<br>Kellner Herlihy Getty & Friedman LLP<br>470 Park Avenue South — 7th Floor<br>New York NY 10016-6951<br>Telephone: (212) 889-2121<br>Email: dak@khgflaw.com<br><br>*Attorneys for Parson Finance Panama SA* |
| 132. | Rahn & Bodmer Banquiers, NKA Rahn+Bodmer Co. | 22-2177<br>22-2348 | George W. Shuster, Jr.<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>7 World Trade Center<br>250 Greenwich Street<br>New York, New York 10007<br>Telephone: (212) 230-8800<br>Facsimile: (212) 230-8888<br>Email: george.shuster@wilmerhale.com<br><br>*Counsel for Defendant-Appellee Rahn + Bodmer Co.* |
| 133. | Royal Bank of Canada Singapore Branch | 22-2134<br>22-2353 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | 50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for Royal Bank of Canada Singapore Branch* |
| 134. | 1. AAAm, S.A.<br><br>2. Societe Generale Bank & Trust (Luxembourg) | 22-2152<br>22-2386 | M. William Munno<br>SEWARD & KISSEL LLP<br>One Battery Park Plaza<br>New York, NY 10004<br>T: 212-574-1200<br>F: 212-480-8421<br>munno@sewkis.com<br><br>and<br><br>Michael B. Weitman<br>WESTERMAN BALL EDERER MILLER<br>  ZUCKER & SHARFSTEIN, LLP<br>1201 RXR Plaza<br>New York, NY 10104<br>T: 516-622-9200<br>mweitman@westermanllp.com<br><br>*Counsel for AAAm, S.A.*<br><br>John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | 111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>AND<br><br>Steven Wolowitz<br>Christopher J. Houpt<br>Bradley A. Cohen<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br>bacohen@mayerbrown.com<br><br>*Attorneys for Société Générale Luxembourg (sued as Societe Generale Bank & Trust (Luxembourg)* |
| 135. | Banque de Reescompte et de Placement, AKA BAREP | 22-2157<br>22-2390 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>AND<br><br>Steven Wolowitz<br>Christopher J. Houpt<br>Bradley A. Cohen<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br>bacohen@mayerbrown.com<br><br>*Attorneys for Banque de Reescompte et de Placement, AKA BAREP* |
| 136. | Swedbank | 22-2617<br>22-2434 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for Swedbank* |
| 137. | Itaú Bank & Trust Bahamas Ltd. (sued as BIE Bank & Trust Bahamas Ltd.) | 22-2333<br>22-2436 | RANDALL MARTIN<br>JEFFREY J. RESETARITS |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 848-4000<br><br>*Attorneys for Appellee Itaú Bank & Trust Bahamas Ltd.* |
| 138. | 1. BNY AIS Nominees Ltd.<br><br>2. Crèdit Andorrà / Crediinvest (not a juridical entity) | 22-2355<br>22-2442 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for BNY AIS Nominees Ltd.*<br><br>Richard Levin<br>Carl Wedoff<br>Jenner & Block LLP<br>1155 Avenue of the Americas<br>New York NY 10036<br>(212) 891-1600 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | rlevin@jenner.com<br>cwedoff@jenner.com<br><br>*Attorneys for Crèdit Andorrà / Crediinvest* |
| 139. | 1. All Funds Bank<br><br>2. NMAS1 Gestion SGIIC SA | 22-2425<br>22-2424 | **DLA Piper LLP (US)**<br>Rachel Ehrlich Albanese<br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Tel.: (212) 335-4500<br>Fax: (212) 335-4501<br>Rachel.Albanese@us.dlapiper.com<br><br>*Attorneys for NMAS1 Gestion SGIIC S.A.; AllFunds Bank* |
| 140. | Judith Cherwinka, AKA Judith Cherwinka IRA, et al. | 22-2193<br>22-2459 | NORRIS McLAUGHLIN, P.A.<br>Melissa A. Pena<br>7 Times Square, 21st Floor<br>New York, New York 10036<br>(212) 808-0700<br>(212) 808-0844 (fax)<br><br>*Attorneys for Judith Cherwinka and Beneficial Owners of Accounts Held in the Name of Judith Cherwinka a/k/a Judith Cherwinka IRA 1-1000* |
| 141. | Stanhope Capital | 22-2190<br>22-2466 | Emily J. Mathieu<br>THOMPSON HINE LLP<br>335 Madison Avenue<br>12th Floor<br>New York, NY 10017<br>(212) 344-5680<br>emily.mathieu@thompsonhine.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Stanhope Capital (Switzerland) SA, sued herein as Stanhope Capital* |
| 142. | KWI | 22-2214<br>22-2604 | Frost Brown Todd LLP<br>Douglas L. Lutz<br>Erin P. Severini<br>Great American Tower<br>301 East Fourth Street, Suite 3300<br>Cincinnati, OH 45202<br>(513) 651-6800<br>dlutz@fbtlaw.com<br>eseverini@fbtlaw.com<br><br>*Attorneys for KWI* |
| 143. | Kefong Lee | 22-2213<br>22-2613 | Martin Mushkin<br>Law Office of Martin Mushkin LC<br>403 Stanwich Rd<br>Greenwich CT 06830<br>T. 203-252-2357<br>F 203-547-7540<br>mmushkin@mushkinlaw.com<br><br>*Attorneys for Kefong Lee* |
| 144. | Banque et Caisse d'Epargne de l'Etat, Luxembourg | 22-2222<br>22-2619 | Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 878-8000<br>Email: jeff.butler@cliffordchance.com<br><br>*Attorneys for Banque et Caisse D'Epargne de L'Etat Luxembourg* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 145. | Eduardo Fernandez de Valderrama Murillo | 22-2250 22-2626 | LEECH TISHMAN ROBINSON BROG, PLLC Steven B. Eichel seichel@leechtishman.com Daniel E. Kelly dkelly@leechtishman.com 875 Third Avenue, 9th Floor New York, New York 10022 T: (212) 603-6300 F: (212) 956-2164 *Attorneys for Eduardo Fernandez de Valderrama Murillo* |
| 146. | FS/BBVA Zurich/Shares | 22-2205 22-2470 | Heather Lamberg WINSTON & STRAWN LLP 1901 L Street, NW Washington, DC 20036 Telephone: (202) 282-5274 hlamberg@winston.com *Attorneys for BBVA (Suiza) SA (sued as FS/BBVA Zurich/Shares)* |
| 147. | Credit Suisse AG Nassau Branch Wealth Management | 22-2294 22-2492 | William J. Sushon Daniel S. Shamah Kayla N. Haran O'MELVENY & MYERS LLP 7 Times Square New York, New York 10036 Telephone: (212) 326-2000 Facsimile: (212) 326-2061 wsushon@omm.com dshamah@omm.com kharan@omm.com |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | *Attorneys for Credit Suisse AG Nassau Branch Wealth Management* |
| 148. | 1. BNY Mellon International Ltd., FKA PFPC Bank Ltd., PFPC International Bank Limited<br><br>2. PNC International Bank Ltd. | 22-2468<br>22-2496 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for BNY Mellon International Ltd., FKA PFPC Bank Ltd., PFPC International Bank Limited and PNC International Bank Ltd.* |
| 149. | Israel Discount Bank, Limited, Tel Aviv | 22-2299<br>22-2612 | Scott B. Schreiber<br>Rosa J. Evergreen<br>Daniel R. Bernstein<br>Arnold & Porter Kaye Scholer LLP |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | 601 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br>(202) 942-5000<br>-and-<br>Kent A. Yalowitz<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>(212) 836-8000<br><br>*Attorneys for Appellee Israel Discount Bank, Limited, Tel Aviv* |
| 150. | Bank J. Safra Sarasin AG, FKA Bank Sarasin & Cie | 22-2455 | Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Bank J. Safra Sarasin AG, f/k/a Bank Sarasin & Cie* |
| 151. | Pleasant T. Rowland Foundation Inc. | 22-2305<br>22-2565 | Joshua A. Dunn<br>Vedder Price PC<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>T: +1 212 407 7700<br>F: +1 212 407 7799<br>jdunn@vedderprice.com<br><br>*Attorneys for Pleasant T. Rowland Foundation Inc.* |
| 152. | 1. ABN AMRO Bank N.V., FKA Fortis Bank Nederland N.V. | 22-2244<br>22-2555 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 2. IDF Global Fund | | 1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for Fortis Global Custody Services N.V. n/k/a ABN AMRO Global Custody Services N.V. and Fortis Bank (Nederland) N.V. n/k/a ABN AMRO Bank N.V*<br><br>John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for IDF Global Fund* |
| 153. | Intesa Sanpaolo Bank Luxembourg SA, FKA Société Européenne de Banque S.A. | 22-2246<br>22-2570 | DAVIS POLK & WARDWELL LLP<br>Elliot Moskowitz<br>Andrew Ditchfield<br>450 Lexington Avenue<br>New York, New York 10017<br>Tel: (212) 450-4000<br>Fax: (212) 701-5800 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | elliot.moskowitz@davispolk.com<br>andrew.ditchfield@davispolk.com<br><br>*Attorneys for Intesa Sanpaolo Bank Luxembourg SA (FKA Société Européenne de Banque S.A.)* |
| 154. | Woori Bank | 22-2473<br>22-2443 | Jacob M Kaplan<br>L Andrew S. Riccio<br>452 Fifth Avenue<br>New York, NY 10018<br>United States<br>T: 212-626-4100<br>F: 212-310-1896<br>jacob.kaplan@bakermckenzie.com<br>andrew.riccio@bakermckenzie.com<br><br>*Attorneys for Woori Bank* |
| 155. | Fortis Bank SA/NV, NKA BNP Paribas Fortis | 22-2113<br>23-695 | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br>Roger A. Cooper<br>Ari D. MacKinnon<br>Thomas S. Kessler<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>racooper@cgsh.com<br>amackinnon@cgsh.com<br>tkessler@cgsh.com<br><br>*Attorneys for Fortis Bank SA/NV (n/k/a BNP Paribas Fortis)* |
| 156. | NBP Titres | 22-2253<br>22-2446 | Joseph Cioffi<br>H. Seiji Newman |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | Bruce M. Ginsberg<br>Adam M. Levy<br>Christine DeVito<br>**DAVIS+GILBERT LLP**<br>1675 Broadway<br>New York, NY 10019<br>T: (212) 468-4800<br>jcioffi@dglaw.com<br>hsnewman@dglaw.com<br>bginsberg@dglaw.com<br>alevy@dglaw.com<br>cdevito@dglaw.com<br><br>*Counsel for Defendant Natixis S.A., of which EuroTitres (incorrectly named in the complaint as "NBP Titres") is a division* |
| 157. | Abu Dhabi Investment Authority | 22-2257 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Marc L. Greenwald<br>Eric M. Kay<br>Daniel M. Kelly<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Tel: 212-849-7000<br>Fax: 212-849-7100<br>marcgreenwald@quinnemanuel.com<br>erickay@quinnemanuel.com<br>danielkelly@quinnemanuel.com<br><br>*Attorneys for Abu Dhabi Investment Authority* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 158. | 1. Bank Vontobel AG<br><br>2. Banque Vontobel Geneve SA, NKA Bank Vontobel AG | 22-2260<br>22-2451 | WUERSCH & GERING LLP<br>Gregory F. Hauser<br>Joshua A. Dachs<br>100 Wall Street, 10th Floor<br>New York, New York 10005<br>T: 212-509-5050<br>F: 212-509-9559<br>gregory.hauser@wg-law.com<br>joshua.dachs@wg-law.com<br><br>*Attorneys for Bank Vontobel AG, also sued as Banque Vontobel Geneve SA* |
| 159. | 1. RBC Dominion Securities, Inc.<br><br>2. Royal Bank of Canada, AKA RBC Capital Markets Corp. | 22-2135<br>22-2456 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for RBC Dominion Securities and Royal Bank of Canada a/k/a RBC Capital Markets Corporation* |
| 160. | 1. Lion Global Investors f/k/a/ Lion Fairfield Capital Management<br><br>2. GE Brunei Life Ins FD - Lion Capital Balanced (330008)<br><br>3. GE Life | 22-2143 | PROSKAUER ROSE LLP<br>Ehud Barak<br>Russell T. Gorkin<br>Eleven Times Square<br>New York, New York 10036-8299<br>Telephone: (212) 969-3000<br>Facsimile: (212) 969-2900<br>ebarak@proskauer.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 4. GE Life Sharholders FD - Lion Capital FI (330007)<br><br>5. GE Trust Pte Ltd. - Lion Capital FI (330012)<br><br>6. Life Ins Fund - Par (FI) - Lion Capital - SCND<br><br>7. Shareholders Fund - SCMS<br><br>8. GE Life S Pore LI INV FD PAR SLAM (FI)<br><br>9. SCND Life INS Fund PAR FI SLAM<br><br>10. GE Life S PORE LI IN FD PAR SLAM FL<br><br>11. GE Brunei Life INS FD SLAM Balanced<br><br>12. GE Life Sharholders FD SLAM FL | | rgorkin@proskauer.com<br><br>*Attorneys for Lion Global Investors f/k/a/ Lion Fairfield Capital Management; GE Brunei Life Ins FD - Lion Capital Balanced (330008); GE Life; GE Life Sharholders FD - Lion Capital FI (330007); GE Trust Pte Ltd. - Lion Capital FI (330012); Life Ins Fund - Par (FI) - Lion Capital – SCND; Shareholders Fund – SCMS; GE Life S Pore LI INV FD PAR SLAM (FI); SCND Life INS Fund PAR FI SLAM; GE Life S PORE LI IN FD PAR SLAM FL; GE Brunei Life INS FD SLAM Balanced; GE Life Sharholders FD SLAM FL* |
| 161. | 1. Fortis Bank (Nederland) N.V., NKA ABN AMRO Bank N.V.<br><br>2. Fortis Global Custody Services N.V., NKA ABN AMRO Global Custody Services N.V. | 22-2146<br>22-2458 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864 |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for Fortis Global Custody Services N.V. n/k/a ABN AMRO Global Custody Services  N.V. and Fortis Bank (Nederland) N.V. n/k/a ABN AMRO Bank N.V* |
| 162. | Deutsche Bank (Suisse) SA as Successor to Bank Sal. Oppenheim Jr. & Cie (Schweiz) AG | 22-2153<br>22-2460 | **MOSES & SINGER LLP**<br>Mark N. Parry<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>mparry@mosessinger.com<br><br>*Attorneys for Deutsche Bank (Suisse) SA as Successor to Bank Sal. Oppenheim Jr. & Cie (Schweiz) AG* |
| 163. | Avalon Absolute Return Funds PLC | 22-2165 | Gary J. Mennitt<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10038<br>T: 212-698-3831<br>F: 212-314-0011<br>gary.mennitt@dechert.com<br><br>*Attorneys for Avalon Absolute Funds PLC* |
| 164. | Deltec Bank & Trust Ltd. | 22-2108 | Howard R. Hawkins, Jr.<br>Joshua P. Arnold<br>Cadwalader, Wickersham & Taft LLP<br>200 Liberty Street<br>New York, New York 10281<br>howard.hawkins@cwt.com<br>joshua.arnold@cwt.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Counsel for Defendant-Appellee Deltec Bank & Trust Ltd.* |
| 165. | 1. KAS BANK N.V. (sued as Kas Bank)<br><br>2. KAS Depositary Trust Company, AKA KAS BANK Effectenbewaarbedrijf N.V. (sued as KAS Depositary Trust Co.) | 22-2109<br>22-2474 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for KAS BANK N.V. (sued as Kas Bank) and KAS Depositary Trust Company a/k/a KAS BANK Effectenbewaarbedrijf N.V. (sued as KAS Depositary Trust Co.)* |
| 166. | Simgest SpA | 22-2114 | Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Simgest SpA* |
| 167. | Rothschild Trust (Schweiz) AG, now known as Sequent (Schweiz) AG | 22-2461 | Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone: (212) 878-8000<br>Email: jeff.butler@cliffordchance.com<br><br>*Attorneys for Sequent (Schweiz) AG* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 168. | Andorra Banc Agricol Reig S.A. | 22-2120 | **DLA Piper LLP (US)**<br>Rachel Ehrlich Albanese<br>1251 Avenue of the Americas<br>New York, New York 10020-1104<br>Tel.: (212) 335-4500<br>Fax: (212) 335-4501<br>Rachel.Albanese@us.dlapiper.com<br><br>*Attorneys for Andorra Banc Agricol Reig S.A.* |
| 169. | Credit Suisse Nominees (Guernsey) Limited | 22-2123<br>22-2481 | William J. Sushon<br>Daniel S. Shamah<br>Kayla N. Haran<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>wsushon@omm.com<br>dshamah@omm.com<br>kharan@omm.com<br><br>*Attorneys for Credit Suisse Nominees (Guernsey) Limited* |
| 170. | 1. Oval Alpha Palmares<br><br>2. Palmares Europlus<br><br>3. Societe Generale Bank & Trust S.A. (Luxembourg)<br><br>4. UMR | 22-2147 | BRIAN J. BUTLER<br>SARA C. TEMES<br>BOND, SCHOENECK & KING, PLLC<br>One Lincoln Center<br>110 West Fayette Street<br>Syracuse, New York 13202<br>(315) 218-8000<br><br>*Attorneys for Appellees Oval Alpha* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Palmares, Palmares Europlus and UMR* |
| | | | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com |
| | | | AND |
| | | | Steven Wolowitz<br>Christopher J. Houpt<br>Bradley A. Cohen<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, NY 10020<br>T: 212-506-2500<br>swolowitz@mayerbrown.com<br>choupt@mayerbrown.com<br>bacohen@mayerbrown.com |
| | | | *Attorneys for Société Générale Luxembourg (sued as Societe Generale Bank & Trust S.A. (Luxembourg)* |
| 171. | Citigroup Global Markets Limited | 22-2122 | Cleary Gottlieb Steen & Hamilton LLP |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | 23-697 | Carmine D. Boccuzzi, Jr.<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>cboccuzzi@cgsh.com<br><br>Elsbeth Bennett<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>ebennett@cgsh.com<br><br>*Attorneys for Citigroup Global Markets Limited* |
| 172. | Fullerton Capital PTE Ltd. | 22-2163 | Scott B. Schreiber<br>Rosa J. Evergreen<br>Daniel R. Bernstein<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br>(202) 942-5000<br><br>-and-<br><br>Kent A. Yalowitz<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>(212) 836-8000 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Appellee Fullerton Capital PTE, Ltd.* |
| 173. | BankMed (Suisse) S.A. | 22-2169<br>22-2515 | Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone:  (212) 878-8000<br>Email:  jeff.butler@cliffordchance.com<br><br>*Attorneys for BankMed (Suisse) SA* |
| 174. | 1.  CPR Online<br><br>2.  Credit Agricole Titres | 22-2392<br>22-2504 | Cleary Gottlieb Steen & Hamilton LLP<br>Elizabeth Vicens<br>One Liberty Plaza<br>New York, New York 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CPR Online and Credit Agricole Titres* |
| 175. | 1.  ABN AMRO Bank N.V., FKA Fortis Bank (Nederland) N.V.<br><br>2.  Sempervirens Capital Management Limited Class E-F Fund | 22-2121 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for ABN AMRO Bank N.V. f/k/a Fortis Bank (Nederland) N.V.* |
| 176. | Banca Carige SPA | 22-2126 | David J. Mark |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | 22-2508 | KASOWITZ BENSON TORRES LLP<br>1633 Broadway<br>New York, New York 10019<br>(212) 506-1700<br><br>*Attorneys for Appellee Banca Carige S.p.A* |
| 177. | Banco Itaú International, FKA Banco Itaú Europa International | 22-2138<br>22-2520 | RANDALL MARTIN<br>JEFFREY J. RESETARITS<br>SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 848-4000<br><br>*Attorneys for Appellee Banco Itaú International (FKA Bank Boston International Florida and Banco Itaú Europa International)* |
| 178. | Investec Bank (Switzerland) AG | 22-2149<br>22-2549 | Emily J. Mathieu<br>THOMPSON HINE LLP<br>335 Madison Avenue<br>12th Floor<br>New York, NY 10017<br>(212) 344-5680<br>emily.mathieu@thompsonhine.com<br><br>*Attorneys for Investec Bank (Switzerland) AG* |
| 179. | Credit Suisse Nassau Branch Wealth Management, AKA Credit Suisse Wealth Management Limited | 22-2156<br>22-2538 | William J. Sushon<br>Daniel S. Shamah<br>Kayla N. Haran<br>O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Facsimile: (212) 326-2061<br>wsushon@omm.com<br>dshamah@omm.com<br>kharan@omm.com<br><br>*Attorneys for Credit Suisse Nassau Branch Wealth Management, AKA Credit Suisse Wealth Management Limited* |
| 180. | HSBC Seoul Branch, Ltd. | 22-2394<br>22-2541 | Richard A. Cirillo<br>Cirillo Law Office<br>246 East 33rd Street # 1<br>New York, NY 10016<br>T: +1 917-541-6778<br>E: richard@cirillo-law.com<br><br>*Attorney for HSBC Seoul Branch* |
| 181. | 1. Tayleigh Trust Company Limited<br><br>2. The Reserve Trust (Tayleigh or Samantha Sackler 1996) | 22-2128 | Scott S. Balber<br>Jonathan C. Cross<br>Herbert Smith Freehills New York LLP<br>450 Lexington Ave., 14th Floor<br>New York, NY 10017<br>Tel: (917) 542-7600<br>scott.balber@hsf.com<br>jonathan.cross@hsf.com<br><br>*Attorneys for Tayleigh Trust Company Limited and The Reserve Trust (Tayleigh or Samantha Sackler 1996)* |
| 182. | Rothschild & Cie Banque Paris | 22-2445 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for Rothschild & Co. Asset Management Europe (f/k/a Rothschild & Cie Gestion), management company of the Elite fund (sued as Rothschild & Cie Banque Paris)* |
| 183. | RBC Investor Services España, S.A., NKA Bancoval S.A. | 22-2365<br>22-2593 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for RBC Investor Services España (now known as Bancoval S.A.), named herein as RBC Dexia Investor Services España S.A.* |
| 184. | 1. Millennium Multi- Strategy Fund<br><br>2. SEI Investments Trustee and Custodial Services (Ireland) Ltd. Nominee A/C 1 | 22-2418<br>22-2571 | Barry Z. Bazian<br>GOODWIN PROCTER LLP<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Phone: (212) 813-8800<br>Fax: (212) 355-3333<br>E-Mail: BBazian@goodwinlaw.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for Millennium Multi-Strategy Fund and SEI Investments -Depositary and Custodial Services (Ireland) Limited (f/k/a SEI Investments Trustee and Custodial Services (Ireland) Ltd.)* |
| 185. | Bank of Ireland Nominees Limited, NKA Northern Trust Nominees (Ireland) Limited | 22-2196 22-2536 | Katten Muchin Rosenman LLP Anthony L. Paccione Mark T. Ciani 50 Rockellefer Plaza New York, NY 10020 Anthony.paccione@katten.com Mark.ciani@katten.com Phone: 212-940-8800 <br><br> *Attorneys for Bank of Ireland Nominees Limited, n/k/a Northern Trust Nominees (Ireland) Limited* |
| 186. | BRED Banque Populaire | 22-2381 22-2595 | Andrew P. Propps Sidley Austin LLP 787 Seventh Avenue New York, NY 10019 T: (212) 839-5300 F: (212) 839-5559 apropps@sidley.com <br><br> *Attorney for BRED Banque Populaire* |
| 187. | KAS Depository Trust Company, AKA KAS BANK Effectenbewaarbedrijf N.V. (sued as KASBANK Depository Trust Company Conc Theta Multistar Low Volatility Fund a/k/a KDTC Conc Theta Multistar Low Volatility Fund) | 22-2503 | **LATHAM & WATKINS LLP** Christopher R. Harris Thomas J. Giblin 1271 Avenue of the Americas New York, NY 10020 Telephone: (212) 906-1200 Facsimile: (212) 751-4864 Email: christopher.harris@lw.com |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | Email: thomas.giblin@lw.com<br><br>*Attorneys for KAS Depository Trust Company a/k/a KAS BANK Effectenbewaarbedrijf N.V. (sued as KASBANK Depository Trust Company Conc Theta Multistar Low Volatility Fund a/k/a KDTC Conc Theta Multistar Low Volatility Fund)* |
| 188. | 1. Chelsea Trust Company Limited<br><br>2. Karen Lefcourt Trust | 22-2389 | Scott S. Balber<br>Jonathan C. Cross<br>Herbert Smith Freehills New York LLP<br>450 Lexington Ave., 14th Floor<br>New York, NY 10017<br>Tel: (917) 542-7600<br>scott.balber@hsf.com<br>jonathan.cross@hsf.com<br><br>*Attorneys for Chelsea Trust Company Limited and Karen Lefcourt Trust* |
| 189. | Banca Cesare Ponti SPA | 22-2435<br>22-2589 | David J. Mark<br>KASOWITZ BENSON TORRES LLP<br>1633 Broadway<br>New York, New York 10019<br>(212) 506-1700<br><br>*Attorneys for Appellee Banca Cesare Ponti S.p.A* |
| 190. | Citibank Korea Inc. | 22-2398<br>22-2582 | Richard A. Cirillo<br>Cirillo Law Office<br>246 East 33rd Street # 1<br>New York, NY 10016<br>T: +1 917-541-6778<br>E: richard@cirillo-law.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorney for Citibank Korea Inc.* |
| 191. | Centre College | 22-2179 | Andrew P. Propps<br>Sidley Austin LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>T: (212) 839-5300<br>F: (212) 839-5559<br>apropps@sidley.com<br><br>*Attorney for Centre College* |
| 192. | Bank Hapoalim B.M., London | 22-2385<br>22-2524 | Scott S. Balber<br>Jonathan C. Cross<br>Herbert Smith Freehills New York LLP<br>450 Lexington Ave., 14th Floor<br>New York, NY 10017<br>Tel:  (917) 542-7600<br>scott.balber@hsf.com<br>jonathan.cross@hsf.com<br><br>*Attorneys for Bank Hapoalim B.M., London* |
| 193. | Gates Charitable Trust | 22-2227<br>22-2525 | Frejka PLLC<br>Elise S. Frejka<br>415 East 52nd Street \| Suite3<br>New York, New York 10022<br>Ph: 212-641-0800<br>Fax: 212-6419-0820<br><br>*Attorneys for Gates Charitable Trust* |
| 194. | Portobelo Advisors Inc. | 22-2180<br>22-2526 | **BAST AMRON LLP**<br>Jeffrey P. Bast, Esq.<br>Jaime B. Leggett, Esq. |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | One Southeast Third Avenue, Suite 2410 Miami, FL 33131 Telephone: 305.379.7904 Facsimile: 786.206.8740 Email: jbast@bastamron.com Email: jleggett@bastamron.com *Attorneys for Portobelo Advisors Inc.* |
| 195. | 1. Banque Degroof Petercam Luxembourg S.A. 2. Fidessa Alpha Fund | 22-2223 22-2518 | Gary J. Mennitt Dechert LLP 1095 Avenue of the Americas New York, New York 10038 T: 212-698-3831 F: 212-314-0011 gary.mennitt@dechert.com *Attorneys for Banque Degroof Petercam Luxembourg S.A. and Fidessa Alpha Fund* |
| 196. | Banca Popolare dell'Alto Adige S.p.A. | 22-2374 22-2645 | Robert Sidorsky Russo PLLC 350 Fifth Avenue Suite 7230 New York, New York 10118 Tel.: (212) 363-2000 Fax: (347) 507-2378 rsidorsky@russopllc.com *Attorneys for Banca Popolare dell'Alto Adige S.p.A., formerly known as Banca Popolare dell'Alto Adige Soc. coop. pa.* |
| 197. | Clarks Fork Foundation | 22-2117 | Joshua A. Dunn |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | 22-2643 | Vedder Price PC<br>1633 Broadway, 31st Floor<br>New York, New York 10019<br>T: +1 212 407 7700<br>F: +1 212 407 7799<br>jdunn@vedderprice.com<br><br>*Attorneys for Clarks Fork Foundation* |
| 198. | Hua Nan Commercial Bank, Ltd. (incorrectly sued as Hua Nan Commercial Bank) | 22-2411<br>22-2498 | Benjamin A. Fleming<br>Hogan Lovells US LLP<br>390 Madison Avenue<br>New York, New York 10017<br>(212) 918-3000<br><br>*Attorneys for Appellee Hua Nan Commercial Bank, Ltd. (incorrectly sued as Hua Nan Commercial Bank)* |
| 199. | Kiangsu Chekiang and Shanghai Residents (H.K.) Association | 22-2202 | Dwight Yellen<br>CHIDATMA LEX GROUP<br>205 Hudson Street -7th Floor<br>New York, New York, 10013<br>212.903-4546<br><br>*Attorneys for Defendants Kiangsu Chekiang and Shanghai Residents (H.K.) Association* |
| 200. | Banque Baring Brothers Sturdza SA | 22-2144<br>22-2495 | Scott B. Schreiber<br>Rosa J. Evergreen<br>Daniel R. Bernstein<br>Arnold & Porter Kaye Scholer LLP<br>601 Massachusetts Avenue, NW<br>Washington, D.C. 20001<br>(202) 942-5000 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | -and-<br>Kent A. Yalowitz<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, New York 10019<br>(212) 836-8000<br><br>*Attorneys for Appellee Banque Baring Brothers Sturdza SA (now known as Banque Eric Sturdza SA)* |
| 201. | Bank Leumi le-Israel B.M. (noticed as "FS/Bank Leumi Israel" in Second Circuit No. 22-2199 and noticed as "Bank Leumi Israel" in Second Circuit No. 22-2486) | 22-2199<br>22-2486 | DAVIS POLK & WARDWELL LLP<br>Elliot Moskowitz<br>Andrew Ditchfield<br>450 Lexington Avenue<br>New York, NY 10017<br>Tel: 212-450-4000<br>Fax: 212-701-5800<br>elliot.moskowitz@davispolk.com<br>andrew.ditchfield@davispolk.com<br><br>*Attorneys for Bank Leumi Israel* |
| 202. | Delta S.P.A. | 22-2127<br>22-2485 | Gary J. Mennitt<br>Dechert LLP<br>1095 Avenue of the Americas<br>New York, New York 10038<br>T: 212-698-3831<br>F: 212-314-0011<br>gary.mennitt@dechert.com<br><br>*Attorneys for Delta S.P.A.* |
| 203. | KAS Depositary Trust Company, AKA KAS BANK Effectenbewaarbedrijf N.V | 22-2423<br>22-2511 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for KAS Depository Trust Company a/k/a KAS BANK Effectenbewaarbedrijf N.V* |
| 204. | 1. Public Bank (Hong Kong) Limited<br><br>2. Public Bank Nominees Limited | 22-2171<br>22-2483 | Alex R. Rovira<br>Andrew P. Propps<br>Sidley Austin LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>T: (212) 839-5300<br>F: (212) 839-5559<br>arovira@sidley.com<br>apropps@sidley.com<br><br>*Attorneys for Public Bank (Hong Kong) Limited F/K/A Asia Commercial Bank, Public Bank Nominees Limited* |
| 205. | 1. Hinduja Bank (Switzerland) SA, FKA Amas Bank (Switzerland) Ltd.<br><br>2. Banca Commerciale Lugano | 22-2371<br>22-2432 | BAKER & MCKENZIE LLP<br>Charles Cummings<br>452 Fifth Avenue<br>New York, New York 10018<br>Telephone: (212) 626-4100<br>charles.cummings@bakermckenzie.com<br><br>*Attorneys for Defendants-Appellees Hinduja Bank (Switzerland) SA, f/k/a Amas Bank (Switzerland) Ltd., and Banca Commerciale Lugano* |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 206. | Banque Havilland S.A., FKA Banco Popolare Di Verona E Novara Luxembourg S.A. | 22-2408<br>22-2426 | James R. Warnot, Jr.<br>Patrick C. Ashby<br>Linklaters LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>james.warnot@linklaters.com<br>patrick.ashby@linklaters.com<br>(212) 903-9000 |
| 207. | Jared Trading Limited/BVI | 22-2194 | John F. Zulack<br>Lauren J. Pincus<br>David A. Shaiman<br>Allegaert Berger & Vogel LLP<br>111 Broadway, 20th Floor<br>New York, NY 10006<br>T: 212-571-0550<br>F: 212-571-0555<br>jzulack@abv.com<br>lpincus@abv.com<br>dshaiman@abv.com<br><br>*Attorneys for Jared Trading Limited/BVI* |
| 208. | Barclays Bank SA Madrid | 22-2215<br>22-2409 | HERBERT SMITH FREEHILLS NEW YORK LLP<br>Marc J. Gottridge<br>450 Lexington Avenue<br>New York, NY 10017<br>Tel. (917) 542-7600<br>marc.gottridge@hsf.com<br><br>*Counsel for Barclays Bank (Suisse) SA, Caixabank S.A., as successor by merger to Barclays Bank S.A., sued as "Barclays Bank SA Madrid", and Zedra Trust Company (Jersey) Limited* |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | *(f/k/a Barclays Private Bank and Trust Limited), sued as "Barclays Private Bank & Trust (Channel Islands) Limited"* |
| 209. | HSBC Latin America Holdings (UK) Limited (successor-in-interest to HSBC Securities (Panama) SA), FKA Banistmo Securities | 22-2249 22-2501 | Cleary Gottlieb Steen & Hamilton LLP Jeffrey A. Rosenthal Joseph M. Kay David Z. Schwartz Abigail K. Gotter-Nugent One Liberty Plaza New York, NY 10006 T: 212-225-2000 F: 212-225-3999 jrosenthal@cgsh.com jkay@cgsh.com dschwartz@cgsh.com agotter@cgsh.com <br><br>Nowell D. Bamberger 2112 Pennsylvania Avenue, N.W. Washington, D.C. 20037 T: 202-974-1500 F: 202-974-1999 nbamberger@cgsh.com <br><br>*Attorneys for HSBC Latin America Holdings (UK) Limited (successor-in-interest to HSBC Securities (Panama) SA), FKA Banistmo Securities* |
| 210. | Hontai Life Insurance Company Limited | 22-2204 22-2457 | Laura R. Hall Jonathan Cho ALLEN & OVERY LLP 1221 Avenue of the Americas New York, NY 10020 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Telephone: (212) 610-6300<br>laura.hall@allenovery.com<br>jonathan.cho@allenovery.com<br><br>*Attorneys for Hontai Life Insurance Company Limited* |
| 211. | Schroders Italy SIM SpA | 22-2209<br>22-2422 | ROPES & GRAY LLP<br>Andrew G. Devore<br>800 Boylston Street<br>Boston, MA 02199<br>Telephone: (617) 951-7000<br>Andrew.Devore@ropesgray.com<br><br>*Attorney for Schroders Italy SIM SpA* |
| 212. | Banca Profilo SPA | 22-2273<br>22-2417 | Jeff E. Butler<br>CLIFFORD CHANCE US LLP<br>31 West 52nd Street<br>New York, New York 10019<br>Telephone:  (212) 878-8000<br>Email:  jeff.butler@cliffordchance.com<br><br>*Attorneys for Banca Profilo SPA* |
| 213. | Banco General SA Banca Privada | 22-2302<br>22-2437 | Joshua E. Abraham<br>BUTZEL LONG PC<br>477 Madison Avenue, Suite 1230<br>New York, NY 10022<br>(212) 374-5370<br>abraham@butzel.com<br><br>*Attorneys for Banco General SA Banca Privada* |
| 214. | 1.  CAIS Bank | 22-2467 | Cleary Gottlieb Steen & Hamilton LLP<br>Elizabeth Vicens |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | 2. Calyon Paris | | One Liberty Plaza<br>New York, New York 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>evicens@cgsh.com<br><br>*Attorney for CAIS Bank and Calyon Paris* |
| 215. | Dreadnought Finance OY | 22-2247<br>22-2615 | Jyotin R. Hamid<br>Sandy Tomasik<br>DEBEVOISE & PLIMPTON LLP<br>66 Hudson Boulevard<br>New York, New York 10001<br>Tel.: (212) 909-1031<br>Email: jhamid@debevoise.com<br><br>*Counsel for Dreadnought Finance OY* |
| 216. | HSBC International Trustee Limited | 22-2300<br>22-2618 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | 2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for HSBC International Trustee Limited* |
| 217. | Alok Sama | 22-2290 | Philip R. Schatz<br>Wollmuth Maher & Deutsch LLP<br>500 Fifth Avenue<br>New York, New York 10110<br>Pschatz@wmd-law.com<br>Tel: 212-556-0391<br>Fax: 212-382-0050<br><br>*Counsel for Alok Sama* |
| 218. | Bank J. Safra Sarasin AG, FKA Bank Sarasin & Cie | 22-2359 | Andrew J. Finn<br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, NY 10004<br>T: (212) 558-4000<br>finna@sullcrom.com<br><br>*Attorneys for Bank J. Safra Sarasin AG, f/k/a Bank Sarasin & Cie* |
| 219. | John E. Niederhuber IRA | 22-2268 | Katherine R. Catanese<br>FOLEY & LARDNER LLP<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 338-3496<br>Facsimile: (212) 687-2329<br>kcatanese@foley.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Counsel for Defendant-Appellee John E. Niederhuber IRA, et. al.* |
| 220. | 1. Cititrust Bahamas Limited<br><br>2. Don Chimango SA | 22-2502<br>22-2553 | Cleary Gottlieb Steen & Hamilton LLP<br>Carmine D. Boccuzzi, Jr.<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999<br>cboccuzzi@cgsh.com<br><br>Elsbeth Bennett<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>ebennett@cgsh.com<br><br>*Attorneys for Cititrust Bahamas Limited*<br><br>Amiad Kushner<br>SEIDEN LAW LLP<br>322 Eighth Avenue, Suite 1704<br>New York, NY 10001<br>akushner@seidenlaw.com<br><br>*Attorneys for Don Chimango SA* |
| 221. | Itaú Bank & Trust Cayman, Ltd., FKA Unicorp Bank & Trust Ltd. | 22-2401<br>22-2602 | RANDALL MARTIN<br>JEFFREY J. RESETARITS<br>SHEARMAN & STERLING LLP<br>599 Lexington Avenue<br>New York, New York 10022 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | (212) 848-4000 <br><br> *Attorneys for Appellee Itaú Bank & Trust Cayman, Ltd. (FKA Unicorp Bank & Trust Ltd.)* |
| 222. | Atlantic Security Bank | 22-2412 | Scott B. Schreiber <br> Rosa J. Evergreen <br> Daniel R. Bernstein <br> Arnold & Porter Kaye Scholer LLP <br> 601 Massachusetts Avenue, NW <br> Washington, D.C. 20001 <br> (202) 942-5000 <br> -and- <br> Kent A. Yalowitz <br> Arnold & Porter Kaye Scholer LLP <br> 250 West 55th Street <br> New York, New York 10019 <br> (212) 836-8000 <br><br> *Attorneys for Appellee ASB Bank Corp. (as successor by merger to Atlantic Security Bank)* |
| 223. | BNP Paribas España, FKA Fortis Bank (España) | 22-2151 <br> 22-2581 | CLEARY GOTTLIEB STEEN & HAMILTON LLP <br> Roger A. Cooper <br> Ari D. MacKinnon <br> Thomas S. Kessler <br> One Liberty Plaza <br> New York, NY 10006 <br> T: 212-225-2000 <br> F: 212-225-3999 <br> racooper@cgsh.com <br> amackinnon@cgsh.com <br> tkessler@cgsh.com |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | *Attorneys for BNP Paribas España (f/k/a Fortis Bank (España))* |
| 224. | 1. HSH Nordbank Securities S.A., NKA HCOB Securities S.A.<br><br>2. Wegelin & Company | 22-2477<br>22-2453 | John C. Scalzo<br>Reed Smith LLP<br>599 Lexington Avenue<br>New York, New York 10022<br>(212) 521-5400<br>jscalzo@reedsmith.com<br><br>*Attorneys for HSH Nordbank Securities S.A., n/k/a HCOB Securities S.A*<br><br>Anne E. Railton<br>Valerie A. Haggans<br>Goodwin Procter LLP<br>620 Eighth Avenue<br>New York, New York 10018<br>(212) 813-8800<br>arailton@goodwinlaw.com<br>vhaggans@goodwinlaw.com<br><br>*Attorneys for Wegelin & Company / Wen AG* |
| 225. | 1. HSBC Bank Bermuda Limited<br><br>2. Somers Nominees (Far East) Limited | 22-2159<br>22-2419 | Cleary Gottlieb Steen & Hamilton LLP<br>Jeffrey A. Rosenthal<br>Joseph M. Kay<br>David Z. Schwartz<br>Abigail K. Gotter-Nugent<br>One Liberty Plaza<br>New York, NY 10006<br>T: 212-225-2000<br>F: 212-225-3999 |

|  | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
|  |  |  | jrosenthal@cgsh.com<br>jkay@cgsh.com<br>dschwartz@cgsh.com<br>agotter@cgsh.com<br><br>Nowell D. Bamberger<br>2112 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20037<br>T: 202-974-1500<br>F: 202-974-1999<br>nbamberger@cgsh.com<br><br>*Attorneys for HSBC Bank Bermuda Limited and Somers Nominees (Far East) Limited* |
| 226. | First Gulf Bank | 22-2440<br>22-2415 | CHALOS & CO, P.C.<br>George M. Chalos<br>Briton P. Sparkman<br>55 Hamilton Avenue<br>Oyster Bay, New York 11771<br>Tel: 516-714-4300<br>Fax: 516-750-9051<br>gmc@chaloslaw.com<br>bsparkman@chaloslaw.com<br><br>*Attorneys for First Gulf Bank* |
| 227. | ABN AMRO Global Custody Services N.V. (sued as Fortis Global Custody Services NV) | 22-2410<br>22-2372 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for ABN AMRO Global Custody Services N.V. (sued as Fortis Global Custody Services NV)* |
| 228. | Goldman Sachs & Co. LLC (sued as "FS/GSCO London" and "FS/GSCO New York" in 19cv4771 (S.D.N.Y.) and in 22-2404 (2d Cir.) and sued as "GSCO London" and "GSCO New York" in 21cv3407 (S.D.N.Y.) and in 22-2351 (2d Cir.)) | 22-2404<br>22-2351 | Daniel H. Tabak<br>COHEN & GRESSER LLP<br>800 Third Avenue<br>New York, NY 10022<br>T: 212-957-7600<br>F: 212-957-4514<br>dtabak@cohengresser.com<br><br>*Attorneys for Goldman, Sachs & Co. LLC* |
| 229. | ABN AMRO Retained Services (Cayman) Limited (sued as Fortis Bank Cayman Limited n/k/a ABN AMRO Fund Services Bank (Cayman) Limited) | 22-2478 | **LATHAM & WATKINS LLP**<br>Christopher R. Harris<br>Thomas J. Giblin<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: christopher.harris@lw.com<br>Email: thomas.giblin@lw.com<br><br>*Attorneys for ABN AMRO Retained Services (Cayman) Limited (sued as Fortis Bank Cayman Limited n/k/a ABN AMRO Fund Services Bank (Cayman) Limited)* |
| 230. | Barclays Private Bank & Trust (Channel Islands) Limited | 22-2185<br>22-2433 | HERBERT SMITH FREEHILLS NEW YORK LLP<br>Marc J. Gottridge<br>450 Lexington Avenue |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | New York, NY 10017<br>Tel. (917) 542-7600<br>marc.gottridge@hsf.com<br><br>*Counsel for Barclays Bank (Suisse) SA, Caixabank S.A., as successor by merger to Barclays Bank S.A., sued as "Barclays Bank SA Madrid", and Zedra Trust Company (Jersey) Limited (f/k/a Barclays Private Bank and Trust Limited), sued as "Barclays Private Bank & Trust (Channel Islands) Limited"* |
| 231. | NN Investment Partners B.V. (sued as Select Absolute Strategies SICAV) | 22-2441 | James R. Warnot, Jr.<br>Patrick C. Ashby<br>Linklaters LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>james.warnot@linklaters.com<br>patrick.ashby@linklaters.com<br>(212) 903-9000<br><br>Attorneys for Select Absolute Strategies SICAV |
| 232. | 1. Essex 21 Limited<br><br>2. Essex 17 Limited<br><br>3. DMC (HD) Limited<br><br>4. Hyperiod (HD) Limited | 22-2448 | Joshua E. Abraham<br>BUTZEL LONG PC<br>477 Madison Avenue, Suite 1230<br>New York, NY 10022<br>(212) 374-5370<br>abraham@butzel.com<br><br>*Attorneys for Essex 21 Limited, Essex 17 Limited, DMC (HD) Limited, Hyperion (HD) Limited* |
| 233. | Liongate Multistrategy Fund SEG Portfolio | 22-2414 | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>Marc L. Greenwald<br>Eric M. Kay |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| | | | Daniel M. Kelly<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Tel: 212-849-7000<br>Fax: 212-849-7100<br>marcgreenwald@quinnemanuel.com<br>erickay@quinnemanuel.com<br>danielkelly@quinnemanuel.com<br><br>*Attorneys for Liongate Multistrategy Fund SEG Portfolio* |
| 234. | RBC Investor Services Bank SA, FKA RBC Dexia Investor Services Bank SA | 22-2532 | Katten Muchin Rosenman LLP<br>Anthony L. Paccione<br>Mark T. Ciani<br>50 Rockellefer Plaza<br>New York, NY 10020<br>Anthony.paccione@katten.com<br>Mark.ciani@katten.com<br>Phone: 212-940-8800<br><br>*Attorneys for RBC Investor Services Bank S.A., f/k/a RBC Dexia Investor Services Bank S.A.* |
| 235. | 1. Citco Global Custody N.V.<br><br>2. Citco Global Custody (N.A.) N.V.<br><br>3. CGC NA<br><br>4. Citco Banking Corporation N.V.<br><br>5. Citco Bank Nederland N.V. | 22-2444 | PAUL, WEISS, RIFKIND WHARTON & GARRISON, LLP<br>Andrew G. Gordon<br>Greg F. Laufer<br>agordon@paulweiss.com<br>glaufer@paulweiss.com<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone: (212) 373-3000<br>Fax: (212) 757-3890 |

| | Defendants-Appellees | Second Circuit No. | Attorneys for Defendants-Appellees |
|---|---|---|---|
| 6. | Citco Bank Nederland N.V. Dublin Branch | | *Attorneys for Citco Group Limited, Citco Global Custody (NA) N.V., CGC NA, Citco Banking Corporation, N.V., Citco Global Custody N.V., Citco Bank Nederland N.V. Dublin Branch, and Citco Bank Nederland N.V.* |
| 7. | Citco Group Limited | | |